UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Slidell, Inc.,

02-213 JRT/FLN

Plaintiff,

v.

**ORDER**

Millennium Inorganic Chemicals,

Defendant.

---

Jeffrey W. Post, Esq., for Plaintiff.
Scott A. Smith, Esq. & Matthew S. Johnson. Esq., for Defendant

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on September 22, 2003, on Plaintiff's Motion to Compel Production of Documents and to Extend the Expert Witness Disclosure Deadline [#97]. At the hearing this Court ordered that the Defendant submit the documents identified at the hearing for an in camera inspection. This includes the following documents from the Defendant's privilege log: 6, 7, 8, 17, 18, 19, 20, 66, 67, 68, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 84, 86, 87, 89, 90, 91, 92, and 93. After the hearing, the parties submitted a stipulation where the Defendant agreed to produce additional material and the Plaintiff agreed to waive its motion to the extent that it sought information the Defendant had designated as confidential commercial information and/or trade secrets. The Defendant now requests an in camera review only to the extent that it relates to the attorney-client privilege and/or the work-product doctrine. Accordingly, review of document 6 is moot as it was withheld based solely on a confidential commercial information and/or trade secrets objection. The stipulation also states that Defendant may still designate certain documents submitted for the in camera review as "Highly Confidential"

FILED NOV 20 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

and for "attorney's eyes only" if it is decided that they are not protected by attorney-client privilege or the work-product doctrine.

The federal common law of attorney-client privilege protects confidential disclosures made between a client and an attorney for the purpose of obtaining legal advice. United States v. Sindel, 53 F.3d 874, 876 (8th Cir. 1995)(citing Fisher v. United States, 425 U.S. 391, 403 (1976)). The privilege can apply when the client is a corporation. United States v. Louisville & Nashville R. Co., 236 U.S. 318, 336 (1915) (cited in Upjohn Co. v. United States, 449 U.S. 383, 390 (1981)). The attorney-client privilege may also apply to communications with the lawyer's representative, such as a corporate employee. In re Bieter Co., 16 F.3d 929, 939 (8th Cir. 1994) (citing Diversified Indus., Inc., v. Meredith, 572 F.2d 596 (8th Cir. 1978)). Minnesota requires that an attorney-client communication relate to the purpose of obtaining legal advice before it is protected. Simon v. G.D. Searle & Co., 816 F.2d 397, 403 (8th Cir. 1987); Brown v. St. Paul City Ry., 241 Minn. 15, 62 N.W.2d 688, 700 (1954) (quoting 8 Wigmore, Evidence § 2292(3d ed.)); See National Texture Corp. v. Hymes, 282 N.W.2d 890, 895-96 (Minn. 1979). Thus, the attorney-client privilege does not protect ordinary business advice. Id.; Sedco Int'l v. Cory, 683 F.2d 1201, 1205 (8th Cir. 1982). For example, minutes of a business meeting attended by attorneys are not automatically privileged. Simon, 816 F.2d at 403; International Tel. & Tel. Corp. v. United Tel. Co., 60 F.R.D. 177, 185 (M.D.Fla. 1973); Air-Shield, Inc. v. Air Reduction Co., 46 F.R.D. 96,97 (N.D.Ill. 1968). If an attorney is present or receives documents, they must be functioning in the professional capacity of a lawyer for the purpose of giving legal advice. Matter of Feldberg, 862 F.2d 622, 627 (7th Cir. 1988); United States v. Bartlett, 449 F.2d 700, 703 (8th Cir. 1971) citing Olender v. United States, 210 F.2d 795, 806 (9th Cir. 1954) ("The attorney-client privilege is limited to communications made

in the course of seeking legal advice from a professional legal adviser in his capacity as such."); Air Crash Disaster, 133 F.R.D. 515 (N.D.Ill. 1990). Courts have also held that a document prepared for both legal and non-legal review is not privileged. Simon v. G.D. Searle & Co., 816 F.2d 397, 403 (8th Cir. 1987); In re Air Crash Disaster at Sioux city, Iowa on July 19, 1989, 133 F.R.D. 515 (N.D.Ill. 1990); FTC v. TRW, Inc., 479 F.Supp. 160, 163 (D.D.C. 1979), aff'd 628 F.2d 207 (D.C. Cir. 1980); United States v. International Business Machines Corp., 66 F.R.D. 206, 213 (S.D.N.Y. 1974).

A party seeking the protection of the work-product doctrine must show that materials they wish to be protected were prepared in anticipation of litigation. PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002). The test for when a document was prepared in anticipation of litigation is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Simon, 816 F.2d at 401. There are two types of work product, ordinary work product and opinion work product. Ordinary work product includes raw factual information. Baker v. General Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000). Ordinary work product is protected from discovery unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3). In contrast, opinion work product includes the counsel's mental impressions, conclusions, opinions, and legal theories. Baker, 209 F.3d at 1054. Opinion work product receives almost absolute immunity and can only be discovered in rare circumstances. Id.; Fed. R. Civ. P. 26(b)(3). Similar to attorney-client privilege, the involvement of an attorney in matter that is an ordinary business activity does not protect the material from disclosure on the basis of the work-

product doctrine. Simon, 816 F.2d at 401; Lumber v. PPG Industries, Inc., 168 F.R.D. 641, 646 (D. Minn. 1996). Documents that do not focus on present litigation as opposed to litigation and relevant issues in general, are not work product. In re Air Crash Disaster at Sioux City Iowa on July 19, 1989, 133 F.R.D. 515, 523 (N.D. Ill. 1990).

After carefully reviewing the documents at issue, this Court finds that the Defendant's privilege objections should be sustained in part and overruled in part. Of the twenty-nine documents submitted for review, documents 6-8, 17-20, 66-68, 72, 73, 75, 77, 79, 81, 84, 87 and 90 are minutes from business meetings, documents 74, 76, 78, 82, 86, 89 and 91-93 are from Power Point demonstrations, and document 80 is an email communication.

Minutes from a business meeting are not privileged, unless they disclose communications made to the company's lawyer for the purpose of securing legal advice. Document No. 6 is moot based on the parties stipulation. The redacted statements in documents 7, 17, 18, 19, 20, 66, 67, 68, 73, 75, 77, 81, 87 and 90 are from business meeting minutes and are not protected by either the attorney-client privilege or the work-product doctrine. It does not appear that any of the redacted statements were made to an attorney, acting in their role as an attorney, or for the purpose of securing legal advice. The statements consist mostly of reports on the status of litigation, or reports on business strategies and organization that in some way may involve the company's lawyers. Some of the statements report on the status of litigation for business purposes, not in anticipation of or in preparation of litigation. The redacted statements are merely informing the meeting members that new litigation has arisen, how existing litigation is progressing, or how litigation is affecting business matters.

Document 8 had several redactions. Redaction labeled 4.1.2.8 is not protected by the

attorney-client privilege or the work-product doctrine. While there seems to be an attorney present in the meeting, the redactions are statements concerning the status of investigations for business purposes. The statement is not being made to secure legal advice or because of the prospect of litigation. The statement simply reports to the operations committee the status of some investigations. However, redactions labeled 4.2.4 and 5.4 are protected by the attorney-client privilege as the facts communicated to lawyers to get legal advice, and in one instance reveal what advice was given. Similarly, document 72 also has several redactions. Section 7.1 is not protected because it is not a statement made for the purpose of obtaining legal advice or in anticipation of litigation. However, sections 4.3.8, 7.2 and 7.3 are protected by the attorney-client privilege because the statements appear to disclose confidential information that has been communicated to an attorney as well as the legal advice received in return. Both of the redactions in document 79 are protected by the attorney-client privilege as they reflect confidential information communicated to an attorney for the purpose of obtaining legal advice. Of the four redactions in document 84, sections 4.2.2.4 and 9.9 are not protected, but sections 7 and 8.5 are protected by attorney-client privilege as they reveal confidential information provided to an attorney to obtain legal advice and decisions made based on that advice.

Of the Power Point documents, 74, 76, 78, 82, 89, 91, 92 and 93 are not protected by attorney client-privilege or the work-product doctrine because they are business reports mentioning the status of litigation as it affects business projects. These Power Point slides were not created for the purpose of seeking legal advice or in anticipation of litigation. Power Point document 86, however, does appear to be protected by either the attorney-client privilege or the work-product doctrine. The pages contain confidential information regarding settlement communications and proposals. Although the

circumstances are unclear, it appears from the context that various confidential options are being presented to an attorney for the purpose of seeking legal advice. Alternatively, the presentations might also be documents prepared at the direction of a lawyer in connection with litigation to assist the client in deciding which option to pursue. In either circumstance, the redactions in document 86 would be privileged.

The email communication in document 80 is protected by attorney-client privilege. It contains confidential information communicated to an attorney for the purpose of securing legal advice and it reflects some advice that had been given.

Based on the files, records, and proceedings herein, it is hereby **ORDERED** that the Defendant's privilege objections are sustained in part and overruled in part as follows:

1. The redactions to documents labeled 8-4.2.4, 8-5.4, 72-7.2, 72-7.3, 79, 80, 84-7, 84-8.5, and 86 are covered by either the attorney-client privilege or the work product doctrine and the Defendant's privilege objection to these documents are sustained;

2. The remaining redaction to documents labeled 7, 8-4.1.2.8, 17, 18, 19, 20, 66, 67, 68, 72-4.3.8., 72-7.1, 73, 74, 75, 76, 77, 78, 81, 82, 84-4.2.2.4, 84-9.9.8, 87, 89, 90, 91, 92, and 93 are not protected by either the attorney-client privilege or work-product doctrine and as to these documents the Defendant's privilege objections are overruled;

3. Nothing in this order shall be construed to overrule the Court's Stipulated Protective Order [#32], or the parties' Stipulation and Order Concerning In Camera Review and Highly Confidential Documents [#108] allowing Defendant to designate as "Highly Confidential" documents produced to Plaintiff and the parties right to seek an order providing that (a) documents should or should not be designated as "Highly Confidential", or (b) documents designated "Highly Confidential" may be shown to a person or persons who otherwise are not permitted to receive or review such documents. To the extent that documents ordered to be produced are designated "Highly Confidential", they shall be governed by the existing Protective Order.

DATED: Nov 19, 2003.

FRANKLIN L. NOEL
United States Magistrate Judge

For Immediate Release
October 30, 2003

# PRESS RELEASE

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
300 South Fourth Street, Suite 202, Minneapolis, Minnesota
Contact: Richard D. Sletten, Clerk, (612) 664-5026

## FEDERAL COURT AMENDS LOCAL PRACTICE RULES

The U.S. District Court for the District of Minnesota announces the approval, of amendments to its local rules of practice recommended by the Court's Federal Practice Committee chaired by Minneapolis Attorney Jeff Keyes of the Briggs and Morgan law firm.

Local Rules 67.1 and 83.11 amendments:

**LR 67.1 MONEY PAID INTO COURT**

Unless otherwise ordered by the Court, all monies coming into the registry of this Court shall be deposited in an interest bearing account in a depository approved by the Treasurer of the United States, subject to withdrawl by checks drawn by the Clerk of Court pursuant to orders of the Court. The Clerk of Court shall deduct from the income earned on the investment a registry fee, as set by the Director of the Administrative Office of the United States Courts. The fee will be deducted when funds are withdrawn and distributed. For further registry fee information, refer to the Guide to Judiciary Policy and Procedures Chapter VII, Financial Management, Part I, Registry Funds.

**LR 83.11 DIVISIONS, OFFICES OF THE CLERK, CALENDARS**

(a) Divisions. The State of Minnesota constitutes one judicial district, divided into six divisions. Cases in this District are assigned to particular divisions and particular judges pursuant to the Order for Assignment of Cases that has been adopted by the Judges of the District Court. The Order for Assignment of Cases may be modified from time to time as the District Court Judges see fit.

(b) Offices of the Clerk. The Clerk of Court maintains offices in St. Paul, Minneapolis, and Duluth. The St. Paul, Minneapolis and Duluth offices are open from 8:00 a.m. to 5:00 p.m. All offices are open Monday through Friday, with the following exceptions: New Year's Day; Martin Luther King, Jr.'s Birthday; President's Day; Memorial Day; Independence Day; Labor Day; Columbus Day; Veterans Day; Thanksgiving Day; and Christmas Day.

The files for matters pending before the Court are maintained in the office in the division to which the case is assigned. However, papers relative to any case may be filed in any office.

(c) Calendars. The Court operates on an individual calendar system. Judges in active service are assigned and assume responsibility for their proportionate share of the total cases filed in the district. Inquiries as to motions, probable trial date, or other matters having to do with a particular case may be addressed to the deputy clerk serving as calendar clerk for the Judge to whom the case has been assigned.