UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Slidell, Inc.,

Plaintiff,

Court File No. 02-CV-213 (JRT/FLN)

v.

**SLIDELL'S STATEMENT OF THE CASE**

Millennium Inorganic Chemicals, Inc.,

Defendant.

---

Because this case has been extensively briefed and involves relatively distinct claims, Slidell's brief is organized into five separate sections that reflect its claims: (1) misappropriation of trade secrets, (2) breach of the equipment contract, (3) quantum meruit, (4) breach of contract for installation, commissioning and training, and (5) promissory estoppel regarding long-term European support.

## I. MISAPPROPRIATION OF TRADE SECRETS.

Millennium transferred Slidell's development work on the supervisory system to RoviSys. As a result, Slidell sustained substantial losses and Millennium was unjustly enriched.

Slidell's trade secret claim presents four questions for trial: (a) did Slidell's development work on the supervisory system constitute a trade secret? (b) were Millennium's transfers authorized by Slidell? (c) what losses to Slidell and gains to Millennium resulted from the transfers? and (d) was Millennium's misappropriation willful and malicious? No fact dispute exists that Millennium's access to Slidell's trade secrets resulted from a confidential relationship because two express agreements governed Millennium's use of Slidell's trade secrets.

**A. Slidell's Trade Secrets.**

The first issue for the jury is whether Slidell's development work constitutes a trade secret. Minnesota courts have long recognized that design information, especially as it relates to software, is the type of information that qualifies for trade secret status. *See Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 899 (Minn. 1983) (citing *A.H. Energy Co. v. Marcan Prods. Corp.*, 389 F.2d 11, 16 (2nd Cir. 1968) ("It is well settled that detailed manufacturing drawings and tolerance data are prima facie trade secrets."); *Zawel v. Edutronics*, 520 N.W.2d 520, 521 (Minn. Ct. App. 1994) (software is a trade secret). Moreover, Slidell's development work meets the three-factor test mandated by the Minnesota Supreme Court to determine whether qualified information is a trade secret under Minn. Stat. § 325C.01; *Electro-Craft* at 899-902.

First, the information must not be generally known or readily ascertainable. *Electro-Craft* at 899. Information is generally known if it is "available in trade journals, reference books, or published materials." *Surgidev Corp. v. Eye Tech, Inc.*, 648 F.Supp 661, 688 (D. Minn. 1986) (MacLaughlin, J.). Where only a small group of people have the ability to design the trade secret and it cannot readily be reverse-engineered, the trade secret is not readily ascertainable. *Scott Equip. Co. v. Stedman Mach. Co.*, 2003 WL 21804868, *2 (D. Minn. July 31, 2003) (Ericksen, J.). The "requirement for a trade secret that information sought to be protected must not be generally known or readily ascertainable is satisfied if the information is not quickly available through proper means." *Surgidev* at 689 (citing *Electro-Craft*).

Slidell's witnesses will testify that its supervisory development work is not publicly available. Moreover, Slidell will present evidence that it was specifically developing the system to meet Millennium's "wish list," making the design unique. Because Millennium was the first

customer for the new supervisory-system design, the software and system were not available in the market, precluding Millennium from reverse-engineering the system. Even if the system were available in the market, Millennium was contractually precluded from reverse-engineering or copying it.

Second, the information must gain independent economic value from its secrecy. *Electro-Craft* at 900. "Generally, if substantial time and money would be required of a competitor to develop the same information, that information has economic value." *Surgidev* at 692. If the introduction of information into the market place allows another business to introduce a competing product, and if the competition results in lower profit margins, the information derives independent economic value from its secrecy. *I-Systems, Inc. v. Softwares, Inc.*, 2004 WL 742082, *14 (D. Minn. March 29, 2004) (Tunheim, J.).

Slidell will introduce evidence that it spent a considerable sum developing the supervisory system. Even if Millennium could have developed the system itself – a doubtful proposition – that effort would have required a heavy investment of time and money. Moreover, Millennium's transfers to RoviSys had a far more dramatic impact than lowering the price: Millennium's transfers enabled RoviSys to develop a competing system, costing Slidell the Millennium sale.

Third, a plaintiff must show that it made reasonable efforts to maintain the secrecy of the trade secret. *Electro-Craft* at 901. Trade secret law "does not require the maintenance of absolute secrecy; only partial secrecy or qualified secrecy has been required under the common law." *Surgidev* at 692-3. For instance, a party "acted reasonably to maintain secrecy by requiring a confidentiality agreement for Heller [the defendant] and marking its documents and

files as confidential." *K-Sun Corp. v. Heller Ins., Inc.*, 1998 WL 422182, *3 (Minn. Ct. App. July 28, 1998) (unpublished opinion).

At trial, Slidell will show that it entered into both a nondisclosure and a license agreement as part of the equipment contract with Millennium ("Contract") that protected the confidentiality of Slidell's supervisory development work. Additionally, Slidell marked its diagrams with a "confidential" caption that expressly warned against their unauthorized use. Further, Slidell strictly limited access to its plant and repeatedly informed Millennium that the supervisory development work was confidential, proprietary information. Slidell expects little controversy that it took reasonable efforts to protect its trade secrets.

**B. <u>Millennium's Unauthorized Disclosure to RoviSys</u>.**

The second jury issue is whether Millennium misappropriated Slidell's trade secrets. "Under the MUTSA, misappropriation occurs when a person acquires, discloses, or uses a trade secret through 'improper means. . . .'" *Scott Equip. Co.* at *3 (*citing Electro-Craft*, 332 N.W.2d at 903). "Improper means" includes breach of a duty to maintain secrecy. Minn. Stat. § 325C.01, subd. 2. "'[D]irect evidence of industrial espionage is rarely available and not required' to establish a claim of trade secret misappropriation." *Wyeth v. Natural Biologies, Inc.*, 2003 WL 22282371, *21 (D. Minn. Oct. 2, 2003) (Ericksen, J.) (*citing Pioneer Hi-Bred Int'l. v. Holden Found. Seeds, Inc.*, 35 F.2d 1226, 1239 (8th Cir. 1994)).

The undisputed evidence establishes that Millennium transferred Slidell's diagrams and provided RoviSys extensive oral briefings regarding Slidell's development work. Millennium breached its contractual obligations – meaning that the disclosure was through improper means – unless Millennium received Slidell's prior written permission for these transfers. In determining

whether misappropriation occurred, the first fact question for the jury is whether Millennium had Slidell's prior written permission for the transfers to RoviSys.

At trial Slidell will show that Millennium never received Slidell's prior written permission. Indeed, Slidell will show Millennium engaged in conduct designed to mislead Slidell about its transfers to RoviSys and to coerce Slidell's consent after the fact.

Although Millennium might assert that RoviSys did not use the Slidell trade secrets that RoviSys received from Millennium, Slidell will prove that RoviSys extensively utilized Slidell's work in preparing its software programs. First, Slidell will prove that the RoviSys engineers involved on the Slidell project had never developed a supervisory program for packaging equipment. In order to write software to control and monitor the equipment, RoviSys needed to know what functions on the equipment needed to be controlled and what data needed to be monitored. Slidell's development work provided this information, and RoviSys' system incorporates Slidell's work. Second, Slidell will demonstrate that RoviSys continually needed more Slidell information to develop the software. Third, Slidell will prove that RoviSys copied Slidell's designs.

**C. <u>Slidell's Damages</u>.**

The third trade-secret jury issue is the amount of Slidell's damages. Slidell can recover both for its losses and for any unjust enrichment Millennium received from the theft. *Children's Broadcasting Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004) (*citing* Minn. Stat. § 325C.03(a)). In lieu of damages measured by other means, the Court may impose a reasonable royalty for the defendant's use of the trade secret. § 325C.03(a). If a plaintiff establishes the fact of loss, "the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount." Mem. Op. and Order at 28

(Docket #140) (citing *Children's Broadcasting* at 865). "The law does not require mathematical precision in proof of loss, and proof to a reasonable certainty is sufficient." *Pillsbury Co. v. Ill. Cent. Gulf R.R.*, 687 F.2d 241, 246 (8th Cir. 1982). In determining the current amount that a defendant has been unjustly enriched, a plaintiff is allowed to reduce the future benefits to present value. *Children's Broadcasting* at 865.

Slidell will prove that Millennium's disclosures caused Slidell to suffer unrecouped research and development expenses and to lose the long-term support business associated with the supervisory system. Additionally, Slidell will show that Millennium was unjustly enriched because it received substantial savings on the system's development costs. Moreover, Slidell will demonstrate that Millennium will reap substantial efficiency gains from utilizing Slidell's trade secrets at its plants. Finally, Slidell will introduce evidence regarding the supervisory system license, including its pricing in the Contract and change orders. This evidence provides a basis for calculating a reasonable royalty in lieu of an award of other damages.

**D. Millennium's Willful and Malicious Misappropriation.**

On the trade-secret claim, the fourth and final jury issue is whether Millennium's misappropriation was willful and malicious. The jury's finding is advisory under Minn. Stat. § 325C.03(b).

A party commits willful and malicious conduct when it performs a wrongful act "without legal justification or excuse" or willfully violates a known right. *Samuels v. Indep. Sch. Dist. 279*, 2003 WL 23109698 (D. Minn. Dec. 8, 2003) (Tunheim, J.) (citing *Davis v. Hennepin Cty.*, 559 N.W.2d 117, 123 (Minn. Ct. App. 1997)) (discussing the meaning of willful and malicious in the context of official immunity). A trio of trade-secret cases have identified the following as constituting willful and malicious conduct:

- defendant's management is aware that it might be utilizing trade secrets, but proceeds with the project without investigating;
- without informing the other party of its decision not to pursue a business opportunity, defendant's management continues to solicit trade secrets under the pretext of negotiations and then transfers that information in violation of an express confidentiality agreement; and
- the defendant took information that it knew was confidential and used it to develop competing software.

*Scott Equip. Co.* at *3 (management knowledge); *K-Sun Corp. at* *4 (continued solicitation and violation of express agreement); *Zawels*, 520 N.W.2d at 524 (knowing use to develop software).

**Any** of the conduct described in each case would independently support a finding that Millennium's misappropriation was willful and malicious. Slidell will prove that Millennium engaged in **all** of the conduct described above. Moreover, Slidell will demonstrate that Millennium engaged in additional misconduct – namely by attempting to economically coerce Slidell to excuse Millennium's theft and by making misrepresentations regarding RoviSys – that establishes willful and malicious misappropriation.

**UNRESOLVED EVIDENTIARY ISSUES**

None.

**UNRESOLVED PROCEDURAL ISSUES**

Should the jury give an advisory opinion regarding the amount of exemplary damages?

## II. BREACH OF EQUIPMENT CONTRACT.

Only two elements of Slidell's Contract claim are disputed. The jury must decide whether Millennium breached the Contract and the amount of Slidell's damages.

**A. <u>Millennium's Breaches.</u>**

Millennium breached the Contract early and often in four different ways: (1) breach of the Contract's express terms, (2) breach through anticipatory repudiation, (3) breach through failing to seasonably specify and cooperate, and (4) breach of duty of good faith and fair dealing.

**1. <u>Millennium Breached the Contract's Express Terms</u>.**

Slidell will prove that Millennium breached the Contract's express terms in several ways, including the following:

(a) breach of the license agreement,

(b) breach of the non-disclosure agreement, and

(c) breach of the Contract's payment terms.

**2. <u>Millennium Anticipatorily Repudiated the Contract.</u>**

Not only did Millennium breach the Contract's express terms, but also Millennium refused to perform or attached conditions on its performance that exceeded Slidell's contractual obligations. A party's unconditional repudiation of a contractual duty occurring before the time for performance has arrived is an "anticipatory breach" or an anticipatory repudiation. *Space Center, Inc. v. 451 Corp.*, 298 N.W.2d 443, 450-51 (Minn. 1980). Likewise, "If a party to a contract demands of the other party a performance to which he has no right under the contract and states definitively, that unless his demands are complied with, he will not render his promise performance, anticipatorily repudiation has been committed." *Unique Sys., Inc. v. Zotos Int'l., Inc.*, 622 Fed.2d 373, 377 (8th Cir. 1980) (finding breach under Minn. Stat. § 336.2-610); *see Nat'l Farmers Org. v. Bartlett & Co., Grain*, 560 F.2d 1350, 1357-58 (8th Cir. 1977). As the Court noted in the summary judgment order, "While the contract provided that the parties could seek change orders at any time, it nowhere provided that either party could condition its further

performance of the contract on the other party's acquiescence to a change order." Mem. Op. and Order at 25 (Docket # 140).

Slidell's evidence establishes that Millennium repudiated the contract in several ways, including the following:

(a) refusing to accept the equipment as specified in the contract;

(b) refusing to accept the equipment;

(c) refusing to refund the Contract discount;

(d) conditioning its performance on Slidell accepting change orders; and

(e) insisting that Slidell perform engineering work and provide consulting outside the Contract.

Slidell's evidence will show that Millennium leveraged the importance of the Contract to Slidell's economic health to force Slidell into making extracontractual concessions.

### 3. **Millennium Failed to Seasonably Specify and Cooperate.**

Where a party to a contract fails to seasonably perform or cooperate, the other party may treat the failure to specify or to cooperate as a breach:

> Where such specification would materially affect the other party's performance but is not seasonably made or where one party's cooperation is necessary to the agreed performance of the other but is not seasonably forthcoming, the other party in addition to all other remedies
>
> a) Is excused for any resulting delay in his own performance; and
>
> b) May also either proceed to perform in any reasonable manner or after the time for a material part of his own performance treat the failure to specify or cooperate as a breach by failure to deliver or accept the goods.

Minn. Stat. § 336.2-311(3) (2000).

Slidell's evidence will dramatically illustrate that Millennium both failed to timely resolve technical issues and failed to cooperate. Millennium's failures include the following:

(a) failing to resolve design issues, including container size, wire color, electrical design, and the supervisory system;

(b) withholding cooperation necessary for the completion of the Ashtabula and LeHavre equipment; and

(c) failing to cooperate regarding testing and delivery of the equipment.

4. **Millennium Breached Its Duty of Good Faith and Fair Dealing.**

Slidell's evidence will also establish that Millennium breached its duty of good faith and fair dealing. Minn. Stat. § 336.2-103(i)(b) (2000) imposes a duty of good faith. Indeed, Minnesota law implies a duty of good faith and fair dealing into every contract. *White Stone Partners, LP v. Piper Jaffray Cos., Inc.*, 978 F.Supp. 878, 881 (D. Minn. 1997) (Tunheim, J.). A party who violates its duty of good faith by interfering with the other party's performance commits a material breach, excusing further performance by the non-breaching party. *See Instrumentation Servs., Inc. v. General Resource Corp.*, 283 N.W.2d 902, 908-09 (Minn. 1979). "In other words, the covenant of good faith and fair dealing 'requires a party in a contractual relationship to refrain from arbitrary and unreasonable conduct that has the effect of preventing the other party to the contract from receiving the fruits of the contract.'" *I-Systems, Inc.*, 2004 WL 742082, *12 (quoting *Erickson v. Haring*, 2002 WL 31163611, *13 (Minn. Ct. App. Oct. 1, 2002).

Slidell will show that Millennium engaged in conduct that unjustifiably hindered Slidell's performance or was designed to deny Slidell the fruits of the Contract, including the following conduct:

(a) Millennium delayed the project due its financial condition, increasing Slidell's performance costs;

(b) Millennium abandoned the delivery sequence contemplated by the Contract. Then, when Slidell tried to develop a new delivery

protocol, Millennium engaged in an intentional plan to starve Slidell of cash, so Slidell would succumb to Millennium's attempt to excuse its theft of trade secrets and excuse its delay;

(c) Millennium abused its access to technical information and inserted itself into the equipment's design process in an attempt to increase the technical knowledge of its employees. Millennium sought to eliminate its contractual obligation to purchase installation and commissioning from Slidell by substituting Millennium employees for Slidell support; and

(d) Millennium induced Slidell to continue work on the supervisory system, while secretly planning to remove the system from Slidell's scope.

**B. Slidell's Damages.**

"A party is entitled to recover for a breach of contract only those damages which: (a) arise directly and naturally in the usual course of things from the breach itself; or (b) are the consequences of special circumstances known to or reasonably supposed to have been contemplated by the parties when the contract was made." *Olson v. Synergistic Techologies Business Systems, Inc.*, 628 N.W.2d 142, 156 (Minn. 2001) (J. Anderson concurring) (*citing Cohen v. Cowles Media Co.,* 479 N.W.2d 387, 392 (Minn. 1992)).

The parties defined the broad range of damages that Slidell could recover. Contract ¶ 4. Slidell intends to present evidence of its direct damages, including damages on shipping and storage costs, vendor restocking charges, general and administrative expenses, selling expenses, and cost of capital. Additionally, Slidell intends to introduce evidence of its contractual lost profits, parts and services profits, installation, commissioning and training.

**UNRESOLVED EVIDENTIARY ISSUES**

Whether Millennium's project management expert is qualified to testify in all the extremely diverse areas disclosed in his report?

## UNRESOLVED PROCEDURAL ISSUES

None.

## III. QUANTUM MERUIT.

The next question that the jury will be asked to determine is whether Millennium requested that Slidell render services outside the scope of the written contract. Slidell intends to show that Millennium requested that Slidell perform numerous extra-contractual services on its behalf, and failed to pay for those services.

The basis of recovery in quantum meruit is "[t]he defendant has received a benefit from plaintiff which it is unjust for him to retain without paying for it." *Ylijarvi v. Brockphaler*, 7 N.W.2d 314, 319 (Minn. 1942); *see Frankson v. Design Space Int'l*, 394 N.W.2d 140, 146 (Minn. 1986) (allowing recovery in quantum meruit where "there was not a full agreement concerning compensation between [the parties], and there was, needless to say, much confusion concerning details of the compensation agreement. For these reasons [plaintiff] should recover the reasonable value of its services in quantum meruit.") *National Farmers Union Prop. & Cas. Co. v. Fuel Recover Co.*, 432 N.W.2d 788, 792 (Minn. Ct. App. 1988) (affirming arbitration award in quantum meruit for work performed after written contract was discharged by a supervening event).

Here, Slidell will show that Millennium requested Slidell perform work outside the scope of the written contract and perform administrative functions on Millennium's behalf. Slidell will also establish the reasonable value of those services. Finally, Slidell will establish that Millennium failed to pay for these benefits.

## UNRESOLVED EVIDENTIARY ISSUES

None.

**UNRESOLVED PROCEDURAL ISSUES**

None.

## IV. BREACH OF CONTRACT - INSTALLATION, COMMISSIONING AND TRAINING SUPPORT.

Millennium breached its contract with Slidell by failing to purchase support for Slidell's installation and commissioning of the packaging equipment and training of Millennium's employees to use the equipment. Slidell's breach of contract claim presents two questions for trial: (a) did the contract require the occurrence of any condition precedent prior to the maturation of Millennium's duty to pay for installation, commissioning and training? and (b) was Slidell damaged as a result of Millennium's breach?[1]

### A. Conditions Precedent.

The next jury question is whether Millennium frustrated a condition precedent to its obligation to purchase installation commissioning, and training. Although Millennium will assert that the equipment's completion was a condition precedent to its obligation, Millennium cannot rely on that condition precedent's failure to excuse its performance if it unjustifiably hindered Slidell from completing the equipment. *In Re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 501 (Minn. 1995); *Nomeco Building Specialties v. Pella Corp.*, 184 F.R.D. 609, 611 (D. Minn. 1999) (Tunheim, J.) (quoting *In re Hennepin County*, 540 N.W.2d at 502-3 ("Similarly, we have held that a party to a contract cannot take advantage of the failure of a condition precedent when the party itself has frustrated performance of that condition.")). Moreover, the prevention of a condition precedent's occurrence itself constitutes a breach: "Unjustifiable hindrance that prevents the other party's performance amounts to a breach."

[1] There is no dispute that the Contract obligated Millennium to purchase installation, commissioning, and training from Slidell. Contract, Ex. G §§ 7.2-7.3 (installation and commissioning) and App. F (training). The rates for those services are set out in Ex. F of the Contract. Moreover, there is no dispute Millennium failed to pay for those services.

Mem. Op. and Order at 23-4 (Docket # 140) (citing *Zobel & Dahl Constr. v. Crolty*, 356 N.W.2d 42, 45 (Minn. 1984)).

As explained in Section II, Slidell will prove that Millennium breached the equipment contract. Millennium cannot use its breach of the equipment contract to excuse its failure to purchase installation, commissioning, and training.

### B. Slidell Was Damaged by Millennium's Breach.

As previously discussed, Slidell is entitled to all its damages naturally flowing from Millennium's breach. Slidell will present straightforward evidence of its lost profits that resulted from Millennium's breach of its commitment to purchase installation, commissioning, and training.

## V. PROMISSORY ESTOPPEL – LONG-TERM EUROPEAN SUPPORT.

Millennium promised to pay Slidell for providing long-term field support at the Stallingborough, UK and LeHavre, France locations after the equipment was installed and commissioned. Relying on these promises, Slidell made substantial investments in setting its European office, so it would be in place and the technicians fully trained when Millennium received the equipment.

Applying the doctrine of promissory estoppel, Minnesota courts will imply a contract at law when one party relies to its detriment on another party's promise. *Del Hayes & Sons, Inc. v. Mitchell*, 230 N.W.2d 588, 593 (Minn. 1975). Regardless of whether it is written or spoken, a "promise which the promisor should reasonably expect to induce action of forbearance … on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Grouse v. Group Health Plan Inc.*, 306 N.W.2d 114, 116 (Minn. 1981) (quoting *Restatement (Second) of Contracts* § 90).

Slidell's promissory estoppel claim presents four questions for trial: (a) did Millennium make a clear and definite promise to pay Slidell for long-term field support services at the European locations following the installation and commissioning of the equipment? (b) was it reasonably foreseeable to Millennium that Slidell would rely on the promise? (c) did Slidell rely on the promise? and (d) was Slidell harmed or disadvantaged as a result of its reliance?

**A. Millennium's Promises.**

The first issue for the jury is whether Millennium made clear and definite promises to pay Slidell for long-term field support services at its European locations.

Slidell will prove that Millennium was concerned that Millennium would experience extended production losses if the Slidell equipment broke down and a Slidell technician was not readily available. Not wanting to wait for a U.S.-based technician to travel to Europe, Millennium pushed Slidell to establish a European office. In exchange for Slidell's commitment, Millennium promised to enter into a long-term support contract. During the initial negotiations for the equipment in September 1999, Millennium told Slidell that it would not enter into a contract to purchase the equipment unless Slidell agreed to provide long-term European support. Between July 2000 and January 2001 Millennium repeatedly promised to pay Slidell for 18 months of European support and promised to put its commitments in writing. All of these promises were clear and definite, justifying Slidell's reliance.

**B. Slidell's Reliance Was Reasonable Foreseeable.**

The second jury issue is whether Millennium could reasonably foresee that Slidell would rely on Millennium's promise to pay for long-term European support by making substantial investments to provide such support. Minnesota courts have held that a jury can find it reasonably foreseeable for a party to make substantial investments in preparation to provide

services when it receives assurances that the other party is committed to purchasing such services. *Dallum v. Farmers Union Central Exchange, Inc.*, 462 N.W.2d 608,610-613 (Minn. Ct. App. 1990) (defendant's assurances that it would be "interested in using your hauling services" and "we look forward to working with you on a continued basis" were sufficient for plaintiff to rely on to form company and to enter into 5-year lease agreement for trucks).

At trial, Slidell will show that Millennium made these promises with the knowledge that Slidell would act upon them. Millennium pressured Slidell to begin hiring European-based employees prior to finalizing the long-term support contract to ensure they were fully trained. Millennium even demanded to review the applicants' resumes. Millennium also required Slidell to set up an office in the Netherlands because it was mid-way between the United Kingdom and France plants. Slidell asked Millennium to confirm its commitment before taking the requested actions and, in each instance, Millennium confirmed its pledge to pay for such long-term support.

### C. Slidell Relied on Millennium's Promise and was Harmed as a Result of Millennium's Reneging.

The third issue for the jury to decide is whether Slidell relied to its detriment on Millennium's promises. Slidell will show that, in reliance on Millennium's promises, it provided millions of dollars in discounts and invested substantial sums to establish a European office and workforce.

At Millennium's urging, Slidell hired employees, and a Dutch law and accounting firm to establish a European office necessary to fulfill Slidell's long-term support obligations. Through April 2003, Slidell spent over $1,100,000 of its own money to open its European operations, expecting that it would receive more than $7,000,000 in profit for its services. As a result of Millennium's broken promises, Slidell has lost over $8,100,000.

**D. Millennium's Promise Must be Enforced to Prevent Injustice.**

Finally, Slidell intends to show that Millennium's promises to pay for long-term field support must be enforced to prevent injustice. A promise should be enforced if a promise was made to reduce the terms of the promise to writing or if the promisee's "detrimental reliance is of such a character and magnitude that refusal to enforce the contract would permit [Millennium] to perpetuate a fraud." Mem. Op. and Order at 36 (Docket # 140) (citing *Del Hayes*, 230 N.W.2d at 593-94).

Slidell will show that Millennium repeatedly promised to reduce the terms of its promises to writing. As such, the Court should imply a contract at law and require Millennium to pay damages.

Slidell will also show that Millennium effectively engaged in fraud by continuing to reaffirm its commitment to long-term field support even after it made an executive decision to forgo Slidell's services. After Slidell began investing in its European operations, Millennium Senior Vice President of Marketing, Tim Dowdle, decided that Millennium would not honor its commitments to pay Slidell for long-term European support. After Dowdle's decision was made, no one informed Slidell of Millennium's change of heart. In fact, after being informed of Dowdle's decision, several Millennium employees continued to inform Slidell that there was a consensus within Millennium to fund Slidell's European long-term support contract and further defined the terms of the agreement. At the same time, Millennium schemed covertly to acquire as much information it could about the equipment and to circumvent Slidell's support services.

If one party knows another party is relying on promises it does not intend to keep, it must inform the relying party. *Security State Bank of Howard Lake v. Dieltz*, 408 N.W.2d 186, 190 (Minn. Ct. App. 1987). Not doing so amounts to "either an intent to mislead or

unreasonable conduct amounting to negligence in failing to act." Prosser & Keaton, *Torts* 718 (5th ed. 1984, 1988 Supp.). Not only did Millennium fail to inform Slidell of its decision to renege on its commitments to long-term European support, but also it actively misled Slidell in an effort to acquire knowledge about Slidell's machines. Millennium's conduct justifies enforcement of its promises.

**UNRESOLVED EVIDENTIARY ISSUES**

None.

**UNRESOLVED PROCEDURAL ISSUES**

None.

Dated: October 4, 2004

s/ Jeffrey W. Post

Thomas S. Fraser (#31641)
Jeffrey W. Post (#0271883)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: (612) 492-7028/492-7193
Facsimile: (612) 492-7077

ATTORNEYS FOR SLIDELL, INC.

#2988956\3