**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| Slidell, Inc.,<br><br>Plaintiff and Counterdefendant,<br><br>v.<br><br>Millennium Inorganic Chemicals Inc.,<br><br>Defendant and Counterclaimant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Court File No. 02-CV-213 (JRT/FLN)<br><br>**MILLENNIUM'S MEMORANDUM CONCERNING THE PARTIES' PROPOSED JURY INSTRUCTIONS ON VARIOUS CONTRACT LAW ISSUES** |

## INTRODUCTION

Slidell has submitted several memoranda[1] critiquing Millennium proposed jury instructions or arguing in support of its own proposed jury instructions. Millennium submits this memorandum to respond to Slidell's arguments on those issues and to describe the applicable law on each of the issues mentioned in Slidell's memoranda. Separately, Millennium also is filing a document setting forth preliminary objections to Slidell's proposed jury instructions.

## ARGUMENT

### I. THE DOCTRINE OF HINDRANCE OR PREVENTION.

#### A. Although Courts Often Use the Word "Hindrance," the Doctrine Actually Requires Complete Prevention of Performance.

A party may not "hinder[] or render[] impossible" the performance of the other party's contractual obligations. *See Zobel & Dahl Constr. v. Crotty,* 356 N.W.2d 42, 45 (Minn. 1984). If a party does so, the other party's performance is excused, and the first party is in breach of the contract. *See id.*

[1] Plaintiff's Memorandum in Support of Its Motion in Opposition to Millennium's Breach of Contract Instruction (Dkt. No. 319); Slidell's Memorandum in Support of Its Jury Instruction Regarding the Duty of Good Faith and Fair Dealing (Dkt. No. 312); Slidell's Memorandum in Opposition to Concurrent Delay Jury Instruction (Dkt. No. 352); and Plaintiff's Memorandum in Opposition to Waiver or Equitable Estoppel Jury Instruction (Dkt. No. 356).

Slidell argues that Millennium may breach "by merely *hindering* [Slidell's] performance; it need not actually prevent performance." (Slidell Memo. (Dkt. No. 312) at 3.) Although some courts have used the terms "hindrance" and "prevention" in the disjunctive, a careful review of the caselaw reveals that *prevention* is the operative concept underlying the doctrine. *See, e.g., id.* at 46 (holding that homeowner committed breach by preventing contractor from entering property to complete performance); *Nodland v. Chirpich*, 240 N.W.2d 513, 365-67 (Minn. 1976) (holding that plaintiffs prevented occurrence of condition precedent by inducing third party to refrain from action triggering condition). In essence, the two words have been fused together into the concept of "prevention." *See Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982) (Posner, J.) (stating that breach "is excused if the promisee's hindrance or failure to cooperate *prevented* the promisor from performing the contract") (emphasis added). Thus, at least one authoritative commentator has observed that what is termed "hindrance" may be an excuse for non-performance only if the "hindering" conduct was something equivalent to prevention -- *not* merely something that "makes performance more difficult." Richard A. Lord, 13 *Williston on Contracts* § 39:9, at 540 (4th ed. 2000).

In fact, the Eighth Circuit has approved jury instructions that are the functional equivalent of Millennium's proposed instructions but are inconsistent with Slidell's proposed instructions. In *International Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1405 (8th Cir. 1993) (applying Minnesota law), the district court instructed the jury as follows: "A breach of contract may occur by a failure to perform the acts promised in the contract, *by preventing performance of the promised acts*, or by repudiating or denying the contract." *Id.* at 1405 (emphasis added) On appeal, the plaintiff argued "that the court should have instructed that [the defendant] also could have breached the contract by 'hindering' as distinguished from 'preventing' performance." *Id.*

The Eighth Circuit, however, affirmed, stating "[t]he district court's instructions were in accord with the weight of Minnesota law, which is that a party may breach the contract *only by preventing or making impossible the other party's performance -- not merely by making performance more difficult*." *Id.* (emphasis added) (citing *Knudsen v. Northwest Airlines, Inc.*, 450 N.W.2d 131, 133 (Minn. 1990); *Wild v. Rarig*, 234 N.W.2d 775, 790 (Minn. 1975); *Haase v. Stokely-Van Camp, Inc.*, 99 N.W.2d 898, 902 (Minn. 1959); *Beer Wholesalers, Inc. v. Miller Brewing Co.*, 426 N.W.2d 438, 441 (Minn. Ct. App. 1988); *American Warehousing v. Michael Ede Management, Inc.*, 414 N.W.2d 554, 557 (Minn. Ct. App. 1987)).

Consistent with all the above-cited authority, this Court appropriately synthesized the caselaw when ruling on the parties' summary judgment motions by writing: "Unjustifiable hindrance that *prevents* the other party's performance amounts to a breach." (Slip op. at 23 (emphasis added).) The Court should not deviate from that interpretation of the caselaw when instructing the jury on Slidell's allegations of "hindrance or prevention."

Slidell arguments for a broader interpretation of the doctrine -- one that would allow a finding of liability for mere hindrance, without prevention -- are inconsistent with the caselaw cited above and not otherwise supported by the authority cited in Slidell's memorandum. This Court's opinion in *White Stone Partners, L.P. v. Piper Jaffray Cos.*, 978 F. Supp. 878 (D. Minn. 1997), dealt with the issue whether the duty of good faith and fair dealing imposed an obligation on a party with "complete discretion to invoke an escape clause," thereby making its obligations "illusory." *Id.* at 881. The Court concluded that, although the Minnesota Supreme Court had not addressed that question, it likely "would require a party to exercise good faith in exercising an unlimited discretionary power over a term of the contract if necessary to effectuate the parties' intent and to save the contract from being illusory." *Id.* In a footnote, the Court noted that the

good faith obligation extended beyond the duty to "not make it impossible for the other party to perform." *Id.* at 881 n.2. What the Court meant, it appears, is that the duty of good faith may give rise to obligations other than the obligation to not hinder or prevent another party's performance. The footnote does not appear to say that evidence of hindrance, without prevention, would be sufficient to establish that type of breach of the good-faith duty. Thus, *White Stone* does not entail an interpretation of Minnesota law contrary to *Zobel*, *International Travel*, and the other cases cited above.

**B. Slidell Must Prove that Millennium's Alleged Prevention Actually Caused Slidell's Non-Performance.**

A party attempting to prove prevention must show a "causal link" between the other party's conduct and the resulting non-performance. *See LaSociete Generale Immobiliere v. Minneapolis Community Devel. Agency*, 44 F.3d 629, 638 (8th Cir. 1994) (citing *Nguyen v. Control Data Corp.*, 401 N.W.2d 101, 105-06 (Minn. Ct. App. 1987)). In *LSGI*, the plaintiff alleged that the defendant took actions that adversely affected the plaintiff's attempts to secure tenants, which was one of its contractual obligations. Because the plaintiff failed to prove that defendant's actions had any impact on potential tenants, the court concluded that the causal link had not been proved. *Id.* at 638.

In other words, the party claiming prevention must show that it could have and would have performed its contractual obligations *but for* the alleged prevention. *See v. Chirpich*, 240 N.W.2d 513, 516 (Minn. 1976) (stating that condition precedent is excused only if it "would have occurred except for . . . hindrance or prevention"); *see also General Metals, Inc. v. Green Fuel Economizer Co.*, 213 F. Supp. 641, 652 (D. Md. 1963).

## II. THE DUTY OF GOOD FAITH AND FAIR DEALING.

### A. The Duty of Good Faith and Fair Dealing Does Not Give Rise to a Separate, Free-Standing Cause of Action.

"Every contract or duty" under the UCC includes "an obligation of good faith in its performance or enforcement." Minn. Stat. § 336.1-203. Slidell argues that there are many ways in which a party may fail to use good faith and that each of them should be incorporated into the Court's jury instructions. (Slidell Memo. (Dkt. No. 312).)

It is important to note, however, that Slidell's allegation concerning good faith is *not* a free-standing claim. Section 1-203 of the UCC does *not* create "an independent cause of action for failure to perform or enforce in good faith" and does not "create a separate duty of fairness and reasonableness which can be independently breached." Minn. Stat. Ann. § 336.1-203, UCC cmt. Rather, Section 1-203 simply "means that a failure to perform or enforce, in good faith, *a specific duty or obligation under the contract*, constitutes a breach of that contract or makes unavailable . . . a remedial right or power." *Id.* (emphasis added).

Accordingly, Minnesota courts have held that the UCC's good-faith obligation is *not* an opportunity for a party to insert "new terms into the parties' agreement" or to "limit [a party's] ability to enforce its rights under" a contract. *See Larson v. Vermillion State Bank*, 567 N.W.2d 721, 723 (Minn. Ct. App. 1997) (holding that UCC permitted bank to call in demand note pursuant to terms of written agreement despite adverse business consequences for borrower); *see also Jones Distributing Co. v. White Consolidated Indus., Inc.*, 943 F. Supp. 1445, 1466 (N.D. Iowa 1996) (collecting cases) (stating that UCC duty of good faith and fair dealing does not "override or modify explicit contractual terms"). In other words, under the UCC, the doctrine of good faith merely assists the fact-finder in interpreting a contract and in evaluating the *manner* in which the parties perform their contractual obligations or demand contractual duties from the

other party. *See* Minn. Stat. Ann. § 336.1-203, UCC cmt.; *accord White Stone*, 978 F. Supp. at 881 (holding that UCC good faith obligation "require[s] a party to exercise good faith in exercising an unlimited discretionary power over a term of the contract if necessary to effectuate the parties' intent and to save the contract from being illusory"); *Best Vendors Co. v. Air Express, Inc.*, 2002 WL 31163039, at *6 (D. Minn. Sept. 22, 2002) (Tunheim, J.) (dismissing good-faith claim in part because, "[u]nlike the contract in *White Stone Partners* . . . , the Agreement here did not grant [plaintiff] unlimited discretion over a contractual term").

Thus, when instructing a jury on the UCC's obligation of good faith and fair dealing, it is *not* appropriate to ask the jury to consider the issue independent of the contract itself. Slidell's proposed Instruction No. 18 is inappropriate because it is entirely devoted to the issue of good faith and fair dealing. The first sentence of the proposed instruction improperly states that "Slidell has *also* alleged that Millennium breached its duty of good faith and fair dealing." Slidell's proposed instruction essentially instructs the jury that Slidell's allegation concerning good faith is a separate, free-standing claim.

### B. The UCC Duty of Good Faith and Fair Dealing is Specifically Defined by Statute and Is Different from the Common Law.

In the context of a sale of goods between two merchants,[2] "good faith" is defined by statute to mean "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *Id.* § 336.2-103(1)(b).

Slidell's proposed Instruction No. 18 is incorrect because it ignores the Minnesota statute that defines "good faith" for purposes of this case. Instead, Slidell relies heavily on Section 250 of the *Restatement (Second) of Contracts*. Slidell also relies on this Court's decision in *White*

[2] Both Slidell and Millennium are "merchants." *See id.* § 336.2-104(1). Millennium is a "merchant" because it possesses specialized knowledge or skill peculiar to the packaging equipment that was the subject of the contract. *See* Minn. Stat. § 336.2-104(1); *Regents of University of Minnesota v. Chief Indus.*, 106 F.3d 1409, 1411-12 (8th Cir. 1997).

*Stone*, which did not involve the sale of goods from one merchant to another. Thus, Slidell's proposed instruction on good faith and fair dealing should be rejected.

If the Court were to instruct the jury on the issue of good faith and fair dealing (which Millennium believes may not be warranted, *see infra* Part II.C.), the Court should do so with the last paragraph of Millennium's Amended Proposed Instruction No. 19, which closely tracks the applicable law, *see* Minn. Stat. § 336.2-103(1)(b); *id.* § 336.1-203 UCC cmt., and is incorporated into the primary marshalling instruction in such a way that it does not predominate when the jury decides the contract claim.

### C. Slidell Does Not Have Evidence Sufficient to Prove a Breach of the Duty of Good Faith and Fair Dealing.

The Court should not instruct the jury concerning the duty of good faith and fair dealing unless Slidell has evidence sufficient to support a finding in its favor. In fact, Slidell does not have the evidence necessary to satisfy either prong of the Article 2 good-faith standard.

With respect to the first prong, "honesty in fact," Slidell has no evidence that Millennium was dishonest in its dealings with Slidell. This prong is a subjective standard, so that Slidell must prove that Millennium did not have "honesty of intent." *See Eldon's Super Fresh Stores, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 207 N.W.2d 282, 287 (Minn. 1973) (applying "honesty in fact" language of § 336.1-201(19)). Slidell does not have any such evidence.

As for the second prong, Slidell also cannot prove that any of the alleged bad-faith conduct of Millennium was inconsistent with "reasonable commercial standards of fair dealing in the trade." Minn. Stat. § 336.2-103(1)(b). Slidell has neither the lay testimony nor the expert testimony sufficient to prove that fact.

**D. In the Alternative, any Instruction on the Duty of Good Faith and Fair Dealing Should Address the Conduct of Both Parties.**

If the Court were to give the jury an instruction on the duty of good faith and fair dealing that resembles Slidell's proposed Instruction No. 18, the Court should give an instruction that may be applied to either party. Slidell's instruction is designed only to be applied to Slidell's claim against Millennium. But Slidell also has such a duty, and the evidence points in favor of a finding that Slidell, not Millennium, breached that duty.

Or, as another alternative, if the Court prefers to give customized instructions on the duty of good faith and fair dealing, the Court should give the jury an equivalent that describes Slidell's lack of good faith, about which there is abundant evidence. For example, Slidell was not "honest in fact" when it extracted half a million dollars from Millennium in late 2001, purportedly to keep cash flowing to the project, when Slidell actually had no intention of completing the equipment but, rather, intended to commence a lawsuit against Millennium as soon as Millennium tired of giving money to Slidell without any sign of progress. Slidell was not "honest in fact" when it cannibalized part of the Millennium equipment for use at a European trade show. And Slidell was not "honest in fact" when it gave Millennium's vendor, RoviSys, admittedly "bogus" information about the PLC tag databases. The duty of good faith and fair dealing runs in both directions, so any jury instruction should allow the jury to find that either party has breached the duty.

**III. THE DOCTRINE OF CONCURRENT DELAY.**

Slidell argues that Millennium's Proposed Jury Instruction No. 21, entitled "Doctrine of Concurrent Delay," is inappropriate because the doctrine is inapplicable to this case. (Slidell Memo. (Dkt. No. 352) at 1-2.) Slidell has put forward three reasons in support of its objection to that instruction, but each asserted reason is wholly unpersuasive.

First, Slidell argues that an instruction on causation is sufficient to address the issue. Although the doctrine of concurrent delay has its roots in the "causation" requirement, *see Essex Electro Engineers, Inc. v. Danzig*, 224 F.3d 1283, 1295 (Fed. Cir. 2000), it does more than simply elaborate upon that requirement. Rather, under the doctrine, a party is foreclosed from establishing liability on a breach-of-contract claim for the other party's delays if the party asserting a claim contributed to the delays. *See, e.g., S.O.G.-San Ore-Gardner v. Missouri Pac. R.R. Co.*, 658 F.2d 562, 569 (8th Cir. 1981) (applying Arkansas law) (holding that plaintiff could not recover on claim where *both* parties had caused delay). The doctrine is akin to comparative fault in a negligence case. *See, e.g., McKay's Family Dodge v. Hardrives, Inc.*, 480 N.W.2d 141, 147 (Minn. Ct. App. 1992) (holding that failure to give comparative fault instruction was reversible error).

Second, Slidell argues that the doctrine is inapplicable in sales contracts because it applies only the contexts of construction contracts and government contracts. Slidell, however, is unable to cite to any authority declaring the doctrine inapplicable in the context of a sales contract. In fact, the doctrine *has* been applied to contracts for the sale of goods. *See Essex*, 224 F.3d 1283 (contract for the sale of floodlights). Regardless, even if the doctrine *typically* is applied to construction contracts, *see, e.g., Marino Constr. Co. v. Renner Architects*, 571 N.W.2d 923 (Wis. Ct. App. 1997), Slidell has failed to offer any cogent explanation why that rationale precludes its application here. Although the Slidell-Millennium contract is within the UCC, the contract involved the construction of large, complex machinery. The facts of this case are more similar to a construction contract than a contract for the sale of widgets.

Third, Slidell argues that the instruction will confuse the jury. Actually, an instruction on the doctrine of concurrent delay will be *less confusing* to the jury than the numerous other

instructions on contract issues, which are the subjects of other parts of this memorandum and multiple memoranda from Slidell. In fact, the Eighth Circuit has approved its use in a similar case involving claims by one party that its performance was hindered, prevented, or delayed by the other party. *See, e.g., S.O.G.*, 658 F.2d at 569.

**IV. SLIDELL'S DEFENSE OF PRIOR BREACH.**

Slidell has argued that Millennium's Proposed Jury Instruction No. 15, which is entitled "Slidell's Defenses to Millennium's Breach of Contract Claim," "misstates the law." (Slidell Memo. (Dkt. No. 319) at 1.) According to Slidell, "the first *material breach* of a contract serves as a defense of a subsequent breach regardless if the subsequent breach was directly caused by the first breach." (*Id.* at 1 (emphasis in the original).)

Millennium agrees that materiality is an appropriate concept for the Court's jury instructions. But Slidell's remaining arguments are a *non sequitur* and are simply wrong. A finding of materiality does not end the inquiry whether a subsequent breach is excused. While materiality may be *necessary* to the finding of a prior breach, it certainly is not *sufficient*.

In fact, there is nothing in Minnesota caselaw stating that a material breach by one party—by itself—*always* or *necessarily* supplies the other party with a viable defense to a subsequent breach. Slidell either overlooks or misreads the holdings of Minnesota cases concerning the defense of prior breach. In *MTS Co. v. Taiga Corp.*, 365 N.W.2d 321 (Minn. Ct. App. 1985), the Minnesota Court of Appeals stated that while a party generally cannot raise to its advantage a breach of contract against another when it first breached the contract itself, it noted that this rule had its limitations and that it did not apply in every instance of prior breach. *Id.* at 327. The court found the defense *had been proved* in that case because, first, the prior breach

was still occurring at the time the plaintiff commenced suit and, second, the plaintiff's breach "directly resulted from [defendant's] initial breach." *Id.*

More recently, in *Carlson Real Estate Co. v. Soltan*, 549 N.W.2d 376 (Minn. Ct. App. 1996), the Minnesota Court of Appeals was faced with the same situation -- whether a prior breach excused another party's subsequent breach. *Id.* at 380. The court explained that the subsequent party's breach was excused only if it satisfied the "*MTS* test." *Id.* Under the MTS test, a subsequent breach is excused if (1) the initial breach was continuing at the time that the subsequently breaching party brought the action against the initial breaching party and (2) the subsequent breach resulted directly from the initial breach. *Id.* The court ultimately found that the subsequent breach was *not* excused because, "although [the first breaching party] failed to make prompt repairs [as] required by the lease, [its] failure was *not a direct cause* of or a justification for [the second breaching party's] conduct." *Id.* (emphasis added).

Thus, for Slidell's breach of contract to be excused, Slidell must prove that (1) Millennium committed a prior, material breach of the contract; (2) Millennium was continuing to breach the contract at the time Slidell commenced suit; and (3) Millennium's breach directly caused Slidell's breach. Because Slidell's memorandum and proposed instructions omit the second and third requirements of the defense of prior breach, in direct contravention of Minnesota caselaw, the Court should reject Slidell's proposed instructions and adopt Millennium's Proposed Instruction No. 15.

Slidell argues in vain that Millennium's Proposed Instruction No. 15 "is inequitable because it would require Slidell to continue to perform the contract despite the fact that Millennium engaged in numerous material breaches if those breaches did not directly prevent Slidell from completing the contract." (Slidell Memo. (Dkt. No. 319) at 5.) As explained below

in Part V, a party to a contract is not required to continue to perform when the other party commits a breach of the contract. The party may choose to sue for the breach, or it may choose to continue to perform. But the party may not continue to perform until the other party's breach has ceased, and until the party decides for other reasons to stop performing, and *then* claim that the prior breach justifies its non-performance. That is what Slidell did in this case. Millennium's instruction is not inequitable because it accurately describes Minnesota law on the defense of prior breach.

## V. MILLENNIUM'S DEFENSES OF WAIVER AND ESTOPPEL.

Slidell argues that the Court should not give the jury any instructions on Millennium's affirmative defenses of waiver and estoppel. (Slidell Memo. (Dkt. No. 356).) These two doctrines that "have come to be quite commonly used interchangeably." 13 *Williston on Contracts* § 39:27, at 622-23.

### A. Millennium is Entitled to an Instruction on its Defense of Waiver.

Although a material breach of a contract may permit a party to rescind the contract, the party must exercise the right "*promptly* upon discovery of the facts from which it arises." *Gaertner v. Rees*, 107 N.W.2d 365, 368 (Minn. 1961) (emphasis added). In other words, a party cannot rely on the defense of prior breach if it continues to perform. If it does so, it waives the right to assert a breach through its continued performance. 14 *Williston on Contracts* § 43:15.

The common law is clearly established:

> Waiver of a contract provision may be made by a parties' express declaration, or it may be implied from a parties' representations that fall short of an expressed declaration of waiver, as well as from the parties' conduct and acts and circumstances surrounding performance of the contract. . . . .
>
> Under the doctrine of "implied waiver," a waiver of contractual rights may be found to exist where the conduct or acts

> of the party charged with waiver have either: (1) clearly manifested an intention to waive the contract provision or term allegedly waived; or (2) reasonably induced the nonwaiving party to rely upon an apparent waiver of such term or provision, to his or her detriment.

13 *Williston on Contracts* § 39:27, at 620-22.

Minnesota law naturally is consistent with these long-standing principles. *See Appollo v. Reynolds*, 364 N.W.2d 422, 424 (Minn. Ct. App. 1985) (holding that where "sellers continued to demand performance of the purchase agreement even though [a condition] had not been met, the sellers waived that condition").

**1. Millennium's Defense of Waiver is Not Barred by Paragraph 12 of the Contract.**

Slidell argues that Millennium cannot assert the affirmative defense of waiver because the contract requires that any waiver be in writing. (Slidell Memo. (Dkt. No. 356) at 3-5.) Slidell is incorrect.

> The general view is that a party to a written contract can waive a provision of that contract by conduct expressly or surrounding performance, despite the existence of a so-called anti-waiver or "failure to enforce" clause in the contract.
>
> [This rule] is based on the view that the nonwaiver clause itself, like any other term of the contract, is subject to waiver by agreement or conduct during performance. Thus, a provision that a term or condition of any sort cannot be eliminated by waiver, or by estoppel, is ineffective, and a party has the same power to waive the condition, or to be estopped from asserting it, as though the provision did not exist.

13 *Williston on Contracts* § 39:36, at 657, 658-59.

Minnesota courts agree. In *Larson v. Hill's Heating and Refrigeration of Bemidji, Inc.*, 400 N.W.2d 777 (Minn. Ct. App. 1987), the court wrote:

> The general common law rule is that a written contract can be varied or rescinded by oral agreement of the parties, even if the

> contract provides that it shall not be orally varied or rescinded. 6 *Corbin on Contracts* § 1295, at 206 (1962). In *Lamberton v. Connecticut Fire Insurance Co.*, 39 Minn. 129, 39 N.W. 76 (1888), the supreme court held that an insurance company had waived a contract's requirement of written notice of abandonment by orally assuring plaintiff that its property was insured, even though the contract had a provision against oral waivers. More recently, in *Goshey v. ITT Life Insurance Corporation*, 590 F.2d 737, 740 (8th Cir.1979), the court, applying Minnesota law, stated,
>
> > Ordinarily, under contract law, a provision purporting to prohibit modification of a contract except by a specified method does not prevent the parties to a contract from modifying it by some other methods.

*Id.* at 781. Thus, it is clear that Paragraph 12 of the contract has no affect on Millennium's affirmative defense that Slidell waived any breach by Millennium that may have occurred.

Furthermore, as Slidell acknowledges, (Slidell Memo. (Dkt. No. 356) at 3-4), any attempt to orally modify a written contract under the UCC, even if ineffective as a modification, nonetheless "operate[s] as a waiver." Minn. Stat. § 336.2-209(4). Thus, in *Albany Roller Mills, Inc. v. Northern United Feeds & Seeds, Inc.*, 397 N.W.2d 430 (Minn. Ct. App. 1986), the defendant argued that the plaintiff had orally released the defendant from any liability for breach of a written contract, which required a written modification. In response to the plaintiff's argument that the release was not in writing, the defendant argued that the breach had been waived by the oral statement. The court agreed, reasoning that, under Section 2-209(4), "the requirement of a writing may be waived." *Id.* at 433.

Slidell's Proposed Instruction No. 20 states, "A party who first breaches a contract is precluded from successfully claiming breach of contract against the other party. If you find that Millennium breached the contract first, you can not find that Slidell breached the contract." This instruction is flawed because it completely and inexcusably ignores the possibility of waiver.

The Court should use Millennium's Amended Proposed Instruction No. 15, which incorporates all of the necessary elements of waiver.

**2. Millennium's Defense of Waiver is Not Foreclosed by Slidell's Arguments Concerning Reservation of Rights.**

Slidell argues that any waiver instruction should be accompanied by an instruction on reservation of rights. (Slidell Memo. (Dkt. No. 356) at 2-3.) A reservation of rights, however, must be "explicit." Minn. Stat. § 336.1-308. Slidell never has made any such reservation of rights. Thus, there is no evidentiary basis for this type of instruction.

**3. Millennium's Defense of Waiver Does Not Contradict the UCC With Respect to Election of Remedies.**

Slidell argues that Millennium's waiver defense would force upon it an inappropriate election of remedies. (Slidell Memo. (Dkt. No. 356) at 6-7.) Slidell relies on official comments to the UCC "reject[ing] any doctrine of election of remedy as a fundamental policy" and stating that "remedies are essentially cumulative in nature and include all of the available remedies for breach." (Slidell Memo. (Dkt. No. 356) at 6 (quoting Minn. Stat. § 336.2-703, cmt.))

Slidell has misinterpreted this comment by taking it out of context. What the comment means is that an aggrieved seller need not elect *one remedy* to the exclusion of *another remedy*. The comment does *not* mean that a seller may forego *all* remedies for a breach of contract (*i.e.*, waive the breach) and, at a later date, revive the claim. As *Williston* says, "The doctrine of election and that of waiver should not be confused; an election is not a waiver of any rights under the contract but rather a choice between two inconsistent rights following a breach of the contract." 13 *Williston on Contracts* § 39:32, at 646. Rather,

> When one party commits a material breach of contract, the other party has a choice between two inconsistent rights -- he or she can either elect to allege a total breach, terminate the contract and bring an action, or, instead, elect to keep the contract in force, declare the

> default only a partial breach, and recover those damages caused by that partial breach -- but the non-breaching party, by electing to continue receiving benefits pursuant to the agreement, cannot then refuse to perform his or her part of the bargain.

*Id.* at 645.

Thus, Slidell miscites UCC Section 2-703 and misstates the purpose and meaning of that section by saying that it "empowers aggrieved sellers to *proceed under the contract* or to sue." (Slidell Memo. (Dkt. No. 356) at 6 (emphasis added).) In fact, Section 2-703 sets forth six possible remedies for a seller, but none of them involve "proceed[ing] under the contract." Subsection C allows a seller to "proceed under the next section respecting goods still identified to the contract," but the next section, Section 2-704, merely allows a seller with goods that are identified to a contract but unfinished to proceed to finish the goods *and sell them to another buyer* if doing so is a reasonable means of mitigating damages. *See* Minn. Stat. § 336.2-704(2) (providing that seller may finish such goods "in the exercise of reasonable commercial judgment for the purposes of avoiding loss and of effective realization"). Contrary to Slidell's arguments, nothing in Sections 2-703 or 2-704 provides that a party in Slidell's position may continue to perform under the contract, and expect continued performance from the other party, and meanwhile retain a right to later sue for a previous breach of contract.

**4. Millennium's Waiver Defense Must be Included in the Court's Jury Instructions.**

Slidell also argues that an instruction on waiver is "unnecessary and redundant because the basic concept of a breach takes Millennium's concerns into consideration without injecting further confusion in to the process." (Slidell Memo. (Dkt. No. 356) at 8.) This argument is ridiculous. Millennium has alleged waiver as an affirmative defense. The concept of waiver is nowhere incorporated into Slidell's claim for breach of contract. If Slidell's argument were

adopted in every case, juries would be prevented from ever finding an affirmative defense has been proved.

**B. Millennium is Entitled to an Instruction on its Defense of Estoppel.**

The elements of the affirmative defense of estoppel are as follows:

> 1. There must be conduct[,] acts, language or silence amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. . . . 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse, in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

*Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771, 777 (Minn. July 1, 2004) (quotations omitted). In short, Millennium will have ample evidence to support an instruction on this affirmative defense.

## CONCLUSION

For the foregoing reasons, Millennium respectfully requests that the Court adopt the instructions proposed in Millennium's Amended Proposed Jury Instructions in lieu of the instructions proposed in Slidell's Proposed Jury Instructions.

Dated: January 28, 2005

HALLELAND LEWIS NILAN & JOHNSON, P.A.

By: s/ Matthew E. Johnson

Michael T. Nilan Reg. No. 79224
Scott A. Smith Reg. No. 174026
Matthew E. Johnson Reg. No. 235945
Amanda M. Cialkowski Reg. No. 306514
600 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 338-1838

Attorneys for Defendant and Counterclaimant
Millennium Inorganic Chemicals Inc.