UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Slidell, Inc.,

Plaintiff,

v.

Millennium Inorganic Chemicals, Inc.,

Defendant.

Court File No. 02-CV-213 (JRT/FLN)

**SLIDELL'S RESPONSE TO DRAFT NO. 1 OF THE COURT'S INSTRUCTIONS TO THE JURY**

---

Slidell submits this memorandum to explain its objections and suggested changes to Draft No. 1 of the Court's jury instructions. Accompanying this document is a red-lined version of the instructions with Slidell's proposed changes.

1. **Instruction 6 – Burden of Proof**

All references to "preponderance" of the evidence should be changed to "greater weight" of the evidence because the "greater weight" will be more easily understood by the jury. The Committee revising Minnesota's civil jury instructions concluded that terms like "preponderance" of the evidence are often misunderstood by a jury and must further be defined in plain English. As a result, the term "preponderance" was eliminated from the Minnesota Civil Jury Instructions. MINNESOTA PRACTICE, *JURY INSTRUCTION GUIDE* 14.15 (1999) cmt. Likewise, the Eighth Circuit model jury instructions allows the use of either "preponderance" or "greater weight." We have substituted "greater weight" for "preponderance" each time throughout the draft jury instructions.

2. **Instruction 10 – Deposition Testimony**

"Video" was deleted from the first sentence because not all depositions presented were video.

3. **Instruction 14 – Stipulation to the Contract**

The added language clarifies that the Proprietary Information Disclosure Agreement is distinct from the Software Licensing Agreement. We also identified the exhibit number of the Contract for the jury's convenience.

4. **Instruction 15 – Breach of Contract**

**a. Identifying ways that a party can breach a contract**

The initial instruction does not identify the different ways Millennium breached the contract. As a result, the instruction does not provide the jury sufficient guidance in determining what activity constitutes a breach. The suggested changes track Minnesota CIVJIG 20.45 which specifically identifies several ways a contract can be breached. The proposed language identifies four ways that a party can breach a contract, including when a party:

- fails to carry out part of the contract that requires immediate performance,
- fails to seasonably agree on specifications or fails to cooperate in performing the contract,
- repudiates its obligation to perform the contract, or
- fails to fulfill its duty of good faith and fair dealing.

This instruction more accurately reflects Slidell's claims. All of these breaches are grounded in common law and the U.C.C. and have been discussed in Slidell's Memorandum in Opposition to Millennium's Breach of Contract Instruction. (Docket No. 319, pp. 3-5)

The instructions should state that a breach of the duty of good faith and fair dealing constitutes a breach of contract. The current instructions merely state that the duty of good faith

and fair dealing is part of every contract, but does not explain what happens if a party breaches its duty.

**b. Add repudiation instruction**

Because the Minnesota jury instruction for breach of contract specifically includes repudiation, it should be included in the instruction. CIVJIG 20.45. The Court should also include an additional instruction defining repudiation because the term is rarely used outside the legal context. Slidell requests the Court provide the following definition of repudiation in a separate instruction:

> Under Minnesota law, a party repudiates the contract if it makes it clear by words or conduct that it will not perform the contract, places itself in the position where it cannot perform the contract, or otherwise prevents the contract's performance.

MINN. CIVJIG 20.45; *Space Center, Inc. v. 451 Corp.*, 298 N.W.2d 443, 450 (Minn. 1980) (When a party "places itself in a position where it cannot perform the contract, or where the party otherwise prevents performance of the contract, the other contracting party may treat the contract as anticipatorily breached."); *See also* Slidell's Proposed Jury Instruction, No. 21 (Docket No. 287); Slidell's Memorandum in Opposition to Millennium's Breach of Contract Instruction, pp. 3-4 (Docket No. 319).

5. **Instruction 17 – Doctrine of Concurrent Delay**

An instruction based on the doctrine of concurrent delay is improper because it is inapplicable to this case and will confuse the jury. See Slidell's Memorandum in Opposition to Concurrent Delay Jury Instruction for a more detailed discussion. (Docket No. 352)

First, the doctrine of concurrent delay applies only to government and construction contracts. Millennium claims that the doctrine is equally applicable to sales contracts, citing *Essex Electro Nat'l, Inc. v. U.S.*, 224 F.3d 1283 (Fed. 2000). (Millennium's Memorandum

Concerning Contract Jury Instruction, p. 9, Docket No. 371)) *Essex* is distinguishable because it involved a government construction contract, not a contract for goods. In fact, *Essex* continued the doctrine of concurrent delay applies where a contractor seeks damages for the government's delay in a construction contract:

> A contractor seeking to prove the <u>government's liability</u> for a delay must establish the extent of the delay, the <u>contractor's</u> harm resulting from the delay, and the causal link between the <u>government's</u> wrongful acts and the delay. The <u>contractor</u> generally cannot recover for concurrent delays for the simple reason that no causal link can be shown.

*Id.* at 1295 (citations omitted).

Construction contracts are fundamentally different from the contract at hand because they often include several contractors and subcontractors who may not have privity of contract but whose delays often necessarily affect each other. In addition, construction contracts include specific provisions for liquidated damages arising from delays.

Without explanation, Millennium points to *S.O.G. San Ore-Gordner v. Missouri Pacific Railroad Co.*, 558 F. 2d 562 (8th 1981), as a case where "the Eight Circuit has approved [a concurrent delay instruction] in a similar case…" (Millennium's Memorandum Concerning Contract Jury Instructions, p. 10 (Docket No. 372)) *S.O.G.* actually illustrates the differences between a construction and U.C.C. contract. In *S.O.G.*, a bridge contractor entered into a contract with a railroad to build a bridge. The contract contained a liquidated damages provision of $600 for each day that the contractor delayed completion past the stipulated date. *Id.* 569-70. Unlike the case at hand, S.O.G.'s failure to perform the contract in a seasonable manner did not result in a breach of the underlying contract.

Second. the instruction is redundant because the concept of causality is already assumed within the breach of contract instruction. Importing additional instructions from comparative negligence or government construction law is unnecessary and confusing.

Third, the instruction is incomplete and confusing. Even in the field of construction law, the fact that both parties delayed performance of a project is insufficient to excuse them from recovering damages. The contractor seeking damages must also prove that the delays affected critical path. *See Essex*, 224 F.3d at 1295; *Morganti Nat'l, Inc. v. United States*, 49 Fed Cl. 110, 132 (C. Cl. 2001). Furthermore, if Slidell's delays were the result of Millennium's delays (e.g. failing to specify wire color or container size), Millennium would still be in breach despite the fact that the delays became intertwined.

Fourth, an instruction on the doctrine of concurrent delay will confuse the jury because several of Slidell's breach theories are not limited to delay. For example, Slidell would be entitled to damages for breach if Millennium's delays were made in bad faith. Slidell is also entitled to damages for breach if Millennium anticipatorily repudiated the contract. If the Court were to give the concurrent delay instruction, the jury may incorrectly assume that Slidell is not entitled to recover based on these other breaches of contract.

Fifth, the doctrine of concurrent delay, interpreted broadly, runs contrary to the Uniform Commercial Code, which both parties agree controls this contract. Minn. Stat. § 336.2-311 provides that, when a party fails to seasonably resolve specification issues or when a party fails to cooperate, the other party "is excused from any resulting delay in performance." Nowhere in the specific UCC section dealing with performance delays is the concept of concurrent delay incorporated.

If a concurrent delay instruction is given to the jury, Slidell requests that, at minimum, the instruction should account for these concerns.

6. **Instruction 18 – Breach of Contract Damages**

**a. Damages need not be based in mathematical certainty**

The jury should be instructed that although damages cannot be based on speculation or guess, they need not be based in mathematical certainty.[1] This legal rule of damages is taken for granted by the Courts and attorneys alike. *See, e.g., Bryngelson v. Minnesota Val. Breeders Ass'n*, 114 N.W.2d 748, 753 (Minn. 1962) ("[W]e do not intend to divert from the well-established rule that contemplated profit can be recovered even though not established with mathematical precision."); *Galbrath v. U.S. Premise Networking Servs., Inc.,* 2004 WL 1049042 *5 (Minn. Ct. App., May 11, 2004) (quoting *Imdieke v. Blenda-Life, Inc.*, 363 N.W.2d 121, 125 (Minn. Ct. App. 1985) ("Damages do not have to be proved with mathematical certainty. The evidence need only reasonably support the verdict for damages to be sustained."); *Crittenden v. Whippoorwill Ranch Compound,* 406 N.W.2d 624, 628 (Minn. Ct. App. 1987) (same); *Tate v. Scanlan Int'l, Inc.*, 403 N.W.2d 666, 673-74 (Minn. Ct. App. 1987) ("It is well established that contemplated profit can be recovered even though not established with mathematical certainty."); *Imdieke v. Blenda Life, Inc.*, 363 N.W.2d 121, 125 (Minn. Ct. App. 1985) (same); *Mary Ellen Enterprises, Inc. v. Camex, Inc.*, 68 F.23d 1065, 1072 (8th Cir. 1995); (same); *Pemberton v. OvaTech, Inc.*, 669 F.2d 553, 541 (8th Cir. 1982) ("[C]omplainant… is not required to prove his loss with mathematical accuracy."). Without this additional instruction, jurors may disregard damages that are not absolutely certain or are based on projections because they perceive them as

[1] This instruction should also be included in the trade secret damages instruction.

based on a "speculation or a guess." Including the "mathematical certainty" language will more precisely state the law and clarify possible confusion arising from the current definition.

**b. Replace "be offset by" with "take into account"**

Slidell requests that the final sentence state that damages awarded to Slidell must "take into account," rather than "be offset by," the monies Millennium has already paid Slidell. All of the testimony regarding damages will deduct the amount of money paid by Millennium under the contract. An instruction requiring any award to "be offset by" the money already paid may confuse the jury into thinking that it should deduct the money paid to Slidell a second time. Changing the language to "take into account" will ensure that the jury will consider the monies paid by Millennium, but avoid the risk that the amount be deducted twice.

**c. The jury should not be instructed on the limitation of liability provision.**

The jury should not be instructed on the limitation of liability provision of the contract because it is unnecessary, it misstates the terms of the limitation of liability provision, and it will confuse the jury. These issues have been more fully addressed in Slidell's response to summary judgment, two motions in limine, and a memorandum in opposition to Millennium's jury instruction. (Docket Nos. 116, 171, 201, 319).

Instruction No. 18 does not accurately reflect the limitation of liability provision. For example, the instruction states that neither party is entitled to indirect, consequential, or punitive damages. This is incorrect. Slidell is entitled to "cost of capital lost profits," which are generally categorized as lost profits. (Contract, ¶ 4 (Ex. 12)) In addition, the limitation provision does not apply to the "proprietary information provisions of section 11 and/or the operating systems software license provisions of section 12." (Contract, ¶ 4 (Ex. 12)). Any attempt to capture the limitation of liability provision in a jury instruction will be complicated and confusing.

The application of a limitation of liability provision is for the Court to enforce after the verdict is returned. *See*, *e.g.*, *Computrol, Inc. v. Newtrend, L.P.*, 203 F.3d 1064, 1069 (8th Cir. 2000) (applying limitation of liability provision after jury returns verdict). Accordingly, the Court should not submit any instruction regarding limitation of liability to the jury.

7. **Instruction 19 – Mitigation of Damages**

**a. Define reasonable mitigation efforts as reasonable at the time**

Instruction 19 should include the general principle of contract law — reasonableness of mitigation efforts should be judged at the time the decision was made, not by hindsight. FARNSWORTH CONTRACTS § 12.12 (3d ed. 1999) ("[A] party that takes steps that seems reasonable at the time will not be judged by hindsight."); *State v. Casey*, 115 N.W.2d 749, 755 (Minn. 1962) (Reasonableness "depends on the facts of each case."). *In re Kellet Aircraft Cor.p* articulates the rationale of this rule:

> When a choice has been required between two reasonable courses, the person whose wrong forced the choice cannot complain that one rather than the other was chosen. The rule of mitigation of damages may not be invoked by a contract breaker as a basis for hypercritical examination of conduct of the injured party, or merely for the purpose of showing that the injured person might have taken steps which seemed wiser or would have been more advantageous of the defaulter. One is not obligated to exalt the interest of the defaulter to his own probable detriment.

*In re Kellet Aircraft Corp.*, 186 F.2d 197, 198-99 (3d Cir. 1950). Including the "mathematical precision language" will provide a more precise explanation of the law and prevent the jury from holding the non-breaching party to a higher standard of mitigation than is required.

**b. Address the effect of the injunction on Slidell's duty to mitigate**

The Court should inform the jury about the status of the equipment once this litigation began. This issue has been more fully addressed in Slidell's Memorandum in Support of Millennium's Ability to Cover and the Injunction. (Docket No. 176) The jury will naturally be

curious to know what happened to the equipment and will likely think that Slidell should have sold the equipment to mitigate its damages. In fact, Slidell informed Millennium that it intended to sell the equipment in an effort to mitigate its damages. Millennium sought, and was granted, an injunction prohibiting Slidell from selling the equipment. As a result, Slidell has not been able to mitigate its damages in the manner that the jury will have expected it to. If no instruction is given, the jury may conclude that Slidell did not act reasonably and will deduct the amount of money Slidell could have received from immediately selling its equipment. The Court should therefore include an instruction regarding the injunction and Slidell's inability to mitigate its damages subsequent to the initiation of the lawsuit stating:

> At the beginning of this lawsuit, I froze the status quo. As a result Slidell has not made any further progress on the equipment or sold the equipment. The fact that I froze things should not affect your deliberations and is not meant to express a view on the merits of either party's claims. However, because of my decision, Slidell had no duty to resell the parts or equipment, whether finished or not, to reduce its losses.

**8. Instruction No. 20 – Elements of Trade Secret Claim**

**a. The trade secret instructions should be placed before the breach of contract instructions**

As a threshold matter, the trade secret instruction should be placed before the contract instructions because trade secret damages are subject to trebling and contract damages are not. If breach of contract damages are awarded first, the jury will be required to reduce the amount of overlapping trade secret damages. As a result, the contract damages that also constitute trade secret damages will not be subject to statutory trebling and Slidell's damages will be underrepresented.

**b. Delete "direct and proximate"**

The term "proximate cause" should be deleted because it is confusing and redundant. *See* XL-XLI MINNESOTA JURY INSTRUCTION GUIDES – CIVIL (4th ed. 1999). "Proximate cause" is legalese and does not provide any helpful information helpful to the jury. Other model jury instructions merely state that a plaintiff must show damages caused by the wrongdoers. *See* CIVJIG 20.60 ("you are to determine the amount of money that will fairly and adequately compensate [the plaintiff] for damages caused by [the defendant], who breached the contract.")

9. **Instruction No. 22 – Confidential Relationship**

The jury should be instructed that the Contract definitively establishes a confidential relationship between Slidell and Millennium. Currently, Instruction No. 22 states that an express written agreement is not a prerequisite to a confidential relationship, but does not explain what happens if one exists. Instead, Instruction No. 14 (on breach of contract) recognizes that the parties agree that Slidell and Millennium entered into a valid contract which includes a Proprietary Information Disclosure Agreement and Software Licensing Agreement.

Neither party disputes that the two agreements created a confidential relationship. (Contract, Ex. A (Ex. 12)) ("It is mutually agreed that any [proprietary information] that either party obtains from the other shall be kept confidential.") As such, the Court should include Slidell's proposed changes to Instruction No. 22.

10. **Instruction No. 23 – Trade Secret Damages**

The term "unjust enrichment" should be replaced with the term "gain." Because any benefit gained through misappropriation is, by definition, an "unjust enrichment," the term "gain" should be used because it captures the same meaning in plain English. If "unjust enrichment" is used, it would require an additional instruction to explain the phrase.

11. **Instruction No. 25 – Promissory Estoppel – Elements**

The second sentence should be deleted because it is prejudicial, confusing and unnecessary. Informing the jury that the Court previously found that the parties did not enter into a contract may lead the jury to assume that the Court has already rejected the merits of the claim. Nothing will be lost if the sentence is deleted.

12. **Instruction Nos. 27-28 – Quantum Meruit**

No quantum meruit instructions need be given because Slidell intends to voluntarily dismiss its claim.

**13. Instruction 29 – Specific Performance**

The Court should not submit a specific performance instruction to the jury because "[s]pecific performance is an equitable remedy addressed to the discretion of the court." *Fred O. Watson Co., v. U.S. Life Ins. Co.* 258 N.W.2d 776, 778 (Minn. 1977). When determining whether the remedy of specific performance is appropriate, a court must balance the equities of the case. *Dakota County HRA v. Blackwell*, 602 N.W.2d 243, 244 (Minn. 1999). This balancing of equities is solely the province of the Court, not the jury.

Asking the jury to decide whether the equipment is unique will place undue emphasis on one of many relevant factors for determining whether to grant specific performance. Several other factors are omitted, including: whether the party could have purchased replacement equipment, the relative financial condition of the parties, the difficulty of enforcing or supervising the order, unfairness, and public policy. Although it may be possible to submit an advisory instruction to the jury on several of these questions, it is unnecessary and ultimately distracting to the jury.

To the extent that the Court decides to submit any part of specific performance to the jury, the only appropriate fact issues for the jury to decide are uniqueness and the availability of alternative equipment.

Dated: February 3, 2005

s/ Jeffrey W. Jones
Thomas S. Fraser (#31641)
Jeffrey W. Post (#271883)
Jeffrey W. Jones (#311418)
Wade S. Davis (#326860)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: (612) 492-7000
Facsimile: (612) 492-7077

ATTORNEYS FOR SLIDELL, INC.

#3074939\1