UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Slidell, Inc.,

Plaintiff,

v.

Millennium Inorganic Chemicals, Inc.,

Defendant.

Court File No. 02-CV-213 (JFT/FLN)

**SLIDELL'S MEMORANDUM IN RESPONSE TO JURY INSTRUCTION ISSUES**

---

## INTRODUCTION

This memorandum will respond to several outstanding jury instruction issues.

## I. THE CURRENT INSTRUCTION ADEQUATELY ADDRESSES MILLENNIUM'S CONCERNS FOR DUPLICATIVE RECOVERY.

Millennium recently voiced two separate concerns about potential duplicative recovery arguing that: (1) Slidell should be forced to pursue its breach of contract claim or trade secret claim because damages may overlap, and (2) Slidell is not entitled to both actual loss and the unjust enrichment caused by Millennium's misappropriation of trade secrets. (Millennium's Mem. Regarding Election of Remedies (Docket No. 402); Feb. 8, 2005 e-mail from Matt Johnson)). These arguments misstate the law and would prevent Slidell from being made whole. Instructions informing the jury not to award duplicative damages will ensure that Slidell is made whole without any risk of double recovery.

### A. Slidell Should Be Allowed to Bring a Claim Under the Trade Secret Act and Breach of Contract. Any Overlapping Damages Should Be Allocated to Slidell's Trade Secret Damages.

According to the Contract, Slidell is entitled to recover for damages arising from Millennium's violation of the "Proprietary Information Agreement" and the "Software

Licensing Agreement." These agreements prohibit Millennium from transferring or using Slidell's proprietary information (only some of which may be considered a trade secret) without prior written consent. Similarly, Slidell is entitled to recover damages arising from Millennium's violation of the Minnesota Trade Secret Act ("MTSA"). Minn. Stat.§ 325C.01.

Millennium argues that Slidell must choose between its trade secret and contract claim under the election of remedies doctrine. This argument is illogical and contrary to the law. The election of remedies doctrine does not prevent a party from suing under separate claims—it is not an "election of theories" doctrine. Millennium's analysis is also contrary to the U.C.C., which "rejects any doctrine of election of remedy as a fundamental policy and thus the remedies are essentially cumulative in nature and include all of the available remedies for breach." Minn. Stat. § 336.2-703, cmt.

Millennium cites *Johnson v. Jensen*, 446 N.W.2d 644, 665-66 (Minn. 1989), where the plaintiff was awarded treble damages under Minn. Stat. § 561.04 and punitive damages under to Minn. Stat. § 549.20. *Johnson* held that the plaintiff could not recover two forms of exemplary damages for the same harm. As a result, the court reversed the treble damages award because it was smaller than the punitive damages award. *Id.* at 666. *Johnson* does not state that a party can bring only one claim, but rather that it cannot recover twice for the same injury.

Slidell can sue for breach of contract and violation of the MTSA, even if it is possible that some of Slidell's breach of contract damages may also overlap with its trade secret damages. Even though Slidell is not entitled to double recovery of damages, it is

entitled to seek recovery under both theories. After all, Slidell's breach of contract claim seeks damages for improper disclosure of proprietary information that does not constitute a trade secret, and it is possible that the jury may find that Millennium breached the contract but did not violate the Trade Secret Act.

Pursuant to *Johnson*, Slidell requests that any breach of contract damages that also constitute trade secret damages be allocated to the trade secret damages because trade secret damages may be subject to trebling. Slidell therefore asks the Court to add the following language to the draft jury instructions noted below:

> **Instruction 18:** When considering damages, you should take care not to award double recovery. A party may not recover damages twice for the same harm. *If you find that Slidell is entitled to contract damages that also constitute trade secret damages, you must award the damages under Slidell's trade secret claim.*

> **Instruction 23:** When considering damages, you should take care not to award double recovery. A party may not recover damages twice for the same harm. *If you find that Slidell is entitled to contract damages that also constitute trade secret damages, you must award the damages under Slidell's trade secret claim.*

### B. Slidell Is Entitled to Both the Actual Loss Caused By Millennium's Misappropriation and the Unjust Enrichment Caused by Misappropriation That Is Not Taken Into Account in Computing Actual Loss.

Millennium also seeks to rewrite the language of the Minnesota Trade Secret Act (MTSA) by arguing that Slidell cannot recover both unjust enrichment and its actual losses. (Johnson e-mail, Feb. 8, 2005). The statute explicitly states that a party can recover both: "Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in

computing the actual loss." Minn. Stat. § 325C.03. The jury instruction quotes the MTSA verbatim and should not be modified.

The plain language of the statute considers the possibility that a party may recover both actual loss and unjust enrichment so long as the actual loss is not taken into account in computing the unjust enrichment. Minn. Stat. § 325C.03. For Millennium's interpretation to be correct, the phrases "both the actual loss" "and the unjust enrichment" would have to be changed to "either the actual loss" "or the unjust enrichment." Further, the statute considers that both actual losses and unjust enrichment may be awarded at the same time so long as "the actual loss is not taken into account in computing unjust enrichment." Minn. Stat. § 325C.03.

Minnesota courts have awarded actual losses and unjust enrichment at the same time under the MTSA. For example, in *Aries Information Sys., Inc. v. Pacific Mgmt. Sys. Corp.*, 355 N.W.2d 366, 369 (Minn. Ct. App. 1985), *cert. denied* (Jun. 27, 1985), the Court affirmed an award of (1) losses to the plaintiff, (2) unjust enrichment to the defendant, (3) a royalty fee that would have gone to the plaintiff but for the misappropriation, (4) exemplary damages, and (5) attorney fees.[1] In explaining the decision, the stated that "[a] complainant may recover the actual loss caused by the misappropriation in addition to the unjust enrichment enjoyed by the wrongdoer." *Id.*

*Telex Corp. v. Int'l Business Machines Corp.*, 510 F.2d 894, 931 (10th Cir. 1975), cited in the Johnson 2/8 e-mail, actually affirmed an award that included plaintiff's losses

[1] Millennium does not cite one case applying Minnesota law. Several cases it does cite precede the adoption of the MTSA.

as well as unjust enrichment consisting of defendant's profit from selling equipment using the misappropriated information and the savings from not having to independently develop the technology. The court recognized that, a party may be entitled to its losses and the defendant's gains so long as the two are not duplicative:

> [S]ince the unification of law and equity, the proper measure of damages was no longer an "either or' matter, i.e., damages limited to either plaintiff's loss, or defendant's benefits, and that it could be a combination of both where the circumstances called for such in order to make the plaintiff whole. And perhaps that is the common thread in all of these cases, i.e., the plaintiff should be made whole, and, at the same time, there should be no double recovery.

*Id.* (citing *Clark v. Bunker*, 453 F.2d 1006 (9th Cir. 1972)).

The current jury instruction should be given because it states the statutory language verbatim and recognizes the principles of making the plaintiff whole while avoiding double recovery.

## II. PROPOSED REPUDIATION INSTRUCTION

Slidell suggests the following language for the anticipatory repudiation definition:

> **Option 1**
> Repudiation requires an overt communication of intent not to perform the contract, or an action that renders performance impossible or demonstrates a clear determination not to continue with performance. A party also repudiates if it makes it clear that it will not perform unless the other party submits to conditions that go beyond the contract.
>
> **Option 2**
> Repudiation requires an overt communication of intent not to perform the contract, or an action that renders performance impossible or demonstrates a clear determination not to continue with performance. A party also repudiates if it makes it clear that it will not perform unless the other party submits to a modification to the contract.

Summary Judgment Order, p. 25 (Docket No. 140) ("While the contract provided that the parties could seek change orders at any time, it nowhere provided that either party could condition its further performance of the contract on the other party's acquiescence to a change order.); *Unique Sys., Inc. v. Zotos Int'l, Inc.*, 622 F.2d 373, 377 (8th Cir. 1980) ("If a party to a contract demands of the other party a performance to which he has no right under the contract and states definitely that, unless his demand is complied with, he will not render his promised performance, an anticipatory repudiation has been committed."); Minn. Stat. § 336.2-610, cmt. 2 ("statement of intention not to perform except on conditions which go beyond the contract… becomes a repudiation.").

## III. CONCURRENT DELAY INSTRUCTION

The Court should not include an instruction on the doctrine of concurrent delay for several reasons.[2] First, the notion of causality is already implicit in the breach of contract instruction. Any additional instruction would be redundant.

Second, the doctrine of concurrent delay applies only to government and construction contracts. Every case cited by Millennium, including the case cited to in the Am. Jur.§ 610, involves either a government or construction contract. These contracts are unique because they often (1) involve contractors and subcontractors that may have obligations to each other even though they do not have contractual privity, (2) include provisions for liquidated delay damages, (3) utilize standardized contracts developed by the trades (*e.g.*, the American Institute of Architects), (4) address issues of sovereign

[2] Slidell's position has been more fully developed in Docket No. 352.

immunity, (5) occur in highly unionized fields, and (6) must comply with statutes and regulations that govern governmental contracts. This Court has already decided that the contract is between two merchants and is governed by the U.C.C., not a building contractor type contracts (Summary Judgment Order, p. 30 (Docket No. 140)).

Third, the proposed instruction does not distinguish critical path delays that affect the entire project from other delays. Fourth, the instruction does not take into account breaches of the duty of good faith and fair dealing. Even if Slidell is partially responsible for delays in the project, it is entitled to damages for breach if Millennium's delays were made in bad faith. Finally, the instruction assumes that the only form of breach of contract is a delay breach.

## IV. THE COURT SHOULD NOT INCLUDE A CONTINUING BREACH OR CAUSAL BREACH IN THE DEFENSE INSTRUCTION.

Millennium argues that the contract defenses instruction should incorporate a three-prong test to determine when one breach excuses a subsequent breach: (1) that the breach is material, (2) the breach is continuing, and (3) the breach caused the plaintiff to breach. This instruction is redundant in light of the current waiver instruction and it misstates the law as it applies to this case. The sole reason for Millennium's attempt to introduce the additional language is to inject an additional theory of waiver into the prior breach doctrine. This is unnecessary because the court is already instructing the jury that an initial material breach does not excuse a subsequent breach if the initial breach is waived. (Instruction 15A).

This Court articulated the correct law in its summary judgment Order, "a party who first breaches a contract is usually precluded from successfully claiming against the other party." (Docket No. 140, p. 23 (Summary Judgment Order)) (quoting *Carlson Real Estate Co. v. Soltan*, 549 N.W.2d 376, 380 (Minn. Ct. App. 1996) (citing *Space Ctr., Inc. v. 451 Corp.*, 298 N.W.2d 443, 451 (Minn. 1980) (17A C.J.S. *Contracts* §458) ("party who commits the first breach is… deprived of the right to complain of a subsequent breach by the opposite party")); *see also Anvil Min. Co. v. Humble*, 153 U.S. 540, 552 (1894) ("Generally speaking, it is true that when a contract is not performed the party who is guilty of the first breach is the one upon whom rests all the liability for nonperformance."); *Navato v. Sletten*, 560 F.2d 340, 346 (8th Cir. 1977) ("Where, as here, the party seeking to recover was the first to breach the contract, that party cannot maintain an action against the other for failure to perform.").

**A. The Standard Is Material Breach, Not an Initial Breach That Directly Causes a Second Breach**

In order for a breach to justify the injured party's suspension of performance, the breach must be material. E. ALLEN FARNSWORTH CONTRACTS § 8.16 (3d ed. 1999). *See also Skogeberg v. Huisman*, 2003 WL 22014576 * 2 (Minn. Ct. App. 2003) (unpublished) quoting BLACKS LAW DICTIONARY 183 (7th ed. 1999) ("A material breach is '[a] substantial breach of contract, usu[ally] excusing the aggrieved party from further performance and affording it the right to sue for damages.'"); *Miller v. Mills Construction, Inc.*, 352 F.3d 1166, 1172-72 (8th Cir. 2003) ("A material breach of contract allows the aggrieved party to cancel the contract and recover damages for the

breach."); *Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 84 (Minn. 2004) (citing RESTATEMENT (SECOND) OF CONTRACTS (1981) (A party's duty to perform is conditioned on there being no previous uncured material breach by the other party.)).

To be material, an initial breach does not have to directly prevent the second party from performing. Rather, a breach is material when it defeats "one of the primary purposes" of the contract or "goes to the root or essence of the contract." *Steller v. Thomas*, 45 N.W.2d 537, 542 (Minn. 1950); *Skogeberg*, 2003 WL 22014576 *3 (Minn. Ct. App. 2003) (unpublished) (quoting SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 44:55 (4th ed. 2000)). Materiality is determined by considering several factors, including: "the extent to which the injured party will be deprived of the benefit which he reasonably expected," and "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Larken, Inc. v. Larken Airport Hotel Ltd Partnership*, 1997 WL 561268 *2 (Minn. Ct. App. Sept. 9, 1997) (unpublished) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)). None of these criteria require Millennium's initial breach to prevent Slidell's performance to be material.

**1. Anticipatory repudiation is a material breach even if it does not cause the second breach.**

Second, if one party anticipatorily repudiates the contract, the aggrieved party is excused from completing performance, even though it could do so, and may seek damages for a total breach of the contract. *Nat'l Liberty Corp. v. Wal-Mart Stores, Inc.*, 120 F.3d 913, 916 (8th Cir. 1997); RESTATEMENT (SECOND) OF CONTRACTS § 253

(1981); K. O'MALLEY, ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 126.04 (5th ed. 2000). Anticipatory repudiation occurs when one party does any of the following: (1) makes it clear by words or conduct that it will not perform the contract, (2) places itself in a position where it cannot perform the contract, or (3) prevents the performance of the contract. *Space Center, Inc. v. 451 Corp.*, 298 N.W.2d 443, 450 (Minn. 1980). Slidell would be excused from performing if Millennium anticipatorily repudiated even if Slidell could finish the project. For example, it is possible for Slidell to finish the equipment even if Millennium informed Slidell that it would not pay for the supervisory system. Just because Slidell could finish the project does not mean that it was legally obligated to do so.

Likewise, "[i]f a party to a contract demands of the other party a performance to which he has no right under the contract and states definitively, that unless his demands are complied with, he will not render his performance, an anticipatorily repudiation has been committed." *Unique Sys.*, 622 F.2d at 377. As this Court noted in the summary judgment Order, "[w]hile the contract provided that the parties could seek change orders at any time, it nowhere provided that either party could condition its further performance of the contract on the other party's acquiescence to a change order." (Docket No. 140, p. 25 (Summary Judgment Order)) Millennium, by the admissions of its own witnesses, refused to accept the equipment with the supervisory system specified in the contract. By refusing to accept the equipment unless Slidell removed the supervisory system from the contract's scope, Millennium anticipatorily repudiated the contract. Even though Slidell

was capable of continuing its performance, Millennium's repudiation excused Slidell's decision to stop performance and sue.

**2. Failing to cooperate or seasonably perform is a material breach even if it does not cause the second breach.**

Third, where a party to a contract fails to cooperate or seasonably perform, the other party may treat the failure to specify or cooperate as a material breach of the contract. Minn. Stat. § 336.2-311(3). Millennium argues that Slidell's duties will not be excused merely because unforeseen difficulties make it more expensive to complete the project. (Docket No. 290, No. 15 (Millennium's Jury Instructions)) This ignores that parties must seasonably perform their duties and cooperate in good faith. Millennium's interpretation of the law effectively allows parties to make it more difficult and expensive for the other party without concern of liability. Even if Millennium's failure to specify and cooperate did not "prevent" Slidell from performing, Slidell is entitled to treat Millennium's failure to cooperate as a material breach. As such, Slidell's duties to perform are excused and Slidell is entitled to sue for damages.

**3. A party may breach of the duty of good faith and fair dealing without preventing the other party from performing.**

Fourth, if a party violates its duties of good faith and fair dealing, it is guilty of materially breaching the contract and the aggrieved party is excused of performance and may seek damages for a total breach of the contract. *See Instrumentation Servs. Inc.* 283 N.W.2d at 908-09. Millennium violated its duties of good faith and fair dealing if it did any of the following:

- Abused its power to specify terms of the contract;

- Acted to evade the spirit of the bargain.
- Abused a power to specify terms of the contract.
- Acted to evade the spirit of the bargain
- Refused to fulfill some duty or contractual obligation is based on an ulterior motive, not an honest mistake regarding Millennium's rights or duties.
- Engaged in arbitrary and unreasonable conduct that has the effect of preventing Slidell from receiving the fruits of the contract.

*In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 502 (Minn. 1995); *Zobel and Dahl Constr. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984); *I-Systems v. Software, Inc.*, 2004 WL 742082, *12 (D. Minn. 2004) (Tunheim, J.); *White Stone Partners, LP v. Piper Jaffray Cos., Inc.*, 978 F. Supp. 878, 881-88 (D. Minn. 1997) (Tunheim, J.). None of these breaches of the duty of good faith require a party to prevent the other party from performing to breach the underlying contract.

**B. Millennium's Instruction Is Inequitable**

Millennium's interpretation of the law is inequitable because it would require Slidell to continue to perform despite the fact that Millennium engaged in numerous material breaches if those breaches did not directly prevent Slidell from completing the contract. For example, Millennium would require Slidell to complete the contract even if Millennium breached the contract's nondisclosure and confidentiality clauses, and transferred proprietary supervisory system information to Slidell's competitors, and stole Slidell's trade secrets because Slidell could still, arguably, complete the contract.

Similarly, Slidell would be required to perform even if Millennium wrongfully refused to refund the discount because, even though it would not receive the compensation it was due under the contract, Slidell could arguably complete the contract. Under Millennium's theory, Slidell would also be required to complete the contract even if Millennium failed to resolve design issues and refused to cooperate with testing and delivery of the equipment because Slidell could complete performance on an albeit slower schedule. Slidell would also be required to complete the performance even if Millennium conditioned its performance on Slidell accepting change orders requiring work outside the contract. Each of these situations constitutes a material breach because at least one of the primary purposes of the contract would be defeated, Slidell would be deprived of the benefit it reasonably expected. It would be inequitable and contrary to Minnesota law to require Slidell to perform in such circumstances.

### C. If the Court Includes a Continuing Breach Instruction, the Court Should Also Provide a Reservation of Rights and Reasonable Continuation Instruction.

Based on the U.C.C. and case law, if the Court instructs the jury on continuing breach, it should also provide the following instruction:

> A party will not waive its right to sue for breach of contract if it continues to perform under a reservation of rights. A party reserves its rights if it communicates in an appropriate manner that it will continue to render performance without jeopardizing its rights to make a claim or sue at a later time. In addition, a party is entitled to continue performing in a reasonable manner after the other party materially breaches the contract without waiving its rights to sue for damages.

#### 1. Reservation of rights

According to the U.C.C., a party can continue to perform a contract despite the other party's breach and still maintain its rights to sue for damages if it reserves its rights. Minn. Stat. § 336.1-308. The comment explains the purpose of Section 1-308:

> This section . . . is intended to apply in any situation where, before performance of a transaction has been made or completed, some dispute arises over the deal. In such situations, one party's failure to proceed with or to accept performance as demanded or tendered by the other may result in extensive liability for breach if the claim of the one so failing is rejected and the other's position is held to be valid. On the other hand, going ahead with or continuing to receive performance as demanded or tendered and despite the dispute involves a risk of loss of rights by "waiver," "estoppel," "election" or "accord and satisfaction." This election gives a party in such predicament the privilege, by "explicit reservation of rights" in any appropriate language, to continue to render or receive performance "in a manner demanded or offered by the other party" without jeopardy to the rights reserved when later asserted.

Minn. Stat. § 336.1-207, cmt. If Slidell reserved its rights, the jury cannot conclude that it waived its rights to sue at a later date. *See, e.g., Northern Helix Co. v. United States*, 456 F.2d 546, 553-555 (C. Cl. 1972). Millennium itself acknowledges that Mr. McGregor continually informed Millennium that there were numerous commercial issues that needed to be resolved. For example, Slidell reserved its rights when it signed Change Order No. 4 under protest. (TT 2218-19; 2194-5 (Williams)).

**2. The U.C.C. allows an aggrieved sellers to continue performance in a reasonable manner without waiving its rights to sue.**

Likewise, section 2-704 allows a seller with unfinished goods to exercise "reasonable commercial judgment for the purpose of avoiding loss… either complete the manufacture and wholly identify the goods to the contract or cease manufacture… or proceed in any other reasonable manner." Minn. Stat § 2-704. In these instances, the

burden is on Millennium "to show the commercially unreasonable nature of the seller's action in completing manufacture." *Id.*, cmt. 2; *see also Northern Helix Co. v. United States*, 456 F.2d 546, 553-555 (C. Cl. 1972) (a party can continue performance and accepting payments without waiving its rights to sue). In addition, Slidell's acceptance of payment after Millennium's breach will not waive any claim for breach unless the acceptance meets the requirement of accord and satisfaction. Minn. Stat. §§ 336.2-703, 336.2-704. "An election to continue performance does not constitute waiver of the right to damages for a breach." *McAlpine v. AAMCO Automatic Transmission, Inc.*, 46 F.Supp. 1232, 1251 (S.D. Mich. 1978).

Dated: February 21, 2005

s/ Wade S. Davis
Thomas S. Fraser (#31641)
Jeffrey W. Post (#271883)
Jeffrey W. Jones (#311418)
Wade S. Davis (#326860)
FREDRIKSON & BYRON, P.A.
4000 U.S. Bank Plaza
200 South Sixth Street
Minneapolis, MN 55402-1425
Telephone: (612) 492-7028/492-7193
Facsimile: (612) 492-7077

ATTORNEYS FOR SLIDELL, INC.

#3083176\1