**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Slidell, Inc.,<br><br>Plaintiff and Counterdefendant,<br><br>v.<br><br>Millennium Inorganic Chemicals Inc.,<br><br>Defendant and Counterclaimant. | Court File No. 02-CV-213 (JRT/FLN)<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO SLIDELL'S MOTION TO DETERMINE LIABILITY FOR WRONGFUL INJUNCTION** |

## INTRODUCTION

Slidell's claim upon the injunction bond is, to say the least, audacious. In essence, Slidell asserts that, after (1) accepting over $8.8 million in progress payments from Millennium on an $11 million contract, (2) unilaterally halting all work after concluding that it would cost more to complete the Contract than to walk away from it, (3) failing to complete and deliver even a single piece of equipment and (4) ultimately being held liable for breaching its contract with Millennium, it was wrongfully prohibited from taking *further* advantage of its breach by selling off Millennium's partially-completed equipment, returning component parts for value, and pocketing the proceeds. Audacity, however, is no substitute for merit, and Slidell's Motion is devoid of the latter.

Rule 65(c) of the Federal Rules of Civil Procedure authorizes recovery upon an injunction bond only where the party seeking recovery was "wrongfully enjoined" – i.e., where the enjoined party had the legal right all along to perform the prohibited conduct. Slidell cannot possibly make such a showing. If Slidell was *not* legally justified in

halting its work and failing to complete a single item of packaging equipment to Millennium, as the jury expressly held, taking advantage of its own wrongful conduct by selling off the equipment and parts for value and keeping the proceeds would have been just as unjustified. Moreover, Millennium possessed property interests in the equipment and parts Slidell intended to resell; Slidell had no right to convert those property interests for its own benefit. Finally, after pocketing over $8.8 million from Millennium, earning between $1.5 million and $4.6 million in profit, delivering nothing and walking away from the Contract, any notion that Slidell might garner a double recovery on equipment paid for by Millennium screams of unjust enrichment. Slidell was *not* legally entitled to further abridge Millennium's contract rights, to convert Millennium's property rights, or to unjustly enrich itself at Millennium's expense.

Slidell has also failed to establish a *prima facie* case of proof of harm caused by the injunction. Nothing in Mr. McGregor's declaration suggests that the so-called "window of opportunity" to sell the partially-completed equipment would have *in fact* materialized into a sale; that Slidell might have sold some of the partially-completed equipment to some unidentified third party in Europe, but for the injunction, is speculative at best. Similarly, Slidell's claim that it was wrongfully precluded from returning parts for value is completely lacking in specifics.

Finally, equitable considerations compel the denial of Slidell's claim. Slidell's hoped-for unjust enrichment, itself totally inequitable, would never have been possible had Slidell simply done what the Contract obligated it to do – complete the equipment. Instead, Slidell chose a different and ultimately misguided path; it deliberately shut down

the project, breached its contract, and filed this lawsuit. Three years later, Slidell has only its wrongheaded decisions to blame for the equipment's loss of value. Allowing Slidell any recovery upon the injunction bond, Millennium submits, would be manifestly inequitable and unjust.

For these reasons, as set forth in further detail below, the Court should deny Slidell's motion. Additionally, since Slidell is not entitled to recover upon the injunction bond and the preliminary injunction has now been dissolved, the time has come to release Millennium and its surety from all liability on the bond. The Court should do so.

## ARGUMENT

The standard for recovery upon an injunction bond is well established in the law. First, Slidell must demonstrate that it was "wrongfully enjoined or restrained" within the meaning of Rule 65(c) of the Federal Rules of Procedure. Second, Slidell must show that it suffered damage or harm directly attributable to the issuance of the injunction. Finally, even if the Court deems that the first two elements have been met, the Court retains equitable discretion to deny recovery on the bond. *See, e.g., Milan Express, Inc. v. Averitt Express, Inc.*, 254 F.3d 966, 981 (11th Cir. 2001).

As the following discussion shows, Slidell's motion fails on each of these grounds.

### I. Slidell Was Not Wrongfully Enjoined As A Matter Of Law.

According to Slidell, the mere fact that Millennium did not obtain a permanent injunction against Slidell, standing alone, compels the conclusion that the preliminary injunction issued in April, 2002 was "wrongful" within the meaning of Rule 65(c).

(Slidell Memorandum at 5.) Slidell is flatly incorrect; the salient issue is not the outcome of Millennium's claims for injunctive relief, but whether or not Slidell at all times had the legal right to sell or return the equipment for value. Slidell unquestionably did *not* have that legal right – by selling off the equipment for value and keeping those proceeds for itself, Slidell would have further breached the Contract, converted Millennium's property interests in the equipment, and unjustly enriched itself at Millennium's expense. Hence, Slidell was not "wrongfully enjoined" within the meaning of Rule 65(c).

### A. <u>The Test For Whether A Party Was Wrongfully Enjoined Under Rule 65(c) Is Whether The Enjoined Party Had At All Times The Legal Right To Act As It Wished.</u>

Rule 65(c) expressly provides that any party "who is found to have been wrongfully enjoined or restrained" may recover upon an injunction bond for harm caused by such restraint. The Rule does not define what constitutes "wrongfully enjoined or restrained." However, those Circuits to consider the issue have uniformly held that the question ultimately rises or falls upon "whether the enjoined party had the legal right to act as it wished." *Guzman v. Local 32B-32J, Service Employees Intern. Union, AFL-CIO*, 72 F.3d 260, 263 (2d Cir. 1995); *see also Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994), *cert. denied* 513 U.S. 822 (1994); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2nd Cir. 1990); Note, *Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c)*, 99 Harv. L. Rev. 828, 836-42 (1986) (liability on injunction bond may lie only if injunction prohibited other party from doing what it was legally entitled to do). The salient issue, thus, is "whether [Slidell] had the legal right to act as it wished." *Guzman*, *supra*.

**B. <u>Because Slidell Did Not Possess The Legal Right To Sell Or Return The Partially-Completed Equipment For Value, As A Matter Of Law Slidell Was Not Wrongfully Enjoined.</u>**

For three separate and independent reasons, it is abundantly clear that Slidell never possessed the legal right to sell off the partially-completed equipment, return component parts for value, and pocket the proceeds.

First, the jury's verdict on the parties' breach of contract claims conclusively demonstrates that Slidell did not have the legal right to do what it sought to do. The jury found that, after accepting over $8.8 million in milestone progress payments from Millennium, failing to deliver a single packaging machine or component thereof to Millennium and deliberately stopping all work on the project, Slidell breached the Contract without legal justification. *See* Special Verdict Form, dated February 24, 2005 (Docket No. 426), at 3 ("Question 5: Was Slidell's breach legally justified? Answer: No"). If stopping work and failing to deliver the equipment after receiving over $8.8 million in progress payments was a legally-unjustified breach of contract – as the jury found – exploiting that breach by selling off to other parties the equipment it refused to complete for Millennium and keeping the proceeds of those transactions for itself would have been, if possible, even more unjustifiable. Put another way, Slidell can hardly claim that it was legally permitted to enjoy the fruits of the tree it deliberately poisoned. The jury's verdict on the breach-of-contract issues, thus, stands as conclusive proof that Slidell did *not* possess the legal right to act as it wished.

Second, Slidell's contemplated course of conduct would have amounted to a conversion of Millennium's property interests in the items Slidell sought to sell or return. Under Minn. Stat. § 336.2-501(1), once the assemblies and component parts Slidell acquired for the Millennium project were "identified to the contract," Millennium obtained an enforceable "special property interest" in those items:

> **336.2-501. Insurable interest in goods; manner of identification of goods**
>
> (1) *The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers* even though the goods so identified are nonconforming and the buyer has an option to return or reject them. *Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs*
>
> * * *
>
> *(a) if the contract is for the sale of future goods . . ., when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers . . . .*

(Emphasis added.) Furthermore, as Official Comment 4 to § 2-501 of the Uniform Commercial Code clearly provides, once materials or parts are identified to the contract, the buyer acquires a special property interest even though the seller has not completed its manufacture or assembly of the finished goods:

> (4) in view of the limited function of identification *there is no requirement in this section that the goods be in deliverable state or that all of the seller's duties with respect to the processing of the goods be completed in order that identification occur* . . .. (Emphasis added.)

The evidence adduced at trial demonstrates that, certainly by the time Slidell stopped all work under the Contract, all of the raw materials, component parts, assemblies and subassemblies acquired or manufactured by Slidell for use in this project were identified to the contract within the meaning of Minn. Stat. § 336.2-501(1). *See, e.g.*, Trial Tr. 1533-34 (all parts, components, etc. automatically listed in bills of materials for each item of equipment); 2764 (when parts are checked out of the storage or crib areas, they are "issued" to the Contract); P-2579 (bill of materials for Stallingborough equipment listing assemblies, subassemblies, components and raw materials, and assigning individual part numbers for equipment). Accordingly, at the time Slidell sought to sell off or return the partially-equipment or parts, Millennium possessed a special property interest in those items.

Although Minnesota courts have yet to confront the issue, other jurisdictions have uniformly held that conduct which deprives a buyer of special property interests created by § 2-501 of the Uniform Commercial Code constitutes an unlawful conversion of those interests for which the actor is liable in damages. *See, e.g., Draper v. Minneapolis-Moline, Inc.*, 100 Ill. App.2d 324, 241 N.E.2d 342, 344 (1968); *Ross Cattle Co. v. Lewis*, 415 S.2d 1029, 1037 (Miss. 1982); *Mitsui & Co. (U.S.A.), Inc. v. Hudson Tank Terminals Corp.*, 1985 WL 1668 (S.D. N.Y. 1985).[1] Here, Slidell intended to transfer the physical

[1] There is no reason to believe that the Minnesota courts would reach a different result. Under Minnesota law, an action for conversion lies where (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest. *Larson v. Archer-Daniels-Midland Co.*, 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948); *Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994), rev. denied 1994 Minn. LEXIS 534 (June 29, 1994); *H.J., Inc. v. International Tel. & Tel. Corp.*, 867 F.2d 1531,

items to third parties for value, without Millennium's consent, and keep the proceeds of those transactions for itself – the textbook definition of conversion.

Finally, there can be no doubt but that Slidell hoped to unjustly enrich itself from a situation Slidell itself created. Under Minnesota law, an unjust enrichment occurs when one party enriches itself at the expense of another, whether illegally or inequitably. *In re D&P Partnership*, 91 F.3d 1072 (8th Cir. 1996); *Gallinger v. North Star Hosp. Mut. Assurance*, *Ltd.*, 64 F.3d 422 (8th Cir. 1995).

Even on the limited record before the Court at the hearing on the preliminary injunction, the Court found it to be "obvious" that "were Slidell to dismantle the equipment and sell the parts to third parties . . . Slidell would be unjustly enriched." (Memorandum Opinion and Order Granting Preliminary Injunction, dated April 17, 2002 (Docket No. 17) at 9.) Millennium had already paid over $8.8 million under the Contract for the partially-completed equipment and component parts Slidell intended to return or resell to other parties. Slidell possessed those component items *only* because it decided to stop all work under the Contract; had Slidell completed its work, Millennium, not Slidell, would have been in possession of the items Slidell hoped to sell. Furthermore, Slidell had no intention of refunding to Millennium any of the proceeds from those sales or returns, but hoped to reap a double recovery for its efforts.

The evidence adduced at trial further cements the Court's conclusion that Slidell sought to unjustly enrich itself. Millennium's progress payments under the Contract fully

---

1547 (8th Cir. 1989); *Bloom v. Hennepin County*, 783 F. Supp. 418, 440 (D. Minn. 1992). So long as a legally-recognized property interest exists, under Minnesota law it can be unlawfully converted.

funded Slidell's purchase of raw materials and component parts and its assembly of the equipment; Slidell's expert witness testified that Slidell had realized a net profit on the job of nearly $1.5 million when it stopped work (Trial Tr. 2581, P-2691), and Millennium's expert put Slidell's net profit at the time it stopped work at $4.6 million. (Trial Tr. 3728-29, D-1360.0025). Moreover, both Slidell's and Millennium's witnesses testified that, at the time Slidell stopped work, Millennium had paid Slidell $500,000 *more* than what Slidell was entitled to under the milestone progress payment schedule set forth in the Contract. (Trial Tr. 1363 (Aaron Skogen); Trial Tr. 3633-35 (Paul Berwanger).) Yet, Slidell intended to take the equipment and parts for which Millennium had fully paid, sell or return them for value, and pocket the proceeds. Finally, the jury's verdict shows that Slidell breached the contract, without legal justification, by halting work and refusing to complete the machines. Given these facts, that Slidell intended to unjustly enrich itself at Millennium's expense is undeniable. *See, e.g., Klass v. Twin City Federal Sav. & Loan Asso.*, 291 Minn. 68, 190 N.W.2d 493 (1971) (after commercial tenant paid as rent all real estate taxes and special assessments levied against owner-landlord, owner-landlord received partial refund of the real estate taxes previously levied on the property as part of condemnation proceeding but refused to reimburse tenant; *held,* owner-landlord liable to tenant upon theory of unjust enrichment).

**C. <u>Slidell's Contention That It Was Wrongfully Enjoined Is Meritless</u>**

Slidell's claim upon the injunction bond is essentially founded upon a single proposition: according to Slidell, "Millennium's failure to prevail on its equitable claims entitles Slidell to recover on the injunction bond," without any need to examine the

legality of Slidell's proposed conduct. (Slidell Memorandum at 1.) That Slidell would seek to avoid this Court's examination of the legality of Slidell's proposed conduct is understandable, in light of the outcome of the trial, but wrong – the salient test, as noted above, is whether Slidell had "the legal right to act as it wished." It did not, and that, Millennium submits, is the end of the inquiry.

Slidell's assertion that the Court need only consider the outcome of Millennium's equitable claims[2] and not the legality of Slidell's proposed conduct is not supported by the authorities cited by Slidell on pages 4-8 of its Memorandum. Indeed, the principal case upon which Slidell relies, *Middlewest Motor Freight Bureau v. United States*, 433 F.2d 212 (8th Cir. 1970), *cert. denied* 404 U.S. 999 (1971), demonstrates the opposite – the Court's ultimate holding on the merits of the enjoined party's conduct, and not the mere outcome of the equitable claims, dictates whether preliminary equitable relief was wrongfully issued.

In *Middlewest*, a group of motor freight carriers sought judicial review of an Interstate Commerce Commission order rejecting a new, higher rate tariff submitted by the carriers. The carriers initially obtained a temporary restraining order, secured by a bond, prohibiting the ICC from enforcing its order; that ruling permitted the carriers to

---

[2] In its Counterclaim, Millennium asserted claims for breach of contract (Count I), specific performance (Count II), replevin (Count III), unjust enrichment (Count IV), equitable lien (Count V),and constructive trust (Count VI). At the summary judgment stage, Millennium voluntarily dismissed Count IV, and the Court granted summary judgment in Slidell's favor on Counts V and VI and denied summary judgment on Counts II and III. (Memorandum Opinion and Order, dated June 28, 2004 (Docket No.140), at 7 n.2 and 40.) Millennium then voluntarily dismissed its specific performance and replevin claims during trial for the reasons discussed *infra* at 23-24.

charge the higher rates prescribed in the new tariff while the TRO was in effect. The carriers then moved for a preliminary injunction, and a three-judge panel concluded on the merits of the case that the carriers were not entitled to injunctive relief, denied the carrier's motion, and dissolved the TRO. 433 F.2d at 217. At that point, the carriers voluntarily dismissed their request for judicial review; however, both the United States and freight shippers who paid higher tariffs during the pendency of the TRO moved for damages upon the bond. According to the Eighth Circuit, the three-judge panel's determination that the carriers were not entitled to injunctive relief from the ICC's order rejecting the new tariff established that the TRO was wrongfully entered. *Id.* at 243. As the Eighth Circuit noted, however, had the carriers not withdrawn their petition for judicial review at that point and proceeded instead to trial, a subsequent ruling in the carriers' favor on the merits of the ICC's order would have vitiated any claim that the TRO had been wrongfully issued:

> It is also significant in this case that while there has not been a determination on the merits of the ICC order, there has been a determination that the carriers were not entitled to injunctive relief from the order. . . . So here, the failure to carry the burden of proof on the interlocutory injunction shows that the temporary restraining order should not have been issued, *in the absence of a later decision in the carriers' favor on the merits.*

*Id.* at 243 (emphasis added). In this case, similarly, as noted above the jury's finding in Millennium's favor on both parties' breach of contract claims demonstrates that Slidell was not legally entitled to sell off or return Millennium's partially-completed equipment and retain the proceeds. According to the Eighth Circuit's holding in *Middlewest,* the jury's ultimate decision in favor of Millennium on the merits, and not the voluntary

withdrawal or dismissal of Millennium's equitable claims, is entitled to primacy and dictates the denial of Slidell's motion.

The other authorities cited by Slidell are, upon closer examination, entirely consistent with this view. In *Nintendo, supra*, plaintiff brought a copyright infringement action, obtained a preliminary injunction forbidding the defendant from selling allegedly infringing devices, and posted a bond to secure the injunction. At trial, however, defendant proved that its device did not infringe upon plaintiff's copyrighted item, and the district court entered judgment in defendant's favor and vacated the injunction. 16 F.3d at 1034. Because defendant established that it had the legal right to sell its devices without infringing upon plaintiff's copyright, the Ninth Circuit found that it had been wrongfully enjoined. *Id.* at 1036. In *Blumenthal, supra,* a brokerage firm alleging that its former employees stole customer lists and other records obtained a preliminary injunction preventing the employees from using the records or soliciting business from the brokerage's customers. However, an arbitration panel subsequently dissolved the preliminary injunction on the merits. 910 F.2d at 1051. According to the Second Circuit, "[i]n light of the ultimate decision on the merits by the arbitrators," the former employees were wrongfully enjoined as a matter of law. *Id.* at 1055. Similarly, in *Pendarvis v. Ormet Corp.*, 135 F.3d 1036 (5th Cir. 1998), following a jury's verdict holding that a landowner was wrongfully enjoined from making certain uses of his property, the district court dissolved the preliminary injunction.[3]

[3] Three other cases cited by Slidell are completely off point. In *Sionix Corp. v. Moorehead*, 299 F. Supp. 2d 1082, 1087 (S.D. Cal. 2003), plaintiff did not dispute that

In each of these cases, thus, the courts' initial issuance of a TRO or preliminary injunction against the enjoined party was followed by a judicial evaluation, on the merits, of the legality of the enjoined party's complained-of conduct. That evaluation, in turn, drove *both* (1) the plaintiff's right to permanent equitable relief in its favor *and* (2) if the plaintiff was not so entitled, the defendant's right to claim against the injunction bond for being wrongfully enjoined. *This* case differs – here, by contrast, there has never been a determination that Slidell *in fact* possessed the legal right to sell or return the partially-completed equipment and keep the proceeds, and the jury's verdict on the parties' contract claims, as noted previously, establishes that Slidell *never* possessed that right. Absent a determination on the merits in favor of the legality of Slidell's proposed conduct, the mere fact that Millennium did not obtain a permanent injunction against Slidell at trial in no way establishes that Slidell was wrongfully enjoined within the meaning of Rule 65(c).

Slidell also argues that, because the Contract vested title to the partially-constructed equipment and parts in Slidell and Millennium had no perfected security interest therein, Slidell was free to dispose of the equipment and parts in any manner it saw fit without judicial restraint. (Slidell Memorandum at 6.) The mere fact that one

---

defendant was wrongfully enjoined; Millennium makes no such admission here. In *Silvers v. TTC Industries, Inc.*, 395 F. Supp. 1318, 1322 (E.D. Tenn. 1974), *aff'd* 513 F.2d 632 (6th Cir. 1975), plaintiff's preliminary injunction against defendant was held to have been wrongful after plaintiff's entire complaint was dismissed on the merits; no similar facts exist here. Finally, in *Wainwright Secur., Inc. v. Wall Street Transcript Corp.*, 80 F.R.D. 103, 106 (S.D.N.Y. 1978), the court, held that defendant was entitled to assert a claim upon an injunction bond where plaintiff, after securing the injunction, later sought to dismiss all claims with prejudice and on the merits; here, Millennium pursued and prevailed upon its contract claims against Slidell at trial.

possesses title in a good does not legally entitle him or her to use that good to violate the rights of another. Here, Millennium had legally-protected contract interests in Slidell's performance generally, and special property interests conferred by Minn. Stat. § 336.2-501(1) in the partially-completed equipment and parts. Had Slidell carried out its desire to sell off or return those items for value, as noted above Slidell would have violated both categories of Millennium's protected interests, regardless of who possessed legal title to the equipment and parts. Slidell did not possess the legal right to do so.

Finally, Slidell invites the Court simply to ignore the jury's verdict in favor of Millennium on the parties' breach of contract claims, contending that the outcome of the trial is irrelevant to the issue of whether Slidell was wrongfully enjoined. (Slidell Memorandum at 6-8.) Again, the authorities Slidell cites offer no support for this invitation. For instance, though Slidell correctly quotes a portion of the Supreme Court's opinion from *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 317 (1999), that "[t]he resolution of the merits is immaterial to the validity of petitioners' potential claim on the bond," Slidell conveniently omits *why* the Supreme Court reached that conclusion – the facts supporting the claim that the injunction was wrongfully issued were *totally independent* from the facts underlying the merits of the case, as the entire quotation makes clear:

> *In the present case, however, petitioners' basis for arguing that the preliminary injunction was wrongfully issued* – which is that the District Court lacked the power to restrain their use of assets pending a money judgment – *is independent of respondents' claim on the merits* – which is that petitioners breached the note instrument by failing to make the August 1997 interest payment. The resolution of the merits is immaterial to the validity of petitioners' potential claim on the bond.

*Id.* (Emphasis added.) Because the question of whether the enjoined party in *Grupo Mexicano* possessed the legal right to act as it wished was not settled by the money judgment adverse to it, the Supreme Court properly considered whether the injunction was wrongfully entered without regard to the outcome on the merits. In this case, by contrast, the jury's ruling on the merits is unequivocally fatal to Slidell's claim that it had the legal right to sell off the partially-completed equipment and parts and keep the proceeds; the Court can scarcely ignore it.

Slidell's reliance upon *Blumenthal*, *supra*, is similarly misplaced. In that case, as noted previously, a preliminary injunction issued in favor of a brokerage firm against two of its former employees prohibiting them from taking customer lists and other information to their new business was subsequently vacated by an arbitration panel upon the merits. However, the arbitrators also denied the employees' claims for damages and awarded damages of $80,000 in favor of the brokerage firm against one of the two employees. Though the Second Circuit held that the resolution of the damages claims did not preclude the employees from recovering for wrongful injunction, again a reading of the Second Circuit's opinion shows how Slidell has misconstrued the reasons for the court's holding:

> The fact that the panel awarded Merrill Lynch damages of $80,000 against plaintiff Fein and did not award any damages to the plaintiffs does not compel a contrary conclusion [that plaintiffs were wrongfully enjoined]. *The heart of the controversy, for both plaintiffs and defendant, was plaintiffs' ability to carry on business with their alleged clients, not the assessment of damages.* The crux of the relief sought by Merrill Lynch was an injunction against the plaintiffs to counter the potential harm to the firm from the former brokers' continued solicitation of their old customers.

> Merrill Lynch was squarely rebuffed by the arbitrators in this regard. *The fact that the arbitrators chose to award Merrill Lynch monetary relief, for unspecified reasons, against one of the plaintiffs does not undermine the fact that plaintiffs were fully vindicated on the central issue in the case.*

*Blumenthal*, 910 F.2d at 1055. (Emphasis added.) Thus, the Second Circuit did not draw the "legal vs. equitable" distinction Slidell urges this Court to make – rather, it found that the party seeking recovery against the bond was "fully vindicated on the central issue in the case" and therefore entitled to recover. Of course, Millennium, not Slidell, was the party "fully vindicated on the central issue" in *this* case – which party breached the Contract without legal justification or excuse. Accordingly, *Blumenthal* similarly provides no support to Slidell's plea that the Court should simply ignore the outcome of the case on the merits.

## II. Slidell Has Not Shown That The Entry Of The Injunction Caused It Any Harm Or Damage.

In addition to proving that it was wrongfully enjoined, Slidell must also show that it suffered some harm or damage that is directly traceable to the issuance of the injunction. In this regard, only damages limited to those actually and proximately resulting from the effect of the injunction itself may be recovered. *Lever Bros. Co. v. International Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir. 1976). Moreover, "certainty in the fact of damage is essential." *Nintendo, supra,* 16 F.3d at 1038, *quoting from Palmer v. Connecticut Railway & Lighting Co.*, 311 U.S. 544, 561 (1941).

On this Motion, the only damage evidence submitted to the Court by Slidell was the Declaration of James McGregor. In that document, Mr. McGregor lists three

categories of harm Slidell allegedly sustained due to the injunction – (1) loss of "a narrow window of opportunity to sell the Equipment," (2) the burden of storing the equipment in its facility, and (3) costs associated with Slidell's inability to return component parts for value. (Declaration of James McGregor, ¶¶ 2, 3, 5.) None of these allegations sets forth a *prima facie* case of harm resulting from the injunction.

As to the first point, Slidell claims that, had it been permitted to sell the equipment, it possessed a "narrow window of opportunity" to attract a European buyer through an April, 2004 trade show in Europe. Not only does Mr. McGregor fail to identify a single likely buyer, he fails to suggest even that unidentified buyers may have been interested in the equipment. Moreover, it is undisputed that Slidell *did* attend the April 2004 trade show in Europe, with a "shell" titanium dioxide packaging machine on display,[4] but found no buyers. (Trial Tr. 1456, 2771-2.) Mr. McGregor's apparent suggestion that Slidell might have found a European buyer for the packaging machines it was building for Millennium, but for the injunction, is sheer speculation and cannot be credited.[5]

---

[4] Though Slidell's witnesses denied it at trial, Slidell's records showed that it intended to transport to Europe and display at this trade show all or portions of the packaging machines Slidell was building for Millennium's Le Havre facility. *See* Trial Tr. 1399-1401; D-161.

[5] In the event the Court should permit this or any other damage claim to proceed to the evidentiary hearing Slidell seeks, obviously Millennium would be entitled to conduct discovery on Slidell's claim, including written discovery, depositions of Slidell personnel, and depositions of those European entities identified by Slidell (if any) as potential buyers of the equipment. The discovery process alone would likely last months.

Second, as to Slidell's claim that it suffered the burden of storing the equipment on its plant floor, nowhere does Mr. McGregor identify any out-of-pocket expense Slidell occurred as a result of the injunction. Indeed, since Slidell apparently stored the equipment on its plant floor during the pendency of the litigation and makes no claim that it lost revenues due to decreased available plant floor space, there is no evidence that Slidell suffered any out-of-pocket costs or losses by storing the equipment at its plant.

Slidell seems to suggest that it was forced to store the equipment on its plant floor because, Slidell alleges, "Millennium refused . . . to contribute to the storage costs." (Declaration of James McGregor at 1, ¶ 3; Slidell Memorandum at 3.) As shown by the accompanying Affidavit of Scott A. Smith ("Smith Aff."), this charge is absolutely and demonstrably *false*. Less than one week after the Court entered the preliminary injunction, Millennium informed Slidell that, if Slidell had a present need to move the equipment to free up production space on Slidell's plant floor, Millennium would search for an appropriate off-site storage facility. (Smith Aff., Exhibit A thereto.) After Slidell responded three months later, indicating that the equipment needed to be immediately moved off-site (*id*, Exhibit B thereto), Millennium's Paul Berwanger traveled to Owatonna in late August 2002, personally viewed several storage facilities with Jim McGregor, and agreed with Mr. McGregor on the most suitable facility for storing the equipment. (*Id.*, ¶¶ 5-8.) Slidell then demanded that Millennium pay 100 % of all transportation costs, facility rental fees, insurance costs, and all other expenses relating to the storage of the equipment (*id.*, Exhibit F thereto); in response, Millennium refused to absorb 100% of all storage-related costs but agreed to share those costs with Slidell on a

50/50 basis. (*Id.*, Exhibit G thereto.) Slidell never formally responded to Millennium's suggested 50/50 cost-sharing agreement and ultimately did not pursue the storage issue further. (*Id.*, ¶ 12.) Against this backdrop, Slidell's claim that Millennium refused to contribute to the storage costs of the equipment is outrageous.

Finally, although Slidell claims that it was not able to use or return parts and sustained "large interest, cost and finance penalties" and legal expenses due to the injunction (Declaration of James McGregor, ¶ 5), again Slidell's evidence is awash in general statements unsupported by specific, probative evidence. Slidell has not identified a single vendor who would have accepted returns of parts, but for the injunction; it has revealed neither the types of parts it claims it could have returned, nor their value; and, it has not attempted to explain how it was that the injunction, as opposed to Slidell's general business malaise and lack of money to pay its bills, caused Slidell's creditors to initiate collection actions against it.[6] Absent such evidence, Millennium submits, Slidell has adduced nothing worthy of this Court's consideration on the question of damages.

## III. Equitable Considerations Compel The Denial Of Slidell's Motion.

Even if Slidell were to convince the Court that Slidell has otherwise satisfied the prerequisites to recovery under Rule 65(c), Millennium submits that the Court should exercise its equitable discretion and deny Slidell any recovery upon the injunction bond. Though Slidell contends in its motion papers that "the language of Rule 65(c) is

---

[6] Again, if the Court were otherwise inclined to allow this particular claim to proceed to an evidentiary hearing, Millennium would require, and be entitled to, extensive written and deposition discovery as to the returns Slidell asserts it could have made but did not. One can easily foresee a multitude of depositions of vendors alone.

mandatory" and prohibits the Court from exercising discretion so as to deny Slidell's claim against the injunction on equitable grounds (Slidell Memorandum at 10), virtually the entire federal judiciary holds otherwise. The United States Supreme Court, the Fifth, Seventh, Ninth, Tenth, Eleventh, District of Columbia and Federal Circuits, and district courts in the Second, Third, Fourth and Eighth Circuits have all held that an award of damages upon an injunction bond rests in the sound discretion of the Court's equity jurisdiction, even if a claimant has otherwise satisfied the prerequisites to recovery upon an injunction bond. *Russell v. Farley*, 105 U.S. 433, 441-42 (1881); *H&R Block, Inc. v. McCaslin*, 541 F.2d 1098, 1099 (5th Cir. 1976); *Coyne-Delany Co. v. Capital Development Board of the State of Illinois*, 717 F.2d 385, 391 (7th Cir. 1983); *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036-37 (9th Cir. 1994); *Newspaper & Periodical Drivers & Helpers Union, Local 921 v. San Francisco Newspaper Agency*, 89 F.3d 629, 634 (9th Cir. 1996); *State of Kansas ex rel. Stephan v. Adams*, 705 F.2d 1267, 1270 (10th Cir. 1983); *State of Alabama ex rel. Siegelman v. U.S. E.P.A.*, 925 F.2d 385, 390 (11th Cir. 1991); *Page Communications Engineers, Inc. v. Froehlke*, 475 F.2d 994, 996 (D.C. Cir. 1973); *Zenith Radio Corp. v. United States*, 823 F.2d 518, 521 (Fed. Cir. 1987); *Intercapital Debt Trading, Ltd. v. Cantor Fitzgerald, Inc.*, 1996 WL 167820, *1 (S.D. N.Y. 1996); *Bascom Food Products Corp. v. Reese Finer Foods, Inc.*, 715 F. Supp. 616, 641 n. 31 (D. N.J. 1989); *Network Int'l, L.C. v. Worldcom Technologies, Inc.*, 133 F. Supp.2d 713, 718 (D. Md. 2001); *Curtis 1000 v. Youngblade, Inc.*, 878 F. Supp. 1224, 1277 n.51 (N.D. Iowa 1995).[7]

---

[7] Slidell also contends that "the Eighth Circuit has not recognized an equitable exception

If unjust enrichment is not a legal obstacle to Slidell's attempt to recover upon the injunction bond, it surely is an equitable one, and Millennium reiterates its prior discussion, *supra*, regarding Slidell's attempt to unjustly enrich itself by selling off the equipment and parts and keeping the proceeds for itself. But unjust enrichment is far from the only equitable consideration applicable here.

Another equitable obstacle to Slidell's attempt to recover upon the bond is the fact that, had Slidell simply done what the Contract required it to do – complete the packaging machines and deliver them to Millennium – it would have mitigated its damages by receiving far more from Millennium than what it could possibly have realized upon reselling the items. At the time it stopped work, the remaining balance of milestone payments on the Contract was at least $2.3 million, plus additional payments for installation, commissioning and training; Slidell could have earned that simply by finishing its work.[8] Conversely, Slidell's own business records establish that it purchased less than $950,000 of component parts and raw materials for the Millennium project (Trial Tr. 2569, 2764, D-1458A). Even if Slidell could have returned every component part it purchased on a dollar-for-dollar basis – an unlikely prospect – Slidell had far more to gain from honoring its contractual obligations to Millennium than from

---

to Rule 65(c) . . . ." (Slidell Memorandum at 10.) However, the Eighth Circuit has never rejected an equitable exception to Rule 65(c), either. Given the overwhelming weight of authority cited above, Millennium submits that the Eighth Circuit would almost certainly follow the lead of every other jurisdiction to decide the issue and recognize the authority of this Court to decide Slidell's motion solely upon equitable principles.

[8] In granting Millennium's motion for preliminary injunction, the Court similarly observed that "Slidell could earn its final $2.5 million on the contract . . . were it to complete the equipment." (Memorandum Opinion and Order Granting Preliminary Injunction, dated April 17, 2002 (Docket No. 17) at 10.)

returning parts and materials for value. That is yet another reason Millennium should not have to bear the consequences of Slidell's bad business judgment. *See, e.g., Coyne-Delany Co. v. Capital Development Board of the State of Illinois, supra,* 717 F.2d at 392; *Sionix Corp. v. Moorehead, supra,* 299 F. Supp. 2d at 1086 (recovery may be denied based upon enjoined party's failure to mitigate damages).

Third, and particularly galling, is Slidell's apparent suggestion that the injunction wrongfully prohibited it from completing three palletizers and a bagger, the items allegedly closest to completion, and marketing those items to some unidentified (if not imaginary) prospective buyers in Europe. (Declaration of James McGregor, ¶ 2.) Slidell intentionally refused to complete the equipment for Millennium, to whom Slidell had made a contractual commitment, professing financial hardship; yet, Slidell *was* apparently willing and able to complete the equipment in order to sell it to some *different* buyer. Equity should not permit one to renege willy-nilly on a contractual commitment in the hope of securing a more advantageous deal elsewhere.

Finally, to the extent Slidell complains about the partially-completed equipment's loss of value over the last three years, Slidell has only its bad judgment to blame. When it stopped all work on the Contract and sued Millennium, Slidell knew or should have known that the equipment would be tied up for the duration of the lawsuit. It still could have completed the equipment, and Millennium still wanted it. Instead, for the next three years, Slidell deliberately chose not to finish the equipment in the apparent hope that the jury's verdict would bail it out – an extraordinary gamble to say the least. In the end, of course, the jury did not bail Slidell out, and the fact that Slidell made the wrong choice is

now clear to all. But by halting work and commencing this lawsuit instead, Slidell deliberately and consciously assumed the risk that, during however long it might take to resolve this case, the equipment and parts sitting uncompleted on Slidell's plant floor would diminish in value and eventually become worthless through the passage of time. It is entirely equitable for Slidell now to bear those consequences.

Nowhere mentioning its own unjust conduct, Slidell argues that that Court should not exercise its equitable discretion to deny it from recovering upon the injunction bond because Millennium "was ineligible for specific performance" and did not pursue its specific performance and replevin claims at trial. (Slidell Memorandum at 10-11.) Of course, Slidell nowhere explains how Millennium's alleged misdeeds[9] have anything to do with the specific controversy now before the Court – whether Slidell should have been permitted what would have been, in essence, a double recovery upon goods and equipment for which Millennium had fully paid. As the Court expressly noted in its summary judgment ruling, and which Slidell conveniently omits from its Memorandum, "the inequitable conduct must be related to the controversy." Memorandum Opinion and Order, dated June 8, 2004 (Docket No. 140), at 13. Slidell has not even attempted to establish any such relationship.

[9] Slidell contends in this regard that "Millennium did not dispute that it had ordered its employees not to cooperate on the Le Havre or Ashtabula equipment for over a year or that Millennium had suspended the Le Havre portion of the project." (Slidell Memorandum at 11.) Quite to the contrary, Millennium offered trial testimony explaining both of these assertions (*e.g.*, Trial Tr. 1980-81), and the jury's resolution of the contract issues in Millennium's favor amply illustrates that it found no fault with Millennium on these particular points.

Moreover, contrary to Slidell's claim that Millennium's specific performance and replevin claims "were dismissed in response to Slidell's motion for a directed verdict" (Slidell Memorandum at 4, 9), Millennium voluntarily abandoned those claims in good faith and for legitimate reasons totally unrelated to the merits of those claims.[10] To be sure, prior to trial Millennium had vigorously pursued legal and equitable remedies with the purpose of obtaining title to, possession of, or a protected security interest in the equipment Slidell had stopped building; Millennium had invested over $8.8 million in that equipment and keenly desired to protect its investment by all legal means. But as the latest Declaration of James McGregor vividly and ironically illustrates, by the time of trial Slidell no longer had the financial or human resources to complete the machines, the warranties on the major component parts had all expired, and the electrical components were out of date as a result, the assemblies and parts no longer possessed any value other than scrap. (Declaration of James McGregor, ¶ 4.) Simply stated, by early 2005 there was *no* value left in the partially-completed equipment and parts worth protecting, and Millennium's specific performance and replevin claims were worthless. Rather than burden the Court and jury with remedies that no longer possessed any value, Millennium understandably and voluntarily abandoned them. (*See generally* Smith Aff., ¶¶ 13-15.) In no way can that decision somehow shift the equities of the situation in Slidell's favor.

---

[10] Though most courts hold that the enjoining party's good faith, standing alone, will not support a discretionary denial of recovery upon an injunction bond, good faith is nonetheless one among the full range of discretionary factors which may be considered by the Court. *See, e.g., Coyne-Delany Co, Inc., supra,* 717 F.2d at 392.

In sum, all of the equities pertinent to the issue before the Court militate against permitting Slidell to recover upon the injunction bond. For this additional reason, Slidell's motion should be denied.

## IV. The Court Should Release Millennium And Its Surety From All Liability On The Injunction Bond And Order That The Injunction Bond Be Dissolved.

After the conclusion of trial, Millennium and Slidell stipulated that the preliminary injunction issued in April, 2002 should be dissolved, and the Court approved that stipulation and dissolved the preliminary injunction in its Order of March 14, 2005. (Docket No. 430.) Since Slidell is no longer enjoined from selling the equipment or parts, apart from Slidell's claim on the bond which is the subject of this Motion there is no reason for the bond to be continued in force, or for Millennium or its surety, Travelers Casualty & Surety Company of America, to possess any continuing liability upon it.

As to the claim involved in this Motion, for the reasons set forth previously in this memorandum, it is abundantly clear that Slidell is not entitled to recover upon the injunction bond. Thus, there is no longer any reason for the continued existence of the bond. Millennium submits that the Court should enter an appropriate order releasing Millennium and its surety from any and all liability upon the injunction bond and permitting the bond to be dissolved.

## CONCLUSION

For the foregoing reasons, Millennium submits that Slidell's motion should be denied in all respects, that the Court should release Millennium and its surety from any

and all liability on the injunction bond, and that Millennium should be permitted to dissolve the injunction bond.

Dated: May 5, 2005. HALLELAND LEWIS NILAN & JOHNSON, P.A.

By: s/ Scott A. Smith

Michael T. Nilan Reg. No. 79224
Scott A. Smith Reg. No. 174026
Matthew E. Johnson Reg. No. 235945
Amanda M. Cialkowski Reg. No. 306514
600 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402
(612) 338-1838

Attorneys for Defendant and Counterclaimant
Millennium Inorganic Chemicals Inc.