**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Slidell, Inc.,

Plaintiff and Counter-defendant,

v.

Millennium Inorganic Chemicals Inc.,

Defendant and Counter-claimant.

Court File No. 02-CV-213 (JRT/FLN)

**MEMORANDUM IN OPPOSITION TO SLIDELL'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

## INTRODUCTION

For six weeks in January and February 2005, the parties ably and thoroughly – some might say too thoroughly – presented their evidence, contentions and arguments to the jury. The jury conscientiously considered that evidence, deliberated over two days, and returned its verdict in favor of Millennium and against Slidell on the breach of contract and trade secret issues in the case.

Slidell now argues that, in essence, "the jury got it wrong" when it ruled against Slidell on these issues. But asking this Court to reweigh the evidence and arguments presented at trial, and hopefully reach a different result, raises no issue for this Court's review under Rules 50 and 59 of the Federal Rules of Civil Procedure. The only relevant consideration is whether the jury's verdict in Millennium's favor on these issues is supported by probative evidence. Because the Record contains ample testimony, exhibits and other evidence supporting the jury's ruling in favor of Millennium on the breach of contract and trade secret issues, this Court should not overturn that verdict.

The single legal, as opposed to evidentiary, argument offered by Slidell – that the Court incorrectly instructed the jury on Millennium's equitable estoppel and waiver defenses – is

without merit, as those instructions correctly stated the law and were supported by substantial evidence.

Slidell's disappointment at the jury's verdict in favor of Millennium on the breach of contract and trade secret issues is readily apparent. But asking this Court to reconsider evidence, contentions and arguments rejected by the jury is not a proper request under Rules 50 and 59. Because the case was fully and fairly tried on these issues, the Court should deny Slidell's motion in its entirety.

## ARGUMENT

### I. ALL THREE LEGAL JUSTIFICATIONS POSITED FOR MILLENNIUM'S BREACH, ONE OF WHICH SLIDELL DOES NOT CHALLENCE AT ALL, ARE SUPPORTED BY EVIDENCE IN THE TRIAL RECORD.

Slidell spends approximately half of its brief attacking two of the legal justifications Millennium raised as defenses to Slidell's breach of contract claim. Millennium alleged, and the Court instructed on, three legal justifications for its breach of the parties' contract. In addition to waiver and equitable estoppel, Millennium alleged the defense of prior breach – the same justification claimed by Slidell. With respect to prior breach, the Court instructed the jury that:

> … Millennium argues that Slidell committed a material breach of the contract prior to Millennium's material breach. If you find that Slidell materially breached the contract before Millennium materially breached the contract, then Millennium's breach is excused. A breach is material if it defeats one of the primary purposes of the contract.

(Tr. 4174:11-17.)

Slidell does not attack that defense at all. Indeed, the instruction correctly states Minnesota law that "when a party to a contract breaches first, that initial breach constitutes legal justification for the other party's subsequent failure to perform." *Info-Bahn, Inc. v. Brown*, 2001 WL 506810, at *3 (Minn. Ct. App. 2001) (citing *Carlson Real Estate Co. v. Soltan*, 549 N.W.2d 376, 379-80 (Minn. Ct. App. 1996)). "Under general contract law, a party who first breaches a

contract is usually precluded from successfully claiming against the other party. * * * The first breach serves as a defense against the subsequent breach." *Id.* (citations omitted).

Interestingly, while Millennium disputed the concept that a prior breach could excuse any and all subsequent breaches, and argued that there should be a causal connection between the breach and the other party's failure to perform, Slidell opposed that position. According to Slidell, "the first <u>material breach</u> of a contract serves as a defense of a subsequent breach regardless if the subsequent breach was directly caused by the first breach." (Dkt. No. 319. at 1 (emphasis in the original).) The Court adopted Slidell's view of the prior breach defense, and instructed the jury accordingly that the first material breach was determinative, and would excuse subsequent breaches.

There was extensive evidence that Slidell breached the contract first. Millennium witnesses testified that, from the very beginning, Slidell failed to comply with its obligations to send biweekly status reports. (Tr. 1877:8-13; 1882:1-10.) Slidell also hired Celia Baynes and put her in charge of the project, a position for which she was not qualified. (Tr. 1002:14 – 1003:2.) Slidell refused to provide Millennium with information it needed to build the new facilities intended to house the equipment. (Tr. 1853:5 – 1954:6.) Those are only a few examples of Slidell's early breaches of the contract. Thus the prior breach justification is legally sufficient to uphold the jury's verdict.

With respect to the justifications of equitable estoppel and waiver, Slidell raises two objections. First, Slidell argues that Millennium failed to introduce an evidentiary basis to support the instructions. Second, Slidell argues that the instructions were improper, considering the applicable legal standards. Slidell is incorrect on both counts.

"The district court has wide discretion in the formulation of jury instructions." *Walser v. Toyota Motor Sales, U.S.A., Inc.*, 43 F.3d 396, 404 (8th Cir. 1994). "Each party is entitled to have the jury instructed on its theory of the case if there is any competent evidence in support of such theory and the instruction is properly requested, even though the theory may be controverted by some evidence of the opposing party." *Galyardt & Wells, Inc.*, 629 F.2d 523, 528 (8th Cir. 1980) (citations omitted). Refusal to instruct the jury on each material theory is reversible error. *Id.; see also Bartak v. Bell- Lear v. Equitable Life Assur. Soc. of U.S.*, 798 F.2d 1128, 1134 (8th Cir. 1986). "A cross-claimant or third-party plaintiff has the right to submit its own theory of the case to the jury even if it differs from the plaintiff's theories. *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188, 206 (8th Cir. 1981). "The district court has broad discretion to instruct the jury in the form and language it considers fair and adequate to present the substantive law…. There is no harmful error if the charge, in general, correctly instructs the jury, even if one portion is technically incorrect" – "'[t]he test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues.'" *Gray v. Bicknell*, 86 F.3d 1472, 1485 (8th Cir. 1996) (citations omitted). Before the Court will grant a new trial, however, Slidell must show that any error with respect to jury instructions resulted in prejudice and was "inconsistent with substantial justice." *Ryther v. KARE 11*, 864 F. Supp. 1510, 1521 (D. Minn. 1994); *see also Children's Broadcasting Corp. v. Walt Disney Co.*, 357 F.3d 860, 867 (8th Cir. 2004) ("This court will reverse on the basis of instructional error only if it finds the error affected the substantial rights of the parties.")

A. Millennium Presented Sufficient Evidence to Support a Finding that Slidell was Equitably Estopped from Claiming Certain Conduct by Millennium Breached the Contract.

At trial, Slidell argued that Millennium wrongfully obtained and gave away Slidell's proprietary information. In addition to forming the basis for its trade secrets claim, Slidell argued that this conduct breached the parties' contract, specifically Exhibit A to the parties' contract, entitled "Proprietary Information Disclosure Agreement" ("nondisclosure provision"). That document purported to require Slidell's written consent before Millennium would be permitted to share any proprietary information with a third party. (Tr. 306:23 – 307:2; 309:12-18; 364:1-14.)

Slidell argued that, in violation of that provision, Millennium transferred documents to a third-party vendor, RoviSys. Millennium submitted substantial evidence, however, that Slidell had behaved in a manner inconsistent with strict compliance with the nondisclosure agreement. Millennium also presented evidence that it had informed Slidell of its plans to involve RoviSys, that it sought Slidell's permission to share information with RoviSys, and that it believed it had obtained that consent. The evidence was undisputed that, in spite of Millennium's many written communications to Slidell on the subject, Slidell never informed Millennium in writing that it did not consent to the disclosures.

First, the pattern of conduct leading up to RoviSys' involvement with the supervisory system demonstrated that Slidell did not insist on strict compliance with the nondisclosure provision. Millennium presented evidence that Slidell had discussed the types of documents that it contended were proprietary (specifically connectivity diagrams and control flow diagrams) with other third parties without signed nondisclosure agreements. (Tr. 3265:17 –3268:4.) Indeed, Slidell went so far as to send similar information from Millennium to another third party, Northland Electric, without Millennium's permission or consent. (Tr. 2311:20 – 2314:3.)

Second, when Millennium first decided to pull the supervisory system from Slidell, it immediately informed Slidell that it would employ a third party to complete the system. (Tr. 1091:13 –1092:4.) Millennium specifically told Slidell that it expected its cooperation, and asked for its permission to disclose certain information. (Tr. 3514:5 – 3515:23.) Indeed, Change Order 5, which Millennium signed and was unaware that Slidell had refused to sign, provided that Slidell would provide certain tag addresses to Millennium for RoviSys' use, and that Slidell would be paid on an hourly basis to work with RoviSys. (Ex. P0151.) Slidell had told Millennium that it would sign Change Order 5 upon receipt, and never informed Millennium in writing that it had decided not to sign the agreement. (Tr. 1110:21 – 1111:12; 1116:2-6.) Indeed, during a telephone conference following Millennium's return of the signed change order to Slidell, Millennium confirmed that Change Order 5 had been signed, and Slidell made no attempt to correct that misimpression. (Tr. 1372:13 – 1374:7.)

In addition to Change Order 5, however, Millennium asked what it could do to satisfy any concerns Slidell may have had with Millennium sharing information with RoviSys. (Tr. 3522:4 – 3523:23.) To put any such concerns to rest, Millennium asked that Slidell prepare a separate nondisclosure agreement between itself and RoviSys, which it did. (*Id.*) Millennium then had RoviSys sign Slidell's standard confidentiality agreement and returned it to Slidell. (Tr. 822:18-823:2; 1426:1-11.) When Millennium returned the agreement to Slidell, Millennium stated "I hope that this will allow free and open discussions about any supervisory system interfacing questions that come up in the next few months." (Tr. 1158:18 – 1159:2.) Slidell never gave either Millennium or RoviSys notice that it did not intend to sign the agreement. (Tr. 823:3-19.)

Additionally, Slidell hosted a RoviSys employee at its facilities and made no objection when similar information was discussed in his presence. (Tr. at 3149:24 – 3150:10.) Slidell itself shared information with RoviSys. (Tr. at 799:2-800:6; 808:17-809:6.) Although Slidell claimed at trial that some of that information was "bogus," Slidell never informed Millennium or RoviSys that the information Slidell was providing was fake. (Tr. at 1156:9-1157:20.) Millennium believed that Slidell was aware that information it requested from Slidell was intended to be shared with RoviSys, but at no point did Slidell object to this or to Millennium exchanging information with RoviSys. (Tr. at 827:9-828:13; 1118:15-19; 1126:3-10; 1128:16-20.)

To prove the justification of equitable estoppel, Millennium sought to prevent Slidell from "taking unconscionable advantage of [its] own wrong by asserting [its] strict legal rights." *Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771, 777 (Minn. 2004) (citations omitted). In order to invoke equitable estoppel, Millennium had to produce evidence of the following elements:

1. conduct, language or silence from Slidell amounting to a misrepresentation or a concealment of material facts;

2. the facts so concealed were known to Slidell, or at least the circumstances were such that knowledge of them is necessarily imputed to Slidell;

3. the truth concerning these facts was unknown to Millennium at the time of Slidell's misleading conduct, and at the time when that conduct was acted upon by Millennium;

4. Slidell engaged in the conduct with the intention or at least an expectation that Millennium would act upon it, or did so under circumstances that it was both natural and probable that Millennium would so act upon it;

5. Millennium did in fact rely and act on Slidell's conduct; and

6. in so acting on the conduct, Millennium changed its position for the worse in such a manner that it would be harmed if Slidell were permitted to repudiate its conduct and to assert rights inconsistent with it.

*See Brekke***,** 683 N.W.2d at 777. Millennium produced evidence of all six elements.

Slidell contends that the defense of equitable estoppel should not have been presented to the jury. (*See* Brief, at 3 n.3.) Slidell claims also that the Court should decide the issue de novo. While the legal conclusion that equitable estoppel applies may be reviewed de novo, that is not the standard with respect to the corresponding facts supporting the application of the defense. "Estoppel is ordinarily a question of fact" – thus, having submitted the question to the jury, the District Court should not disturb the jury's decision "unless it is manifestly and palpably contrary to the evidence." *See Palmer v. Erlandson*, 2000 WL 2621, at *4 (Minn. Ct. App. 1999), *citing In re Liquidation of Excalibur Ins. Co.*, 519 N.W.2d 494, 498 (Minn. Ct. App. 1994), *review denied* (Minn. Oct. 14, 1994); *Rochester Civic Theatre, Inc. v. Ramsay*, 368 F.2d 748, 753 (8th Cir. 1966) (a jury verdict will not be set aside unless it is manifestly and palpably contrary to the evidence as a whole).

*1. Millennium proved actionable conduct on Slidell's part.*

Slidell contends that Millennium failed to produce any evidence of a misrepresentation or omission by Slidell. To the contrary, Millennium demonstrated both that Slidell had acted in a manner inconsistent with strict compliance with the nondisclosure agreement and that Slidell actively led Millennium to believe that it had signed both Change Order 5 and the Slidell / RoviSys Proprietary Information Disclosure Agreement.

Moreover, Slidell fundamentally misconstrues Millennium's defense of equitable estoppel. Slidell appears to believe that Millennium was using equitable estoppel offensively as an affirmative claim. Specifically, Slidell argues that "promises to enter into contracts cannot be enforced through equitable estoppel." (Brief, at 4.) Slidell argues that because it signed neither Change Order 5 nor the RoviSys nondisclosure agreement, "neither became a contract." (*Id.*) That statement demonstrates a fundamental misunderstanding of Millennium's position.

Millennium does not contend that a contract was formed on either issue. Millennium's position was that, once Slidell drafted and sent those documents to Millennium, and Millennium signed them and returned them, Slidell's silence reasonably caused Millennium to believe that Slidell had signed the documents. Moreover, Millennium relied to its detriment on that belief.

At trial, Millennium was not trying to enforce those agreements as contracts. What Millennium did argue, quite correctly, was that Slidell should not be permitted to contend that certain behavior in reliance on Slidell's representations and conduct violated the parties' contract for the sale of the machinery, when Slidell had misled Millennium about the true state of the facts.

*2. Millennium presented evidence that Slidell intended Millennium to rely on its silence.*

Slidell apparently concedes that elements two (that Slidell knew the true facts) and three (that Millennium did not know the true facts) are met. Indeed, the evidence is uncontroverted that Slidell knew it had not signed either Change Order 5 or the Slidell/RoviSys nondisclosure agreement. Furthermore, Millennium introduced evidence that it was unaware that Slidell had not signed the documents, and, to the contrary, believed that Slidell had signed them. (Tr. 3110:25 – 3111:5; 3533:14-21; 3630:22 – 3631:11; 3631:23 – 3631:11.)

Slidell does contend that Millennium failed to offer any evidence that Slidell intended Millennium to rely on its conduct. In this regard, Slidell argues only that, after the time Slidell would likely have signed Change Order 5, it continued to pressure Millennium to pay it more money for the alleged delays. That is evidence, argues Slidell, that Slidell could not have intended that Millennium rely on its representation that it would sign the change order.

First, Millennium introduced evidence that Slidell had told Millennium that it would sign the change order when it received the signed copy back from Millennium. (Tr. 1110:21 –

1111:12; 1116:2-6.) Millennium also introduced evidence that, shortly thereafter, in a telephone conference in which Aaron Skogen participated, Millennium represented that the change order had been signed, and that Mr. Skogen did not correct that misimpression. (Tr. 1372:13 – 1374:8.) That evidence supports the conclusion that Slidell intended, and in fact knew, that Millennium had relied on that information.

The fact that Slidell continued to demand money for what it alleged were Millennium's delays does not mandate the conclusion that Millennium should have known that Slidell had signed neither Change Order 5 nor the Slidell/RoviSys nondisclosure agreement. Indeed, the demand for additional money had no impact whatsoever, rather, that was Slidell's pattern of conduct throughout the parties' relationship.

*3. Millennium introduced evidence of its good faith reliance on Slidell's conduct.*

Slidell argues also that Millennium could not reasonably have relied on Slidell's misrepresentations and omissions to engage in conduct that would breach the contract.[1] Although the argument is far from clear, it appears that Slidell is contending that Millennium could not reasonably have relied on conduct or statements that Slidell had signed Change Order 5 as a basis to engage in conduct that breached the contract. (Brief, at 5.) To what conduct Slidell is referring is indecipherable. Slidell argues, however, that "there is no causal relation between any of Millennium's breaches and Change Order No. 5." (Brief, at 5.)

To the contrary, there are significant relationships between Millennium's belief that Slidell had signed Change Order 5 and its subsequent conduct. One of Slidell's major breach of contract claims at trial was that Millennium "pulled" the supervisory system without permission

[1] Slidell's claim that Millennium knew Slidell had not signed Change Order 5 barely merits response. Slidell cites only to Jim McGregor's testimony that he told Millennium that he had not signed Change Order 5. There was, however, plenty of contradictory evidence from Millennium witnesses that they did not find out that Slidell had not signed Change Order 5 until after the lawsuit was filed. (*See, e.g.*, Tr. 2866:9-21; 3416:1-6.)

and transferred that part of the project to RoviSys. (*See, e.g.,* Tr. 610:2-14.) Obviously pulling the supervisory system cannot be a breach if Millennium thought Slidell had agreed to it. Moreover, Millennium reasonably relied on Slidell's statements that it intended to sign the Change Order to hire RoviSys to build the supervisory system, believing it had withdrawn that portion of the contract from Slidell's control. Additionally, Dave Hughes specifically testified that he waited to confirm that both Change Order 5 and the Slidell/RoviSys nondisclosure agreement were signed before he sent information to RoviSys. (Tr. 3297:12 – 3298:17) Obviously, there was evidence of Millennium's reliance.

Slidell's citation to *Carlock v. Pillsbury* is inapposite. *Carlock* is distinguishable for several reasons. First, it involved an affirmative claim of fraudulent inducement by the plaintiff. Where the oral representation that the plaintiffs claimed caused them to enter the contract was simultaneously, affirmatively contradicted by the written terms of the contract, the court held that those statements would not support a cause of action for fraud. 719 F. Supp. 791, 829 (D. Minn. 1989). In this case, however, Millennium believed that it was complying with the change order provision of the contract. Thus, Millennium believed Slidell's written statement that it would sign the change order upon receipt was consistent with the contract, which provided the parties a change order process. It is far from clear what application Slidell believes Carlock has to the present situation.

Morever, parties frequently assert the defense of equitable estoppel to excuse conduct that might under other circumstances support a breach of contract claim. *See Granite State Ins. Co. v. Smart Modular Technologies, Inc.*, 76 F.3d 1023, 1030 (9th Cir. 1996) (district court's finding that plaintiff was equitably estopped from bringing breach of contract action was not clearly erroneous); *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078,

1084 (W.D. Mich. 1997) (refusing to strike defendant's defense of equitable estoppel to plaintiff's breach of contract claim); *Wallace v. Sunstar Acceptance Corp.*, 2000 WL 569565, at *2 (Ohio Ct. App. 2000) (holding that Sunstar was equitably estopped from claiming the plaintiff had breached her contract to purchase a car by making timely payments where Sunstar had made several written and oral representations to Wallace that her account was "paid ahead"). For all those reasons, this argument is not well-founded.

Slidell argues also that Millennium's reliance on its belief that Slidell had signed the Slidell/RoviSys nondisclosure agreement could not be the basis for its allegedly wrongful transfers to RoviSys. Essentially, Slidell contends that, even if it had signed the agreement, that would not have constituted permission for Millennium to give the documents to RoviSys.[2] (Brief, at 5.) The simple fact that Millennium believed Slidell had signed the agreement taken in isolation, might be insufficient to estop Slidell from claiming that those disclosures breached the contract. Other evidence, however, supported Millennium's belief that it had Slidell's permission to make the disclosures. For one thing, when Millennium had made clear its intention to review similar materials with other third parties, Slidell had never objected. Second, Millennium had made it clear to Slidell that RoviSys would be building the supervisory system and that its requests for information related to the supervisory system were clearly intended for RoviSys. Finally, particularly given that Slidell willingly met with RoviSys employee George Calvin and made no objection to his presence in meetings where similar documents were discussed, there was ample evidence that Millennium's reliance was reasonable.

[2] Slidell argues that Millennium witnesses "admitted" that the Slidell/RoviSys nondisclosure would not constitute permission for Millennium to share information with RoviSys. The citations that Slidell provides, however, do not support that statement. The first cite, Transcript pages 3059-60, are to Mr. Dissaux's testimony related to approval of Le Havre arrangement drawings. The second cite, Transcript page 3201, besides being Mr. Calvin's testimony who was not a Millennium employee, is similarly unhelpful. All Mr. Calvin confirms is that the Slidell/RoviSys nondisclosure does not contain language where "Slidell consents to RoviSys getting that information." (Tr. 3201:19-20.)

B. Given the Evidence Millennium Presented, the Court's Instruction on Equitable Estoppel Correctly Stated the Law.

Slidell argues also that there were legal problems with the Court's instruction on estoppel. Slidell's arguments in this regard are either unfounded or unpreserved.

*1. Slidell's argument seeking to limit the alleged breaches to which equitable estoppel could apply is unpreserved.*

Slidell argues that the instruction incorrectly implied that equitable estoppel could excuse any breach by Millennium. Specifically, Slidell now argues, for the first time, that "any estoppel argument is limited to the specific breach to which Slidell's representation or omission related." (Brief, at 5-6.)[3] First, this argument is not preserved. Slidell sought no such limiting instruction at the time of trial. Moreover, Slidell's own instruction on equitable estoppel contained no limiting language, even though its proposed on waiver did include a limitation that "[a]ny waiver is limited to the specific legal right that was waived." (Dkt. No. 388, at 6.) The only objections Slidell made to the instruction at trial were (1) that estoppel was inapplicable where the written contract required waivers to be in writing (Tr. 3862:6-14), and (2) that the Court should have included an unclean hands instruction in conjunction with the estoppel instruction (Tr. 3916:19 – 3917:4). Second, Slidell cites no legal authority supporting its argument that estoppel is limited to specified breaches. For those reasons, Slidell may not now complain that there was not a sufficient limiting instruction.

[3] Slidell contends that this Court so held in ruling on the parties' summary judgment motions. The portion of the Order to which Slidell cites, however, does not reach that conclusion. In that portion of the order, the Court was discussing Slidell's attempted offensive use of equitable estoppel to recover for its European support claim. The Court concluded that "the doctrine of equitable estoppel is inapposite" and turned its attention to Slidell's promissory estoppel claim. *Slidell, Inc. v. Millennium Inorganic Chemicals, Inc.*, 2004 WL 1447921, at *16 (D. Minn. 2004).

*2. Slidell's argument that its conduct must have been unconscionable for estoppel to overcome the statute of frauds lacks merit.*

Next, Slidell argues that the Court's instruction should have included an element of unconscionability. Slidell argues that, because it had to prove unconscionability to prove its claim of promissory estoppel, Millennium should have been required to make a similar showing. First, as with the previous argument, it is unpreserved. Slidell never asked that the Court include an element of unconscionability in its instruction on equitable estoppel. The closest that Slidell came in its proposed instruction was that the jury would have to have found that "Millennium did not engage in any misleading tactics, concealments, misrepresentations and/or defaults that exacerbated the situation." (Dkt. No. 388, at 6.) Besides being an incorrect statement of the law, that instruction does not equate to unconscionability. Because this error is unpreserved, the Court need not address it.

Second, the fact that Slidell was required to prove unconscionability to prove an affirmative cause of action and to seek to recover contract damages based on an agreement that would have been barred by the statute of frauds does not equate to a requirement that the defensive use of equitable estoppel requires a similar showing. Slidell cites no authority to support such a proposition.

The only case cited by Slidell, *Oxley v. Ralston Purina Co.*, 349 F.2d 328, 329 (6th Cir. 1965), does not apply. That case involved the offensive use of equitable estoppel to enforce an agreement that would otherwise have been barred by the statute of frauds. *Id.* (district court found that an oral contract between plaintiff and defendant existed, that defendant was estopped to rely upon the statute of frauds and assessed damages). Indeed, Slidell cites no authority for the proposition that unconscionability is required when a party is using equitable estoppel defensively. Indeed, no such requirement appears in the legal elements of equitable estoppel.

*3. The Court correctly concluded that the doctrine of unclean hands did not apply to the defense of equitable estoppel.*

During the jury instruction conference, Slidell argued that Millennium was not entitled to assert the equitable defense of estoppel because Millennium had "unclean hands." (Tr. 3917:21 - 3918:16.) Rather than asking the Court to give a standard unclean hands instruction, Slidell proposed to add another element to equitable estoppel; namely that "Millennium did not engage in oppressive or deceptive conduct." (Tr. 3985:18-19.) Millennium countered that unclean hands was an equitable defense, and to use that defense to defeat another equitable defense was circular. (Tr. 3985:21 – 3986:16.) The Court declined to add another element to equitable estoppel. (Tr. 3987:17-22.) The Court was correct.

Indeed, Slidell cites to no authority for adding an additional element to the defense of equitable estoppel. Instead, Slidell cites to a 1910 case that stated that "[e]stoppel can be invoked only by the innocent. Negligence by the party invoking it may deprive him of its protection." *Macomber v. Kinney*, 128 N.W. 1001, 1003-04 (Minn. 1910), *on rehearing*, 130 N.W. 851 (Minn. 1911). It is true that the defense of unclean hands, which is an equitable defense, "is premised on withholding judicial assistance from a party guilty of unconscionable conduct." *In re Landmark Holding Co., Ltd.*, 286 B.R. 377, 386 (Bkrtcy. D. Minn. 2002). "The maxim he who comes into equity must come with clean hands is not applied by way of punishment for an unclean litigant but upon considerations that make for the advancement of right and justice. It is not a rigid formula which trammels the free and just exercise of discretion." *Id*. (citations omitted). Thus, the task of determining the overall equities lies with the Court.

The basic flaw in Slidell's argument is that the circular logic applies equally to defeat its claim to the defense of unclean hands. Slidell fails to acknowledge that, by misleading

Millennium in the first instance, which is the basis of the defense of equitable estoppel, Slidell dirtied its own hands. Moreover, while Slidell points to a litany of unrelated conduct that it claims shows that Millennium had unclean hands, the jury concluded also that Slidell breached the contract. Indeed, for all we can discern at this point, the jury may have concluded that Slidell breached the contract first. Consequently, any argument that Millennium may not raise the defense of equitable estoppel applies with equal force to prevent Slidell from asserting the defense of unclean hands.

C. <u>The Court's Instruction on Waiver Correctly Stated the Law and was Supported by the Evidence</u>.

Slidell asserts that the Court's instruction on waiver was flawed in a variety of ways. Slidell is wrong. Under Minnesota law, waiver is a fact question for the jury. *See Bitronics Sales Co., Inc. v. Microsemiconductor Corp.*, 610 F. Supp. 550, 554 n.1 (D. Minn. 1985). Indeed, Slidell itself admitted during the conference on jury instructions that, "[o]n the issue of waiver, that is clearly a fact issue." (Tr. 3871:20-21.) Now, however, unhappy with the trial's outcome, Slidell attempts to raise myriad complaints related to the waiver issue.

*1. A separate instruction regarding the contract's waiver provision was unnecessary.*

First, Slidell argues that the Court erred in its jury instruction on waiver. Slidell argues that, because the contract had a provision that any waiver had to be in writing, the Court should have instructed the jury that it must find that Slidell waived the requirement that a waiver be written before it could conclude Slidell had waived a particular contractual requirement. (Brief at 8-10.) Slidell is incorrect.

Case law makes clear that, even a written provision requiring written waivers can be waived. *See Porterco, Inc. v. Igloo Products Corp.*, 955 F.2d 1164, 1172 n.9 (8th Cir. 1992) (noting that it is within the jury's power to find that written waiver provision was itself waived or

modified by the parties' agreement or conduct); *Goshey v. ITT Life Insurance Corporation*, 590 F.2d 737, 740 (8th Cir.1979) ("Ordinarily, under contract law, a provision purporting to prohibit modification of a contract except by a specified method does not prevent the parties to a contract from modifying it by some other methods"); *Lamberton v. Connecticut Fire Insurance Co.*, 39 Minn. 129, 39 N.W. 76 (1888) (holding that an insurance company had waived a contract's requirement of written notice of abandonment by orally assuring plaintiff that its property was insured, even though the contract had a provision against oral waivers).

These holdings are consistent with expert's views on the subject:

> The general view is that a party to a written contract can waive a provision of that contract by conduct expressly or surrounding performance, despite the existence of a so-called anti-waiver or "failure to enforce" clause in the contract.
>
> [This rule] is based on the view that the nonwaiver clause itself, like any other term of the contract, is subject to waiver by agreement or conduct during performance. Thus, a provision that a term or condition of any sort cannot be eliminated by waiver, or by estoppel, is ineffective, and a party has the same power to waive the condition, or to be estopped from asserting it, as though the provision did not exist.

13 *Williston on Contracts* § 39:36, at 657, 658-59.

Minnesota courts agree with Williston's view. In *Larson v. Hill's Heating and Refrigeration of Bemidji, Inc.*, 400 N.W.2d 777, 781 (Minn. Ct. App. 1987), the court embraced the "general common law rule … that a written contract can be varied or rescinded by oral agreement of the parties, even if the contract provides that it shall not be orally varied or rescinded."

Moreover, none of the cases embracing oral waivers have required a separate jury instruction on waiver of the waiver provision, even in cases involving the UCC. *See* Minn. Stat. § 336.2-209(4) (an attempt to orally modify a written contract under the UCC, even if ineffective as a modification, nonetheless "operate[s] as a waiver"); *Albany Roller Mills, Inc. v. Northern*

*United Feeds & Seeds, Inc.*, 397 N.W.2d 430, 433 (Minn. Ct. App. 1986) (involving breach of a written contract, which required written modifications, court concluded that the plaintiff had orally released the defendant from any liability and that was binding as, under Section 2-209(4), "the requirement of a writing may be waived"). Indeed, Slidell cites to no Minnesota authority requiring such a separate instruction.

For some reason, Slidell focuses on Change Order 5, and argues that Millennium acted inconsistently by arguing that the first draft, which would have increased the cost to Millennium by $417,000, was not binding, while the subsequent draft should be enforced. The two situations are entirely different, however. With respect to the first draft, Millennium informed Slidell in writing that it was rejecting that proposal. (*See, e.g.*, Tr. 3294:8-16.) Neither Millennium nor Slidell signed that version of the change order. On the other hand, when Slidell drafted the subsequent version, which pulled the supervisory system, Millennium signed it and sent it back. (Tr. 1110:21 – 1111:23.) There was no written response from Slidell that it was refusing to sign the change order. (Tr. 1116:2-6) Additionally, the testimony of Slidell witnesses that they orally told Millennium employees that Slidell was not going to sign the agreement was contradicted by testimony that Millennium employees did not find out Slidell refused to sign Change Order 5 until after the litigation began. (*See, e.g.*, Tr. 2866:9-21; 3416:1-6.)

Finally, Slidell was permitted to and did argue about the written waiver provision in its closing argument. (Tr. 4114:1-8.) Thus Slidell did argue to the jury that the contract required any waiver to be in writing. If the jury relied on the waiver defense, which cannot be determined from the verdict, it rejected Slidell's testimony on the subject. Consequently, the Court should reject this claim of error.

2. *The Court did not instruct on implied waiver, and so properly did not include the standard of proof for implied waiver.*

Slidell next argues that Millennium failed to produce sufficient evidence from which the jury could have found waiver. Particularly, Slidell appears to focus on the standard required for a finding of waiver. Slidell argues that Millennium failed to present evidence of a "clear" waiver, and therefore "was forced to retreat to 'implied waiver.'" (Brief, at 10.) Consequently, Slidell argues that the Court should have instructed on a higher standard of proof for implied waiver.

At the conference on jury instructions, however, Millennium asked that the Court instruct the jury on implied waiver. (Tr. 3907:24 – 3908:18.) Slidell responded that, if the Court instructed on implied waiver, it should include an instruction on the higher burden of proof. (Tr. 3909:5-25.) The Court, however, declined to add language related to implied waiver, stating that it did not "see a need to add that additional clarifying sentence related to implied waiver." (Tr. 3910:22-23.) Subsequently, Slidell did not again request that the Court instruct on the higher burden it now pursues. Because the Court did not instruct on implied waiver, it correctly omitted an instruction on the higher burden of proof.

3. *The Court did not err in refusing Slidell's instruction on reservation of rights.*

Slidell argues also that the Court should have instructed the jury on Slidell's reservation of rights "in response to Millennium's waiver defense." (Brief, at 11.) Slidell argues that the jury should not have been permitted to find a breach if Slidell had expressly reserved its rights. Slidell's argument as now presented, however, is unpreserved.

In its Supplemental Proposed Jury Instructions (Dkt. No. 383), Millennium had proposed a jury instruction on the defense of prior breach that had stated that a prior breach would excuse conduct only if that breach was continuing at the time of the other party's breach. In its

Memorandum in Response to Jury Instruction Issues (Dkt. No. 404, at 13), Slidell objected to that instruction and expressly tied its request for an instruction on reservation of rights to the Court's decision on whether to give a continuing breach instruction. Slidell renewed that same argument during the jury instruction conference. (Tr. 3902:22 – 3904:16.) The Court, however, did not give the continuing breach instruction. (*See* Tr. 3906:15-21; 3988:2-10.) After being informed of that decision, Slidell did not renew its request for an instruction on reservation of rights. Consequently, any error in this regard is not preserved.

Moreover, from a factual perspective, as the instruction on waiver was given, it required the jury to find that:

> In order for Slidell to have waived Millennium's breach, you must find that Slidell knew of its legal rights, intended to relinquish its rights, and unequivocally did so. If you find that Millennium breached particular provisions of the contract in some way, but that Slidell knew of Millennium's breach and continued to exercise its rights under the contract and continued to demand performance after Millennium's breach, then Millennium's breach may be excused.

(Tr. 4174:1-9.) Thus, if the jury found that Slidell "intended to relinquish its rights" such that the waiver defense was proven, it necessarily would have had to conclude that Slidell did not reserve its rights. A separate instruction was unnecessary.

*4. Slidell's claimed error on the instruction on proceeding in a commercially reasonable manner is similarly not preserved.*

Slidell argues also that the Court should have instructed the jury that the UCC permits a party to proceed in a commercially reasonable manner without waiving its rights. However, as with the reservation of rights instruction, Slidell expressly tied its request for this instruction to the continuing breach instruction, which the Court opted not to give. (Dkt. No. 404, at 14-15.) Slidell made the similar connection in the jury instruction conference. (Tr. 3904:4-10.) Consequently, because this issue is not preserved, the Court should decline to reverse on this basis.

Additionally, Slidell points to no evidence in the record that its conduct was commercially reasonable. The evidence did show, however, that Slidell continued to accept money from Millennium and diverted that money into projects other than completing the machines. Given the absence of evidence that Slidell's conduct was reasonable, it would be particularly inappropriate to grant a new trial on this unpreserved claim of error.

*5. Millennium presented ample evidence to support a finding of waiver.*

Finally, Slidell argues that "the waiver instruction misinstructed the jury that all of Millennium's breaches could be waived." (Brief, at 13.) Specifically, Slidell appears to focus this argument on whether an alleged breach of the duty of good faith and fair dealing by Millennium could be waived. Again, this argument is unpreserved. Slidell never asked the Court to instruct the jury that waiver could not apply to certain alleged breaches. Moreover, the primary flaw with this argument is that there is no evidence that the jury found that Millennium breached its duty of good faith and fair dealing. Indeed, given that the jury concluded that Slidell breached the contract, and that its breach was not excused, it is just as likely that the jury concluded that Slidell breached the duty of good faith and fair dealing.

Similarly, Slidell argues that if Millennium repudiated the contract, Slidell's performance would be excused and Slidell could sue for damages for a total breach. The jury was instructed on repudiation, however, and there is no evidence that it found that Millennium repudiated the contract. (Tr. 4172:14 – 4173:5.) Consequently, the Court should reject this argument as well.

## II. SLIDELL'S ARGUMENT REGARDING MILLENNIUM'S BREACH OF CONTRACT CLAIM IS UNPRESERVED.

On pages 14-15 of its Brief, Slidell offers the remarkable argument that it was "ambushed" at trial by the Court's allowance of evidence and argument showing that Slidell

breached the Contract beyond its mere failure to deliver the equipment. This claim is simply beyond specious.

Contrary to Slidell's unsupported suggestion, there is nothing in the Record to indicate that Millennium ever limited its breach of contract claim against Slidell to Slidell's failure to complete the equipment. Paragraph 13 of Millennium's Counterclaim against Slidell alleges that "Slidell has breached its contract with Millennium," without limitation. (Dkt. No. 58 at 9.) Slidell never served contention interrogatories requesting that Millennium articulate the specific acts or omissions on Slidell's part which, according to Millennium, constituted a breach. Slidell took full and complete discovery of Millennium's business records, company witnesses, and experts, and defended the document production and discovery depositions of its witnesses where evidence showing Slidell's pre-delivery breaches, *e.g.*, Slidell's failure to provide required progress reports and schedule updates, was abundant. For instance, Slidell deposed Brian Hamper, whose deposition and trial testimony focused on Slidell's deficient scheduling and reporting.

Moreover, Millennium produced to Slidell the report of its project management expert witness, Reza Nikain, which articulated in great detail the myriad of ways in which Slidell's performance violated standards of good project management and breached the Contract; not only did Slidell take Mr. Nikain's deposition, it moved, unsuccessfully, for an order in limine seeking to prohibit the bulk of Mr. Nikain's testimony. In its moving papers in support of its motion in limine as to Mr. Nikain, Slidell acknowledged that Mr. Nikain had offered opinions "regarding whether Slidell properly managed the project, whether Slidell properly scheduled the equipment's design and manufacture," and other opinions "criticizing Slidell's project time management, project human resource management, project cost management, project

communications management, project procurement management, and project scope management." (Docket No. 190 at 4, 8.) Given this history, Slidell's suggestion that it had no notice, going into trial, that Millennium intended to introduce evidence on breaches "other" than Slidell's failure to deliver the equipment is ridiculous.

Even accepting, *arguendo,* Slidell's incredible assertion that it was somehow "ambushed" by this evidence, Slidell made no objection to the introduction of this evidence at trial, and its Brief offers no citation to the Record of any such objection. Where evidence relating to issues outside the pleadings is introduced and tried without objection, the parties will be deemed to have acquiesced. *Kim v. Nash Finch Co.***,** 123 F.3d 1046, 1063 (8th Cir. 1997); *see also* Rule 15(b) of the Federal Rules of Civil Procedure ("[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings"). Abundant evidence of Slidell's prior breach – its failure to provide required progress reports and schedules, its assignment of Celia Baynes as project manager, etc. – was before the jury, and Slidell offered nary a peep of protest that such evidence was outside the issues. It may not be heard to complain now.

## III. THE JURY'S FINDINGS REGARDING THE PARTIES' BREACH OF CONTRACT CLAIMS ARE SUPPORTED BY PROBATIVE EVIDENCE.

On pages 15-21 of its Brief, Slidell claims that the "overwhelming weight of evidence" contradicts the jury's verdict in favor of Millennium on Slidell's breach of contract claims against it. Slidell's claims are little more than rehashes of its closing arguments to the jury, which the jury plainly did not accept, and provide no basis for tampering with the jury's verdict. *See, e.g., Ryan v. McDonough Power Equipment, Inc., et al.*, 734 F.2d 385, 387 (8th Cir. 1984) ("the court is not simply to substitute its judgment for the jury's, granting a new trial whenever it would find differently than the jury has; *Regional Investment Co. v. Haycock*, 723 F.2d 38, 41

(8th Cir.1983) (jury's verdict entitled to "every reasonable indulgence"); *see also Smith v. Updegraff*, 744 F.2d 1354, 1368 (8th Cir. 1984) ("speculation as to what the jury intended" by its verdict is not permitted since "this court cannot replace the jury's judgment with its own"); *Rochester Civic Theatre, Inc. v. Ramsay*, 368 F.2d 748, 753 (8th Cir. 1966) (a jury verdict will not be set aside unless it is manifestly and palpably contrary to the evidence as a whole). Additionally, "answers to special verdict questions will not be set aside unless they are perverse and palpably contrary to the evidence or where the evidence is so clear to leave no room for differences among reasonable people." *Hanks v. Hubbard Broadcasting, Inc.*, 493 N.W.2d 302, 309 (Minn. Ct. App. 1992); *see also Rochester Civic Theatre, Inc. v. Ramsay*, 368 F.2d 748, 753 (8th Cir. 1966) (a jury verdict will not be set aside unless it is manifestly and palpably contrary to the evidence as a whole). If the jury's special verdict finding can be reconciled on any theory, the verdict will not be disturbed. *Hanks,* 493 N.W.2d at 309.

Contrary to Slidell's claims, the Record is replete with evidence that Slidell waived any alleged breaches by Millennium of the confidentiality and software licensing agreements in the Contract. Moreover, Millennium introduced abundant evidence to support the conclusion that Slidell actively misled Millennium regarding its consent to the disclosures. *See* Section I(A) of this Argument, *supra,* at 4-6. Such evidence, if believed by the jury, amply supports the jury's finding that any breach by Millennium relative to those agreements was legally justified or permitted. Indeed, Slidell's effort to explain away the actions of its "low-level programmer," Tom Hanson, in transferring allegedly proprietary information directly from Slidell to RoviSys merely underscores the evidentiary support those actions provide to the jury's verdict.

Slidell again re-argues the weight of the evidence relative to its claim that Millennium deliberately delayed the Le Havre and Ashtabula equipment and that Slidell did not waive that

alleged breach. Even Slidell's premise that Millennium breached the Contract by failing to approve specifications for Le Havre and Ashtabula is fundamentally flawed; Millennium's evidence showed that it did timely approve specifications and that any associated delays were actually caused by Slidell's failure to provide information sought by Millennium. (Tr. 2858:18 – 2859:6; 3028:11 – 3029:1; 3038:16 – 3043:14.) Moreover, that argument failed to explain why Slidell was unable to complete the Stallingborough equipment. The jury was entitled to find that Millennium did not breach the Contract in this regard.

As to the other evidentiary snippets recited by Slidell on pages 18-19 of its Brief, it suffices to state that, during six weeks of trial, Millennium rejoined each and every one of them, and the jury was entitled to give more credibility to Millennium's witnesses and arguments than Slidell's. As an example, the argument that Slidell needed the elevations of the Le Havre building to complete the Le Havre equipment defies both common sense (automobile manufacturers do not tailor their products to the size of their buyers' garages) and the Contract (which did not obligate Slidell to manufacture the machines to conform to the dimensions of the Le Havre plant). Simply stated, the jury could have rightfully concluded that Slidell's attempts to blame Millennium for its failure to complete the Ashtabula and Le Havre machines were nothing more than make-weight, after-the-fact rationalizations for its own failings.

Slidell's claim of "overwhelming evidence" to support its charge that Millennium wrongfully refused to refund the discount is another jury argument that it lost at trial based upon a mixed evidentiary record. The jury was permitted to find that Millennium acted well within its rights, based upon evidence that (1) Slidell and Millennium never agreed to a change order modifying the contract price; (2) Slidell ratified the full 12% discount by signing the Contract after the April 1, 2000, deadline for ordering the Le Havre line, and sending some 40-50 invoices

to Millennium during 2000 and 2001 containing the full 12% discount (Tr. 930:25 – 933:9); (3) nothing occurred during the performance of the work that rendered the machines any less "identical" to one another within the meaning of the Contract; and (4) Millennium witnesses uniformly testified that Slidell was not entitled to a refund of the discount. (Tr. 2894:11 – 2895:10; 3645:2 – 3646:18.) The evidence on this point was mixed, and the jury resolved it in Millennium's favor. That is no reason to upset the jury's verdict.

## IV. COMPETENT EVIDENCE SUPPORTS THE JURY'S CONCLUSION THAT SLIDELL'S INFORMATION DID NOT CONSTITUTE TRADE SECRETS.

Lastly, Slidell argues at 21-25 of its Brief that the Court should grant a new trial on its trade secrets claim because, in determining that Slidell's connectivity diagrams and control flow diagrams were not trade secrets, "[t]he jury got it wrong." Such a claim presents no issue for this Court's review and, in light of the evidence adduced at trial, is simply absurd.

Little argument is necessary to refute this charge. Contrary to the trial testimony of Messrs. McGregor and Williams, which is essentially all Slidell cites in its argument, Millennium introduced substantial evidence at trial that Slidell's control flow and connectivity drawings were not trade secrets. David Hughes testified, and Slidell's Phil Williams verified, that the data management portion of Slidell's connectivity drawings was provided by Millennium, not Slidell. (Tr. 3270:20 – 3271:13.) Mr. Hughes and George Calvin testified that connectivity drawings similar to Slidell's were publicly available on the Internet (Tr. 3120:5 – 3122:3), and Mr. Hughes also recounted that representatives of the Allen-Bradley Company were heavily involved in the design of the supervisory control network and the selection of which hardware and software to use. Mr. Hughes further testified that about 80% of the information on the control flow diagrams was his work product, not Slidell's. (Tr. 3263:21 – 3264:12.) George Calvin testified that all RoviSys needed from Slidell to perform its work on the supervisory

system was a list of I/O addresses, which Slidell denied were part of its trade secret case, and did not need the connectivity and control flow diagrams. (Tr. 3125:14-19; 3131:11-24; 3135:24 – 3136:6; 806:18 – 807:1.) Finally, Millennium showed that Slidell's connectivity drawings attached to the contract bore no confidentiality stamp. (Tr. 1033:19-22; 1038:4-23.)

In order to constitute a trade secret, the information at issue must not be generally known or readily ascertainable, must gain economic value from its secrecy, and the party claiming trade secret status must make reasonable efforts to maintain its secrecy. Minn. Stat. § 325C.01. The jury was presented with this definition and, upon the evidence recited above, could have permissibly concluded that Slidell failed to satisfy each prong of the three-pronged test. Slidell's mere claim that "the jury got it wrong" presents no reason to upset the jury's verdict.

## CONCLUSION

For all of the foregoing reasons, Millennium asks that the Court deny Slidell's motion in its entirety.

Dated: May 5, 2005

HALLELAND LEWIS NILAN & JOHNSON, P.A.

By: s/Amanda M. Cialkowski

Michael T. Nilan Reg. No. 79224
Scott A. Smith Reg. No. 174026
Matthew E. Johnson Reg. No. 235945
Amanda M. Cialkowski Reg. No. 306514
600 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, Minnesota 55402
Telephone: (612) 338-1838

Attorneys for Defendant and Counterclaimant
Millennium Inorganic Chemicals Inc.