UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Slidell, Inc.,

Plaintiff,

v.

Millennium Inorganic Chemicals, Inc.,

Defendant.

Court File No. 02-CV-213 (JRT/FLN)

**SLIDELL'S MEMORANDUM IN OPPOSITION TO MILLENNIUM'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

## INTRODUCTION

Millennium's seductively simple recitation of the law and facts fails because it ignores the legal prerequisites for the defenses and the jury's findings that Millennium breached the contract and acted unconscionably. Millennium's motion for judgment as a matter of law on the defenses of frustration of purpose, total failure of purpose, and impracticability presents the following issues:

**Procedural Infirmity:** A party may not raise an issue in its post-trial 50(b) motion that it failed to raise in its Rule 50(a) trial motion. Millennium did not raise any of the affirmative defenses in its Rule 50(a) motion. Can Millennium raise the defenses for the first time in its post-trial Rule 50(b) motion?

**Inapplicability:** A promissory-estoppel claim is not the same as a breach-of-contract claim; instead, promissory estoppel seeks to rectify the injustice caused by the plaintiff's reasonable reliance on the defendant's promise. Millennium did not intend to fulfill its promise to purchase European support from Slidell regardless of whether Slidell delivered the equipment. Yet Millennium claims that Slidell's failure to deliver the equipment should excuse the damages

caused by Millennium's unconscionable conduct. Would it be just to allow Millennium to assert the defenses under these circumstances?

**Millennium Contributed:** A defendant cannot sustain affirmative defenses of frustration of purpose or impracticability if the defendant contributed to the frustration or impracticability. Millennium asserts both defenses, claiming that Slidell's breach of the equipment contract establishes frustration of purpose and impracticability as a matter of law. Consequently, Millennium argues that Slidell's promissory-estoppel claim based on Millennium's promise to purchase support services for the equipment is precluded. But the jury also found that Millennium had breached the underlying equipment contract. Can Millennium assert the defenses based on the failure of the underlying contract when it also breached that contract?

**Slidell Performing:** The total failure doctrine applies only if after the repudiation it appears that there would have been a total failure to perform by the injured party. When Millennium reneged in the fall of 2000, Slidell was performing on both the equipment contract and its commitment to provide European support. Can Millennium assert the total failure doctrine when Slidell had performed and continued to perform long after Millennium reneged?

Each of these questions must be answered no. Moreover, the record establishes that other elements of Millennium's defenses are lacking. As a result, the defenses do not excuse Millennium's unconscionable conduct. Millennium's motion must be denied.

## RELEVANT FACTS

### A. Millennium Benefits

Millennium benefited from its promise to Slidell to purchase support services from Slidell. During the initial negotiations on this project, Millennium agreed to purchase support

services from Slidell if Slidell gave Millennium a substantial discount on the equipment. Ultimately, Slidell granted Millennium a $1.2 million discount in exchange for Millennium's commitment to purchase support. (T. 341-45, 3080-81; Szeg Dep. 54:3-08; Ramsay Dep. 244:3-17; Exs. 10, 34, 2588) Kim Szeg, Millennium's chief negotiator, proclaimed, "It was like getting one of the LeHavre systems for free." (Szeg Dep. 77:09-78:13) Millennium requested that its support commitment not be included in the equipment contract, because Millennium needed a separate support contract for internal budgeting procedures. (T. 386, 505-06, 510-11; Brewer Dep. 57:05-19; Exs. 114, 294, 315, 669, 2515)

**B. Millennium Pressures Slidell**

While the packaging equipment was still being designed in the Spring of 2000, Millennium pushed Slidell to fulfill Slidell's portion of the European-support commitment. (T. 346-47) Millennium was keenly interested in having Slidell hire people as soon as possible, so the new Slidell employees could participate in the design and assembly of the Millennium equipment. (Ramsay 108:08-23) Millennium wanted the new Slidell hires to participate so they would be fully versed in the equipment. (T. 2918-23; Ex. 669) Millennium was so intimately involved in Slidell's hiring process that Millennium demanded to review potential candidates' resumes. (T. 466, 1171; Exs. 30, 451) Moreover, Millennium insisted on determining the location for Slidell's European operations. (T. 462; Brewer Dep. 68:19-73:05; Ramsay Dep. 214:21-24, 243:19-244:2)

Millennium induced Slidell to go forward in Europe by dangling millions of dollars of potential support business in front of Slidell. (T. 462; Ramsay Dep. 15:14-15; Exs. 30, 31, 32) During the period of May and June of 2000, Millennium's project manager, Millennium's site managers, and Slidell Vice-President of Engineering worked out various assumptions for

European support. The final assumption sheet that they arrived at early June 2000 was for a support figure of more than $17 million. (*Id.*)

**C. The Bait and Switch**

Once Slidell had made a substantial investment in European operations, it became clear that Millennium was engaged in a bait and switch. Slidell began the process of forming a European corporation in the Spring of 2000. (T. 473-82) Slidell hired its first European support technician in June of 2000. (*Id.*) After Slidell had committed, Millennium changed its negotiation tactics. Instead of finalizing the long-term contract that the parties had envisioned since negotiations began ten months earlier, Millennium offered only a retainer for a substantially lesser amount, while assuring Slidell that the retainer was not a cap and that Millennium anticipated purchasing significant support services from Slidell. (Ex. 669) Mr. Ramsay admitted, however, that Millennium needed to follow through on its commitments to purchase European support, because Millennium had received the discount in exchange for Millennium's support commitment. (Ramsay Dep. 256:01-14) During July and August of 2000, the parties continued to negotiate the retainer amount, finally arriving at a figure of $850,000. (T. 462, 472; Ramsay Dep. 243:01-21; Exs. 294, 2323) But what Slidell did not know is that Millennium had never cleared the European-support concept with the Millennium executive, Timothy Dowdle, that had ultimate authority over expenditures for European support. (T. 2881-82)

While Slidell progressed on the equipment in September 2000, Millennium decided to renege on its commitment to purchase support. In late September 2000, Mr. Ramsey and Ron Root, Millennium's vice president of engineering, met with Mr. Dowdle to discuss the retainer agreement that Mr. Ramsey had negotiated with Slidell. Mr. Dowdle rejected the retainer

agreement, noting that he did not care what previous commitments Millennium had made to Slidell. (Dowdle Dep. 128:19-129:2; Ramsay Dep. 244:11-14; 256:1-14) Although Dowdle's decision was communicated to an angry Slidell, both Patty Anderson, another Millennium executive, and Mr. Root told to Slidell that Mr. Dowdle's decision was not the end of the discussion. (T. 505-06, 510-11, 2883-84; Exs. 294, 451)

**D. Millennium Misleads Slidell**

After Mr. Dowdle's decision, Millennium misled Slidell about Millennium's intent to purchase future support. Dowdle's decision placed significant stress on Slidell and Millennium's relationship. Hoping to placate Slidell, Millennium sent Mike Brewer to Slidell to resolve the European support issue. Mr. Brewer reiterated Millennium's commitment to purchase support, and, in reliance on Mr. Brewer's promise, Slidell made additional hires. (T. 505-06, 510-11, 513; Brewer Dep. 57:05-58:21, 68:19-73:05, 224:17-226:09; Exs. 114, 294, 315, 669, 2515) Mr. Brewer promised Slidell that he would enter a purchase order in Millennium's accounting system confirming the commitments he made to Slidell. (T. 513-14; Exs. 114, 294) But Mr. Brewer never entered the purchase order that he promised. (T. 2885-86)

**E. Millennium Drives a Stake Through the Heart of Slidell's European Operations**

As Slidell continued assembling equipment, Millennium took steps to ensure they would not have to purchase Slidell's support services. Millennium formed a "SWAT Team," made up of Millennium employees, to serve as a substitute for Slidell support. Operating under the façade of resolving design issues, Millennium planned to use its access to the equipment and the equipment design documents to covertly train its SWAT team. (Dowdle Dep. 135:15-136:8, 139:4-140:3; Root Dep. 207:16-208:4, Ex. 669) Before Slidell filed suit in January 2002,

Millennium also began to contact former Dupont employees about the prospect of them providing commissioning services on the equipment. (T. 2702-2704; Ex. 2115)

Millennium not only took steps to ensure that it would not have to do business with Slidell's European operations, Millennium also worked to undercut other potential European-business sources for Slidell. Millennium's European packaging specialist informed Slidell's European potential customers and vendors that Slidell was very poor at meeting deadlines. (T. 1940-46, 2708; Ex. 381) His actions corresponded with the Millennium management goal of keeping the Slidell equipment from Millennium's European competitors. (T. 2713, 2882; Brewer Dep. 98:11-17; Ex. 459)

**F. The Verdict**

The jury viewed Millennium's actions dimly. The jury found Millennium's actions unconscionable. (Docket No. 426). In reaching its decision, the jury found that Millennium's actions displayed "no regard for conscience; affronting the sense of justice, decency, or reasonableness." (Docket No. 417).

Beyond finding Millennium's actions unconscionable, the jury found that both parties breached the contract. (Docket No. 426). The jury's finding that Millennium breached was supported by substantial evidence that Millennium contributed to the collapse of the equipment contract:

- Millennium's project manager ordered Millennium's employees not to cooperate on the Ashtabula or LeHavre portions of the project in late summer 2000. (T. 3397, Exs. 2120, 2156). Millennium took eight months longer to approve the drawings for these plants than it took to approve the drawings for the Stallingborough plant. (T. 3059-60, 3076; Ex. 2564).

- Later Millennium decided that it wanted to change the general arrangement drawing for the LeHavre plant. For almost a year, Millennium failed to forward the new plant drawings so Slidell could finalize the revised LeHavre general arrangement diagrams. (T. 3059-60, 3076; Ex. 2564). Ultimately, Millennium

suspended the LeHavre portion of the project and asked Slidell to try to sell the LeHavre equipment to another customer. (Exs. 114, 2097).

- Although some Millennium employees admitted that the discount should be refunded, Millennium refused to refund the discount. As a result, Slidell was left cash starved and could only continue the project on a cash-flow basis. (Sands Dep. 52:4-53:10; Ramsay Dep. 159:15-21; Dissaux Dep. 26:2-8; T. 2925; 248, 304, 514, 669, 2053)
- For two months after it had internally decided to pull the system from Slidell, Millennium induced Slidell to continue the supervisory system's development. Then Millennium refused both to agree for the cost of the new system or accept the system specified in the contract. (T. 586-89, 3042; Ex. 516). In an effort to up the cash flow pressure, Millennium refused to accept equipment. (T. 2959-2961).

## ARGUMENT

### I. LEGAL STANDARD

The standard for judgment as a matter of law is extremely demanding: Judgment as a matter of law is appropriate only if no reasonable jury could have returned a verdict for the nonmoving party. *Heating & Air Specialists v. Jones*, 180 F.3d 923, 932 (8th Cir. 1999); *Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota*, 2002 WL 31185884 *7 (D. Minn. 2002) (Tunheim, J.) (citations omitted). In analyzing a Rule 50 motion, the Court must consider the evidence in the light most favorable to the nonmovant, resolve all factual conflicts in the nonmovant's favor, and give the nonmovant the benefit of all reasonable inferences. *Archer Daniels*, 2002 WL 31185884 *7.

### II. MILLENNIUM'S MOTION IS PROCEDURALLY BARRED.

Instead of <u>renewing its request</u> for judgment, Millennium has raised completely different legal issues than its prior motion. Millennium's failure to raise the legal defenses of impossibility, frustration and impracticability in its motion for a directed verdict precludes it from raising those issues now.

Together, Rules 50(a) and (b) "limit the grounds for judgment n.o.v. to those specifically raised in the prior motion for a directed verdict." *Holmes v. U.S.*, 85 F.3d 956, 962 (2d Cir. 1996) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 54 (2d Cir. 1993)); *see also* Fed. R. Civ. P. 50 Notes of Advisory Committee to 1991 Amendment ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."). The specificity requirement is mandatory because it ensures that the other party is made aware of any deficiencies in proof that may have been overlooked. *Holmes*, 85 F.3d at 962.

Millennium's motion for directed verdict made at the end of Slidell's presentation of the case focused solely on whether Slidell presented sufficient evidence to meet the essential elements of promissory estoppel. (Docket No. 394 at 7-10). Millennium now asserts that the legal defenses of frustration, impracticability and impossibility bar Slidell's promissory estoppel claim.[1] Millennium's motion should be denied because it did not raise these issues in its prior motion. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289-90 (11th Cir. 1998) (reversing district courts ruling for new trial because Rule 50(b) post-trial motion was based on legal issues that were not addressed in the Rule 50(a) motion); *Rosenthal v. Rosenthal*, 297 F.2d 614, 618 (8th Cir. 1961) (quoting *Mutual Benefit Health & Accident Ass'n v. Thomas*, 123 F.2d 353, 355 (8th Cir. 1941).

[1] Millennium should not be entitled to argue that its request for a jury instruction is sufficient because the "request for such instructions were neither treated nor ruled upon as it would treat with or rule upon a motion for directed verdict." *Lowenstien v. Pepsi-Cola Bottling Co. of Pennsylvania*, 536 F.2d 9, 11 (3d Cir. 1976). Notably, Millennium does not challenge the Court's decision to exclude the defenses of impossibility, impracticability and frustration as jury instructions. Nor does Millennium request a new trial pursuant to Rule 59. As a result, Millennium has limited itself to a remedy it is not entitled to.

## III. THE DOCTRINES OF IMPOSSIBILITY, FRUSTRATION AND IMPRACTICABILITY ARE LEGAL DEFENSES THAT ARE INAPPLICABLE TO SLIDELL'S PROMISSORY ESTOPPEL CLAIM.

Throughout this litigation, Millennium has distinguished Slidell's contract claim from its promissory estoppel claim on the basis that the former is legal in nature and the latter is equitable.[2] Now, Millennium simply presupposes that legal defenses to contract claims apply equally to the equitable claim of promissory estoppel. They do not.

The doctrine of promissory estoppel is distinct from a contract cause of action because, unlike a contract claim, "[p]romissory estoppel is not a substitute for acceptance, consideration, or mutuality, but a doctrine based on reliance which courts may use to a proper case to prevent injustice." *Olson v. Synergistic Tech. Bus.*, 628 N.W.2d 142, 152 (Minn. 2001). Promissory estoppel is not a legal claim based on mutual promises, but an equitable remedy for damages arising out of good-faith reliance. *Id.* Millennium's failure to cite any case where Minnesota courts have applied the doctrines of impossibility, frustration and impracticability to a promissory estoppel claim is not surprising because Minnesota courts have never done so.

Even if there were some basis under Minnesota law – there is not – to apply the defenses generally to promissory estoppel claims, the defenses do not apply under the specific facts of this case. Millennium cannot use Slidell's failure to deliver the equipment as a basis for the defenses because Millennium was not going to perform regardless of whether Slidell delivered. Although Mr. Brewer's agreement appeared to resolve the support issue from Slidell's perspective, Mr. Dowdle, the Millennium executive ultimately responsible for approving European support, never wavered from his decision to rebuke Millennium's commitments to Slidell. Indeed,

[2] Millennium's summary judgment papers properly include an analysis of the defenses in a section regarding breach of contract that is separate from its arguments regarding promissory estoppel. (Docket No. 111, p. 26-27).

Millennium's true intentions are revealed through its actions. Shortly after the Dowdle rejection, Millennium formed its SWAT team, which was a covert substitute for Slidell support. Later, Millennium began to hire former DuPont personnel, as opposed to Slidell personnel, to commission the equipment. Finally, in spite of his promise to Slidell, Mr. Brewer never entered the purchase order confirming Millennium support commitment. Millennium should not be able to rely on Slidell's failure to deliver the equipment when that failure was immaterial to whether Millennium was going to fulfill its promise.

Moreover, the jury's finding that Millennium behaved unconscionably forecloses Millennium from seeking the defenses. The doctrines of frustration of purpose and impracticability are not available where the circumstances indicate the doctrines should not be applied. Rest. 2d Contr. § 261; Rest. 2d Contr. § 265. Millennium's motion seeks relief from Slidell's equitable relief. Thus Millennium should be subject to the standards applicable to any other party seeking equitable relief. Relief must be denied where a party's conduct has been "unconscionable by reason of bad motive, or where the result induced by his conduct will be unconscionable either in benefit to himself or the injury to others." *Gully v. Gully,* 599 N.W.2d 814, 825 (Minn. 1999) (citations omitted).[3] Given the Restatement's language regarding the defenses not applying in some circumstances, Millennium must establish that the facts entitle Millennium to equity. The jury's finding of unconscionability forecloses that possibility.

---

[3] Even though the Court submitted the issue to the jury, the claim remains one of equity and the jury serves solely in an advisory function. The Court adopted the jury's findings that Millennium acted unconscionably when it entered judgment. *Gange v. Septon*, 2004 WL 3090375 (Minn. Ct. App. 2004) ("The third element of promissory estoppel [whether the promise must be enforced to prevent injustice] is a question of law for this court."); (*Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992) ("[T]he third step in a promissory estoppel analysis: Must the promise be enforced to prevent an injustice?... is a legal question for the court, as it involves a policy decision.").

Finally, none of Millennium's defenses should apply because Slidell incurred its damages prior to the termination of the equipment contract. MIC argued that it should receive defenses if Slidell got expectancy damages. The jury's award, however, was within the range of Slidell's out-of-pocket expenses (the award was $650,000 and the discount and start up expenses exceed $2 million). Because the verdict award was within the range of Slidell's reliance damages, the defenses should not apply.

## IV. MILLENNIUM CANNOT INVOKE THE DOCTRINES OF IMPRACTICABILITY OR FRUSTRATION OF PURPOSE.

The impracticability and frustration doctrines are substantially similar in that they require the party seeking relief to prove: (1) the purpose of the contract is substantially frustrated/made impracticable, (2) without that party's fault, (3) by the occurrence of an event the non-occurrence of which was a basic assumption of the contract, and (4) the circumstances indicate the party is entitled to discharge its duty. Restatement (Second) of Contracts §§ 261, 265; *National Recruiters, Inc. v. Toro Co.*, 343 N.W.2d 704, 707 (Minn. Ct. App. 1984).

### A. The Primary Purpose of the Agreement for Millennium Was to Obtain a Discount on the Equipment Contract, Not to Receive Slidell's European Support Services.

The evidence, when considered in the light most favorable to Slidell, shows that Millennium's primary purpose for promising to purchase European support was to obtain a discount on the equipment. Millennium leveraged the fact that Slidell did not have a European presence at the time of the contract to entice Slidell to agree to a substantial discount.

The fact that Millennium was motivated primarily by obtaining the discount, not by obtaining support, is established by Millennium's conduct. Once it had received the discount, Millennium moved to supplant Slidell's support with other Millennium resources. Millennium created a "SWAT" team to bypass Slidell support services and "pass on design knowledge

gained from Slidell through the design process to the sites." (Root Dep. 207:16 - 208:4; Ex. 669). In addition, Millennium also decided to forego its contractual obligations to Slidell by hiring former Dupont employees to install and commission the equipment.

**B. Millennium Is at Fault for the Failure of the Equipment Contract.**

A party cannot invoke the defenses if it caused, or contributed to, the events which frustrated the purpose of the contract or made performance of the contract impracticable. Rest. 2d Contr. § 261, com. d; *Chicago, Milwaukee, St. Paul and Pacific R.R. Co.*, 263 N.W.2d at 529 (a party cannot seek frustration of purpose defense if it "helped cause the frustrating event"). A party is considered to be at fault if it engages in willful wrongs, negligent acts, or conduct that amounts to a breach of contract. Restatement (Second) of Contracts § 261, com. d. Millennium is guilty of doing all three. According to the verdict, Millennium engaged in two forms of conduct that constitute fault, it engaged in intentional wrongs and breached the contract.

**1. Millennium engaged in willful wrongs.**[4]

Millennium cannot dispute that the record is replete with evidence of its willful wrongs. The jury and Court have already found that Millennium acted unconscionably, with "no regard for conscience; affronting the sense of justice, decency, or reasonableness." (Docket No. 417). Likewise, the record supports the conclusion that Millennium breached its contractual duties of good faith fair dealing by acting dishonestly, preventing the completion of the Contract, and making it impossible for Slidell to perform. Because these acts constitute willful wrongs, Millennium is not entitled to the defenses of impossibility, frustration or impracticability. *Johnson v. Freberg*, 228 N.W.159, 160 (Minn. 1929) ("These rules or maxims operate to deny relief to or from conduct which is fraudulent, illegal, or unconscionable. The misconduct need

---

[4] Although this section specifically addresses the doctrines of impracticability and frustration, the same principles prohibit Millennium from invoking the doctrine of impossibility.

not be of such a nature as to be actually fraudulent or constitute a basis for legal action. The plaintiff may be denied relief where his conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others.").

**2. Millennium's breaches doomed the equipment contract.**

In light of the jury's finding that Millennium breached the contract, there are several ways the evidence, when read in the light most favorable to Slidell, shows that Millennium's breaches made it impossible for Slidell to complete the contract. (Docket No. 416, Instr. 12) First, the jury may have concluded that Millennium breached the contract because it failed to carry out part of the contract that requires performance within a reasonable time and such failure prevented Slidell from being able to complete the contract. *Id.* Second, the jury may have concluded that Millennium breached the contract because it failed to carry out a term of the contract by "preventing the term from being completed." *Id.* Third, the jury may have concluded that Millennium breached the contract by repudiation - communicating that it would "not to perform the contract, or an action that renders performance impossible or demonstrates a clear determination not to continue with performance." *Id.* Fourth, the jury may have concluded that Millennium breached its duty of good faith and fair dealing by failing to act honestly, or preventing or making impossible Slidell's performance. *Id.*

The record is replete of instances where Millennium's conduct prevented Slidell from being unable to perform the equipment contract. For example, the jury may have concluded that Millennium breached the contract by failing to provide Slidell general arrangement drawings for the LEH plant and electrical specifications for the ASH plant, making it impossible for Slidell to finish it possible for Slidell to finish the work in an efficient and economical manner.

Moreover, Millennium was aware that Slidell was facing an economic crisis caused by its failure to make payments pursuant to the contract. Despite this fact, Millennium abused Slidell's vulnerable position to extract further concessions. These bad faith gestures had the effect of pushing Slidell to the brink of bankruptcy and making it impossible for Slidell to complete the equipment contract. (T. 696-97).

### C. The Jury's Finding That Millennium's Breach Was Legally Justified Does Not Mean That Millennium Is Absolved of Any Responsibility for the Failure of the Equipment Agreement.

The fact that the jury concluded that Millennium's breach was legally justified does not mean that Millennium is entitled to judgment as a matter of law on the promissory estoppel claim. The jury instructions allowed the jury to conclude that, even though Millennium's actions ultimately prevented the contract from being completed, Slidell waived its rights to sue for damages.

Once the jury concluded that Millennium breached the contract, it was asked to determine if Slidell waived the breach. According to the waiver instruction, the jury could conclude that Slidell waived Millennium's breach by demanding continued Millennium performance even though Millennium never cured its breaches. The waiver instruction states:

> If you find that Millennium breached particular provisions of the contract, in some way, but that Slidell continued to exercise its rights under the contract and continued to demand performance after Millennium's breach, then Millennium's breach may be excused. Any waiver by Slidell is limited to the specific breach that was waived.

(Docket No. 416, Instr. 13) The instruction does not ask the jury to determine causality – whether or not Millennium's actions caused or contributed to the failure of the equipment contract. In addition, the instruction solely focuses on Slidell's actions, not Millennium's.

Therefore, the jury was allowed to conclude that Slidell waived Millennium's breach even though Millennium's actions ultimately prevented Slidell's performance.

## V. MILLENNIUM CANNOT INVOKE THE DOCTRINE OF TOTAL FAILURE OF PURPOSE.

### A. Minnesota Courts Have Not Adopted the Total Failure Doctrine.

Contrary to Millennium's claims, no Minnesota state court has adopted the total failure of performance doctrine as set forth in Section 254 of the Restatement (Second ) of Contracts and neither case cited by Millennium is controlling. *Gibbs* is a federal district court case that cites section 254 for the proposition that a party must show that it is capable of performing to collect damages for anticipatory breach. *Gibbs v. Int'l Multifoods Corp.*, 804 F.2d 450, 452 (8th Cir. 1986).[5]

### B. Millennium Directly Caused or Contributed to the Failure of the Equipment Contract.

Millennium's argument assumes that Slidell is not entitled to promissory estoppel damages because the completion of the underlying contract is a condition precedent for European support. As explained in the prior section, Millennium cannot immunize itself from liability because Millennium contributed to the equipment contract's failure.

### C. No Total Failure.

On its face, the total failure defense does not apply. Because there was no contract, Millennium could not have repudiated. Moreover, Millennium never informed Slidell until after the lawsuit that it would not live up to its promise, so it never really repudiated. Millennium attempts to avoid the issue by claiming that the defense was triggered when Millennium furtively reneged.

---

[5] The other case cited by Millennium applies to Nebraska law. *ACME Inv., Inc. v. Southwest Tracor, Inc.*, 105 F.3d 412 (8th Cir. 1997).

Even if the Court accepts Millennium's novel legal construct, the defense would still not apply. In the fall of 2000 when Millennium reneged, Slidell was still actively building the equipment – an effort Slidell continued for over a year. Moreover, Millennium's failure to inform Slidell of its duplicitous decision to renege caused Slidell to continue setting up European operations for over another year. Simply put, Slidell was performing and continued to perform, making the defense inapposite.

*Gibbs* is easily distinguishable. In *Gibbs*, it was literally impossible for the peanut seller to perform when the buyer anticipatorily repudiated. *Id.*, 804 F2d at 452. In stark contrast, when Millennium reneged, Slidell was performing and continued to perform. Moreover, unlike the buyer in *Gibbs*, Millennium's decision played a role in the ultimate failure of the contract. By reneging, Millennium starved Slidell for cash, which forced Slidell to ultimately abandon the project. *Gibbs* does not apply.

**D. Millennium, Not Slidell, Placed Itself in a Position Where It Could Not Perform Its Promise to Purchase European Support.**

Slidell was always willing and able to continue performing its promise by providing European maintenance and support. Slidell's performance began when it formed a European corporation and hired European workers. As a result, Slidell is entitled to the $650,000 in reliance damages incurred long before Millennium secretly abandoned its commitment to purchase European support and the equipment contract collapsed. RESTATEMENT (SECOND) OF CONTRACTS § 254, com. a. ("Impracticability or frustration that would have occurred after breach by non-performance may affect the measure of damages but does not discharge the duty to pay damages."). Even after the collapse of the Millennium contract, Slidell maintained its European presence and struggled to keep its operations afloat.

Meanwhile, the evidence, when viewed in the light most favorable to Slidell, shows that Millennium's true intent in making promises to purchase European support was to lull Slidell into providing over $1,000,000 in discounts. Millennium covertly abandoned its commitments to purchase Slidell's support services and hired a third party. As a result, it was Millennium, not Slidell, that anticipatorily repudiated the agreement by placing itself in a position where it could not perform the contract.

This case is distinguishable from both *Gibbs* and *ACME Investment.* In *Gibbs*, the plaintiff contracted to provide peanuts that complied with FDA requirements, but the peanuts it supplied did not meet these requirements and could not be processed to do so. 804 F.2d at 452. As a result, the Court held that buyer did not breach the contract when it refused to accept reconditioned peanuts because they did not conform to the contract specifications. *Id. Gibbs* stands for the proposition that a party who seeks to provide goods which are non-complying cannot sue the opposing party for repudiation. In this case, no one has challenged whether Slidell was capable of performing the services it agreed to perform. In fact, the evidence indicates that Slidell's European employees were hired early in the equipment contract and continued to work after the collapse of the contract and the initiation of this lawsuit.

In *ACME Investments*, the plaintiff sued the owner of a hotel because the owner refused to honor an option contract allowing the plaintiff to purchase the hotel. 105 F.3d 412 at 415-16. The Court held that the plaintiff could not seek specific performance (sale of the hotel) because it did not have sufficient funds to purchase the hotel at the time of the scheduled closing. *Id.* at 415-16. In other words, the plaintiff needed to show that it could perform to obtain a remedy. *Id.* In this case, there is no dispute that Slidell was always willing and able to perform and, in

fact, had been performing since the Summer of 2000 when it formed a company and started hiring and training employees.

## CONCLUSION

Millennium's motion for a judgment as a matter of law should be denied because

- Millennium failed to raise the defenses that are the subject of this motion in its 50(a) motion during trial;

- There is no legal authority that supports applying the defenses to promissory estoppel;

- Even if the defenses applied generally to promissory estoppel claims, the defenses do not apply under the circumstances of this case. Two circumstances particularly preclude the defenses. First, Millennium was not going to fulfill its promise regardless of whether Slidell delivered the equipment. Second, the jury's finding of unconscionability forecloses Millennium from seeking relief in equity;

- The evidence compels the conclusion, especially in light of the standard of review that entitles Slidell to all favorable inferences, that Millennium could not sustain the defenses as a matter of law. The evidences establishes that Millennium's primary purpose in making the promises was fulfilled, that Millennium contributed to the frustration of purpose, impracticability, and total failure, and that there was no total failure.

Dated: May 5, 2005

s/ Jeffrey W. Post

Thomas S. Fraser (#31641)
Jeffrey W. Post (#271883)
Jeffrey W. Jones (#311418)
Wade S. Davis (#326860)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: (612) 492-7000
Facsimile: (612) 492-7077

ATTORNEYS FOR PLAINTIFF

#3113698\2