# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 05-3434

---

| | | |
|---|---|---|
| Slidell, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Millennium Inorganic Chemicals, Inc., | * | |
| | * | |
| Appellee. | * | |

---

Submitted: April 19, 2006
Filed: August 23, 2006

---

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

---

WOLLMAN, Circuit Judge.

Slidell, Inc. (Slidell) appeals from the judgment entered by the district court[1] on the jury verdict in its breach of contract claim against Millennium Inorganic Chemicals, Inc. (Millennium). Additionally, Slidell appeals from the district court's denial of its motion for judgment as a matter of law and for new trial and for an order to determine liability for wrongful injunction. We affirm.

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

SCANNED
SEP 18 2006
U.S. DISTRICT COURT MPLS

I.

Slidell manufactures automated packaging equipment used in the titanium dioxide industry. Millennium, which produces titanium dioxide, decided to purchase from Slidell seven fully automated packaging machines to be installed in its facilities in Ohio, England, and France. After months of negotiation, Slidell and Millennium entered into a contract providing that Slidell would manufacture the seven machines for a total contract price of $10,350,465,[2] which included up to a twelve percent discount that Millennium would receive only if the fundamental aspects of all seven machines were identical. The contract further provided that:

> Waivers shall not be binding unless set forth in writing and signed by the party allowing the waiver. No waiver of a breach of any provision of this Contract shall constitute a waiver of any other breach of the provision or any breach of any other provisions of this Contract.

Appellant's App. at 371. Additionally, the contract provided that any changes to the final scope of the project were to be made in accordance with a written order to Slidell and agreed to by the parties. The contract did not set a delivery date for the equipment but instead required Millennium to make milestone progress payments to Slidell throughout the course of performance. Testimony at trial indicated that the parties understood that the seven machines would be completed within approximately sixteen months. Additionally, the contract required that Slidell submit biweekly status reports and updated Gantt schedules to Millennium. The contract specified that the agreement should be interpreted in accordance with Minnesota law.

In October 2000, friction developed between Slidell and Millennium over the equipment's computerized supervisory system. Millennium decided to upgrade the

---

[2]Including the price for change orders that are not in dispute, the total contract price for all seven machines and some additional equipment was about $11.2 million.

supervisory system specified in the contract and executed two change order development requests that authorized Slidell to start designing the system. In March 2001, Slidell informed Millennium that completing the supervisory system to Millennium's new specifications would add another $1.6 million to the contract price. Millennium was dissatisfied with this price and requested that Slidell remove the supervisory system from the scope of its work.

In May 2001, Millennium confirmed that it was removing the supervisory system from the scope of the contract with Slidell. There is evidence that around May 11, sensitive information regarding Slidell's design of the machines was provided to the RoviSys Company (RoviSys) without Slidell's consent. Throughout the rest of May, Millennium had meetings with RoviSys regarding its manufacture of the new supervisory system. Testimony at trial indicated that Slidell was never informed of these meetings. Around this same period of time, Slidell met with Millennium to discuss the removal of the supervisory system from their contract.

On June 21, 2001, Millennium asked Slidell for permission to share Slidell's technical information with RoviSys for the purpose of providing RoviSys with background information on the packaging machines so that it could design the new supervisory system. Slidell replied that this would require a separate nondisclosure agreement with RoviSys. Slidell prepared the agreement, RoviSys signed it, and Millennium sent it to Slidell for its signature. Without so informing Millennium, Slidell did not sign the agreement. Millennium then shared Slidell's design documents with RoviSys.

In August 2001, Slidell prepared Change Order No. 5, which, in accordance with Millennium's request, removed the supervisory system from the scope of Slidell's work without any change in the contract price. Slidell sent the change order to Millennium for its signature, representing to Millennium that it would sign Change Order No. 5 once Millennium signed it. Notwithstanding this representation, Slidell

never signed the order, nor did it inform Millennium that it had not done so. There is evidence that in August and September of 2001, Slidell threatened to sue Millennium if it failed to perform on the contract or failed to accept a change order to remove the 12 percent discount.

On January 17, 2002, Slidell sued Millennium for breach of contract, promissory estoppel, quantum meruit, equitable estoppel, and violations of the Minnesota Uniform Trade Secrets Act, M.S.A. §§ 325C.01-.08. Millennium counterclaimed for breach of contract, specific performance, replevin, unjust enrichment, an equitable lien, and a constructive trust. At the time Slidell commenced this action, Millennium had paid Slidell $8.82 million in progress payments under the contract. This was $500,000 more than the amount to which Slidell was entitled under the milestone progress payment schedule set forth in the contract. Slidell's damages expert testified that at the time Slidell stopped work on the machines, Slidell had realized a net profit on the job of nearly $1.5 million. Millennium's damages expert determined this net profit to be about $4.6 million.

In February 2002, Slidell informed Millennium that it intended to disassemble the partially completed machines and sell and return the parts and components for value. On March 7, 2002, Millennium moved for a preliminary injunction prohibiting Slidell from selling, returning, or transferring any of the equipment or components to third persons for value pending the outcome of the trial on the merits. The district court granted the motion, entered the injunction, and required Millennium to post a $2 million injunction bond to pay any costs or damages incurred by Slidell in the event that it was found that Slidell had been wrongfully enjoined.

In October and November of 2003, Slidell and Millennium filed cross-motions for summary judgment. On June 28, 2004, the district court granted Slidell's motion to dismiss Millennium's equitable claims for a constructive trust, an equitable lien, and unjust enrichment. The district court also granted Millennium's motion to dismiss

Slidell's claim for equitable estoppel but denied summary judgment as to all remaining claims.

On October 4, 2004, both parties filed their own statements of the case. Millennium's statement related that Slidell's work under the contract proceeded slowly and that there were disputes about wire colors for the machines. Among other things, Millennium also asserted that Slidell was deficient in providing the appropriate level of management for the project. Slidell's statement focused on Millennium's alleged misappropriation of trade secrets, breach of contract, quantum meruit, and promissory estoppel regarding long-term European field support.

Prior to trial, both parties submitted proposed jury instructions. Slidell's proposed instruction on waiver stated that to establish waiver, "Millennium must prove the heightened standard that (a) Slidell's actions were so clear and unequivocal that no other reasonable explanation of the conduct is possible, and (b) Millennium must relied [sic] upon the conduct to its detriment." Appellant's App. at 287. It also required the jury to find that Slidell intentionally relinquished the contract provision providing that all waivers be in writing before it could find waiver. Finally, the proposed instruction stated that if Slidell had clearly communicated to Millennium that it reserved its rights under the contract, it did not waive these rights. Slidell's proposed instruction on equitable estoppel provided that the jury must find that Slidell's representations must be enforced to avoid injustice before it could find equitable estoppel and that the jury could not find equitable estoppel if Millennium had engaged "in any misleading tactics, concealments, misrepresentations and/or defaults that exacerbated the situation." Appellant's App. at 288. Slidell's proposed instruction on prior breach provided that if the jury found "that Slidell's decision to stop performance of the contract and initiate this lawsuit occurred before Millennium's breach, then Millennium's breach is excused." Appellant's App. at 287.

The trial occupied some twenty-three days during January and February 2005. Both Millennium and Slidell offered testimony relating the events that had occurred between the parties and testimony that the project had been delayed for numerous reasons. Millennium also offered testimony that Slidell's initial project manager lacked experience and that she had failed to provide the biweekly status reports and updated Gantt schedules to Millennium as required by the contract. At the close of the evidence, Slidell moved for judgment as a matter of law on Millennium's remaining equitable claims for specific performance and replevin, as well as its affirmative defense of equitable estoppel. Millennium responded by voluntarily dismissing its specific performance and replevin claims. The district court denied Slidell's motion to dismiss Millennium's equitable estoppel defense and submitted the remaining claims to the jury.

At the charge conference, Slidell reiterated its view that to find a waiver of a specific contract provision, a jury must first find a separate waiver of the provision that requires all waivers to be in writing. It also argued that an implied waiver requires a heightened standard of proof. Further, Slidell contended that if Millennium breached, Slidell had the right to proceed in a commercially reasonable manner and that if it continued performing under a reservation of rights, its performance could not have constituted a waiver. Finally, Slidell argued that if an equitable estoppel instruction were given to the jury, the court should include an instruction on the unclean hands doctrine as a defense to equitable estoppel.

In its Instruction 13, the district court instructed the jury that:

> First, Millennium alleges that Slidell waived Millennium's breach. In order for Slidell to have waived Millennium's breach, you must find that Slidell knew of its legal rights, intended to relinquish its rights, and unequivocally did so. If you find that Millennium breached particular provisions of the contract, in some way, but that Slidell knew of Millennium's breach and continued to exercise its rights under the

> contract and continued to demand performance after Millennium's breach, then Millennium's breach may be excused. Any waiver by Slidell is limited to the specific breach that was waived.
>
> Second, Millennium argues that Slidell committed a material breach of the contract prior to Millennium's material breach. If you find that Slidell materially breached the cont[r]act before Millennium materially breached the contract, then Millennium's breach is excused. A breach is material if it defeats one of the primary purposes of the contract.
>
> Third, Millennium alleges the defense of "equitable estoppel." To establish equitable estoppel, Millennium must show that:
>
> 1) Slidell misrepresented a material fact or was silent when it had a duty to speak;
> 2) Slidell knew or should have known the representation was false;
> 3) Slidell intended Millennium to act on the representation;
> 4) Millennium lacked knowledge of the true facts; and
> 5) Millennium reasonably relied upon the misrepresentation to breach the cont[r]act.

Appellant's App. at 308-09.

The jury returned a verdict on February 24, 2005, finding that Millennium had breached the contract; that Millennium's breach was legally justified; that Slidell had breached the contract; that Slidell's breach was not legally justified; that Slidell was liable to Millennium for damages of $4,822,850.64; that Slidell's confidential information was not a trade secret; that Slidell proved each element of promissory estoppel regarding European field support services; and that Millennium was liable to Slidell for damages of $650,000.

On March 14, 2005, the district court dissolved the preliminary injunction against Slidell. On April 14, 2005, Slidell moved to determine Millennium's liability for the wrongful issuance of the injunction. The district court denied the motion and dismissed Millennium's injunction bond.

## II.

We generally review for abuse of discretion the district court's jury instructions. Eden Elec., Ltd. v. Amana Co., 370 F.3d 824, 827 (8th Cir. 2004). We afford the district court broad discretion in choosing the form and language of the instructions, and our review is limited to a determination of whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and accurately submitted the issues to the jury. Id.; United Fire & Cas. Co. v. Historic Pres. Trust, 265 F.3d 722, 727 (8th Cir. 2001); Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 711 (8th Cir. 2001). We will reverse a jury verdict only if the erroneous instruction affected a party's substantial rights, and thus a new trial is necessary only when the errors misled the jury or had a probable effect on the jury's verdict. Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 434 F.3d 1081, 1093 (8th Cir. 2006).

We review the jury instructions for plain error, however, if the party challenging them has failed to preserve the issue for review by failing to state distinctly the matter objected to and the grounds for the objection on the record. See Fed. R. Civ. P. 51; Dupre v. Fru-Con Eng'g Inc., 112 F.3d 329, 333 (8th Cir. 1997). Our review under this standard is narrow and is confined to the exceptional case in which error has "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." Genthe v. Lincoln, 383 F.3d 713, 718 (8th Cir. 2004) (citations omitted); see also Niemiec v. Union Pac. R.R. Co., 449 F.3d 854, 858 (8th Cir. 2006) (stating that plain error review is stringently limited, especially in the civil context). We will reverse "only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected." Genthe, 383 F.3d at 718 (citations omitted).

A.

Slidell first argues that the district court's jury instruction on waiver was deficient in numerous respects and that we should thus grant it a new trial. We disagree.

1.

Slidell argues that the district court erred in failing to instruct the jury that the contract's written waiver requirement must have been waived before the jury could find that Slidell waived any specific contract provision by any means other than in writing. Minnesota courts have held that despite a contract's requirement that a waiver be in writing, certain provisions of the contract may be waived even if they are not in writing. See Pollard v. Southdale Gardens of Edina Condo. Ass'n, Inc., 698 N.W.2d 449, 453 (Minn. Ct. App. 2005); Larson v. Hill's Heating & Refrigeration of Bemidji, Inc., 400 N.W.2d 777, 781 (Minn. Ct. App. 1987). Further, Minnesota courts have never stated that the requirement of a written waiver requires a waiver separate from any waiver of the specific contract provision. Indeed, they have indicated that the waiver of the requirement that a waiver be in writing may result in an effective waiver of the specific contract provision and vice versa. See Citizens Nat'l Bank of Madelia v. Mankato Implement, Inc., 441 N.W.2d 483, 483-87 (Minn. 1989); Albany Roller Mills, Inc. v. N. United Feeds & Seeds, Inc., 397 N.W.2d 430, 432-33 (Minn. Ct. App. 1986) (stating that "the requirement of a writing may be waived and result in an effective oral modification"). An example of this can be seen in Citizens National Bank of Madelia v. Mankato Implement, Inc. See 441 N.W.2d at 483-87. There, a debtor granted a bank a security interest in his farm equipment under an agreement that provided that the debtor would not sell or otherwise dispose of this collateral without prior written consent of the bank. Id. at 484. Thereafter, the debtor traded some of his old farm equipment for newer farm equipment. Id. Although the bank did not give the debtor written consent to trade the equipment, the

debtor discussed each trade-in with the bank's president before it was made and the bank president orally approved and encouraged the trades. Id. The Minnesota Supreme Court held that the facts that proved that the bank gave consent to the transactions also proved that the bank waived its right to require written approval of the transactions. Id. at 487. Slidell has cited no persuasive Minnesota law to the contrary, and thus it has failed to demonstrate that the district court abused its discretion in failing to instruct the jury that two separate waivers were required to find a waiver of Millennium's alleged breach.

**2.**

Slidell also argues that the jury instruction erroneously indicated that the jury could find a waiver by Slidell based solely on Slidell's continued performance under the contract. We disagree.

Under this argument, Slidell first contends that the district court should have included language that an implied waiver is a narrow defense requiring that "[t]he conduct must be so consistent with and indicative of an intention to relinquish the particular right and so clear and unequivocal that no other reasonable explanation of the conduct is possible." Appellant's Br. at 36 (quoting Medicare Glaser Corp. v. Guardian Photo, Inc., 936 F.2d 1016, 1021 (8th Cir. 1991) (applying Missouri law)) (alterations and internal quotations omitted). Under Minnesota law, a waiver is "an intentional relinquishment of a known right, and it must clearly be made to appear from the facts disclosed." Citizens Nat'l Bank of Madelia, 441 N.W.2d at 487 (internal quotations omitted); see also Niazi v. St. Paul Mercury Ins. Co., 121 N.W.2d 349, 354 n.5 (Minn. 1963) ("Waiver is the voluntary relinquishment of a known right."). Slidell fails to cite any Minnesota law supporting the heightened standard for waiver that it suggests. The instruction clearly required the jury to find an unequivocal relinquishment of Slidell's known rights to find waiver. The balance of the instruction does not vitiate this requirement because the instruction, taken as a

whole, fairly and adequately submitted the issue to the jury. Given the district court's broad discretion in choosing the language of the instructions, we conclude that the district court did not abuse that discretion in failing to instruct the jury on the heightened standard requested by Slidell.

Slidell next contends that a course-of-conduct waiver requires detrimental reliance, which the instruction failed to reflect. In support of its argument, Slidell cites Hedged Investment Partners, L.P. v. Norwest Bank Minnesota, N.A., in which the Minnesota Court of Appeals stated that a "course-of-conduct waiver is based on the theory of estoppel and requires detrimental reliance." 578 N.W.2d 765, 771-72 (Minn. Ct. App. 1998). We must be careful not confuse waiver and estoppel, however, because they are entirely different. Clark v. Dye, 197 N.W. 209, 212 (Minn. 1924). The Minnesota Supreme Court has repeatedly stated that the definition of waiver is the intentional relinquishment of a known right, and it has made no mention of any element of detrimental reliance. See, e.g., Illinois Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792, 798 (Minn. 2004); Seavey v. Erickson, 69 N.W.2d 889, 895 (Minn. 1955). In Clark v. Dye, the Minnesota Supreme Court indicated that there are two types of waivers—one resulting from the intentional relinquishment of a known right and the other resulting from an estoppel enforcing that right. See 197 N.W. at 212. Indeed, post-Hedged Investment Partners cases have not required a finding of detrimental reliance for waivers. See, e.g., Pollard, 698 N.W.2d at 453-54. Thus, while a waiver based on estoppel may require detrimental reliance, not every form of implied waiver requires such reliance. Accordingly, the jury instructions were not erroneous in this respect.

Slidell also contends that the jury should have been instructed that Slidell did not waive its claim for breach of contract if it continued performance on the contract but proceeded in a commercially reasonable manner in accordance with Minnesota Statute Annotated §§ 336.2-703 and 704 or reserved its right to sue. Minnesota Statute Annotated § 336.1-308 provides that a party can reserve its rights under a

contract if it does so explicitly. Because we agree with the district court that "there is insufficient evidence to support a finding that Slidell 'explicitly' reserved its rights despite continuing to perform under the contract," D. Ct. Memorandum Opinion and Order of July 26, 2005, at 11, we conclude that the district court did not abuse its discretion in failing to include within the instruction Slidell's suggested language on reservation of rights.

Additionally, Slidell failed to provide a proposed instruction on the issue of proceeding in a commercially reasonable manner after a breach. Accordingly, we review for plain error. See Melford Olsen Honey, Inc. v. Adee, 452 F.3d 956, 966 (8th Cir. 2006) (holding that claimed error in district court's decision to not include an instruction on anticipatory repudiation was waived because appellant failed to request a jury instruction on the issue). We conclude that even if the district court erred in omitting such an instruction, no miscarriage of justice resulted.

**3.**

Next, Slidell argues that the district court erred in failing to instruct the jury that Slidell's claim for a breach of the implied covenant of good faith and fair dealing and its claim that Millennium anticipatorily repudiated the contract could not be waived. Because Slidell failed to propose a jury instruction to this effect, we review for plain error.

Slidell has failed to cite any Minnesota law that supports its argument that a party cannot waive a breach of good faith and fair dealing. The law that it does cite instead stands for the proposition that a party that acts in bad faith cannot raise equitable remedies. It does not, however, support Slidell's argument that a party cannot waive a breach of good faith and fair dealing. Without deciding whether a party can waive the implied covenant of good faith and fair dealing, we conclude that the district court did not plainly err in failing to include any such instruction.

In support of its argument that a party cannot waive its claim for anticipatory repudiation, Slidell cites Minnesota Statute Annotated § 336.2-610 and National Liberty Corp. v. Wal-Mart Stores, Inc., 120 F.3d 913, 916 (8th Cir. 1997) (applying Missouri law). These authorities do not support Slidell's argument, and we have found no Minnesota authority that does support it. See Space Ctr., Inc. v. 451 Corp., 298 N.W.2d 443, 451 (Minn. 1980) (noting that a party may have waived its claim for anticipatory breach). Accordingly, we conclude that the district court did not plainly err in failing to include Slidell's now-contended for instruction.

**4.**

Finally, Slidell argues that no evidence supports the jury's finding that Slidell waived Millennium's breach. We construe this argument as one based on Federal Rule of Civil Procedure 59. Under this rule, the district court's denial of a new trial is virtually unassailable, and we will reverse only when there is an absolute absence of evidence to support the jury's verdict. Pulla v. Amoco Oil Co., 72 F.3d 648, 656-57 (8th Cir. 1995). Our review of the record satisfies us that there was sufficient evidence that Slidell knew of its rights and voluntarily relinquished them. There was testimony indicating that Slidell was aware of Millenium's actions that allegedly constituted a breach, that Slidell continued to manufacture the equipment, and that Millennium continued to make milestone progress payment, which Slidell continued to accept. Accordingly, Slidell's argument fails.

**B.**

Next, Slidell argues that Millennium's equitable estoppel defense should not have been submitted to the jury because it constitutes a question of law, that the instruction misstated the law, and that no evidence supported a finding of estoppel. We disagree. First, equitable estoppel depends on the facts of a case and is ordinarily a fact question for the jury to decide. N. Petrochemical Co. v. United States Fire Ins.

Co., 277 N.W.2d 408, 410 (Minn. 1979). Second, Slidell failed to preserve for review its arguments that the court's instruction misstated the law. Slidell did not propose an instruction stating that Millennium's equitable estoppel offense was limited to the specific breach to which Slidell's misrepresentations or omissions related, nor did it raise the objection that the instruction lacked the element of unconscionability. Accordingly, we review for plain error, and we conclude that neither of these omissions would result in a miscarriage of justice if left uncorrected. Finally, we conclude that Slidell's argument that there was no evidence to support a finding of estoppel is without merit. The record contains evidence that Slidell represented to Millennium that it had signed Change Order No. 5, that Slidell intentionally failed to sign the order, that Slidell failed to inform Millennium that it had not signed the order, that Slidell intended Millennium to act on the misrepresentation or omission, that Millennium was unaware that Slidell had not signed the order, and that Millennium relied to its detriment on Slidell's misrepresentation or omission when it assigned the manufacture of the supervisory system to RoviSys.

C.

Slidell next argues that the district court's instruction that either party's breach of contract could be excused by the other party's prior breach improperly permitted Millennium to assert a new prior breach theory during its closing argument. Because Slidell failed to object to the instruction, we again review for plain error. The district court's instruction, viewed in the light of the evidence and applicable law, fairly and accurately submitted the issue to the jury. Further, although it is true that surprise resulting from a major variance in the theory of a defense may be a ground for granting a new trial, see Sanford v. Crittenden Mem'l Hosp., 141 F.3d 882, 886 (8th Cir. 1998), no such surprise occurred here. Millennium placed Slidell on notice that it would assert a prior breach defense when it referred to Slidell's poor management of the contract in its statement of the case and when it deposed and examined witnesses on the issues of Slidell's failures in updating schedules and making regular

reports to Millennium as the contract required. In any event, any error that may have occurred did not amount to a substantial prejudice to Slidell's rights and will not amount to a miscarriage of justice if left uncorrected.

**D.**

Slidell also argues that the district court erred in failing to instruct the jury that if it found that Millennium had acted inequitably, Millennium would be barred from relying on its equitable defenses of waiver, estoppel, and prior breach. While it is true that the unclean hands doctrine bars a party that acted inequitably from obtaining equitable relief, Heidbreder v. Carton, 645 N.W.2d 355, 371 (Minn. 2002), such inequitable conduct must bear some relation to the merits of the case. Prow v. Medtronic, Inc., 770 F.2d 117, 121-22 (8th Cir. 1985) (applying Minnesota law).

Slidell points out that the jury found that Millennium acted unconscionably when it concluded that Slidell had proved each element of promissory estoppel regarding European field support services. This finding of unconscionability, however, was unrelated to Millennium's assertion of equitable estoppel, which was directed at Slidell's claim that Millennium had breached the contract by deleting the supervisory system from the scope of Slidell's work and by transferring Slidell's technical drawings and data to RoviSys without Slidell's consent. That the court's instruction on estoppel was not so limited did not constitute an abuse of discretion because, taken as a whole, the estoppel instruction fairly and accurately submitted the issue to the jury.

Slidell also argues that Millennium was guilty of unclean hands for numerous other reasons. We conclude, however, that the district court did not abuse its discretion in determining that there was not "such strong evidence of oppressive or deceptive conduct here that it's required that this be pointed out." Tr. at 3987.

Slidell failed to preserve for review its argument that an instruction regarding Millennium's unclean hands should have been included with respect to Millennium's defenses of waiver and prior breach. We conclude that the district court's refusal to include the instruction would not amount to a miscarriage of justice if left uncorrected.

**III.**

Finally, Slidell argues that the district court wrongfully enjoined it from selling and returning the parts and components of the partially completed machines for value because each of Millennium's equitable claims was dismissed. Because this is a question of law, we review *de novo* whether Slidell was wrongfully enjoined. See Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir. 1994) ("We review de novo a district court's decision to execute [an injunction] bond."); cf. Bowman v. White, 444 F.3d 967, 974 (8th Cir. 2006) ("We review de novo the district court's conclusions of law.").

Federal Rule of Civil Procedure 65(c) provides that a party that has incurred or suffered costs and damages because it was wrongfully enjoined may recover on an injunction bond. We have not previously had the opportunity to define the term "wrongfully enjoined," but both the Second and Ninth Circuits have determined that a party has been wrongfully enjoined if it is ultimately found that the enjoined party had at all times the right to do what it was enjoined from doing. Nintendo of Am., Inc., 16 F.3d at 1036 (wrongfully enjoined if the party "had the right all along to do what it was enjoined from doing"); see also Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1054 (2d Cir. 1990) (wrongfully enjoined "if it is ultimately found that the enjoined party had at all times the right to do the enjoined act").

Slidell contends that because Millennium's claims for equitable relief were dismissed before the case was submitted to the jury, Millennium failed to establish

that it was entitled to equitable relief, and thus Slidell was wrongfully enjoined. While the failure to carry the burden of proof on a permanent injunction may show that a preliminary injunction should not have been issued, this failure is only conclusive if there is an absence of a decision on the merits of the case. See Middlewest Motor Freight Bureau v. United States, 433 F.2d 212, 243 (8th Cir. 1970). If a party prevails on the merits of the case, a preliminary injunction issued on its behalf could not have been wrongful unless the basis for arguing that the preliminary injunction was wrongfully issued is independent of the claim on the merits. See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 313-18 (1999). This is not one of those rare cases, because Slidell's basis for arguing that the preliminary injunction was wrongfully issued is the claim that it retained the right to sell and return the parts and components for value, a right that was dependent on the merits of the case. Millennium argued that if Slidell did not have the legal right to stop work on the machines, it did not have the legal right to dismantle the machines and sell and return the parts and components for value. This wrongful conduct on Slidell's part is the only reason that Slidell, absent the preliminary injunction, would have had the opportunity to sell and return the parts and components of the unfinished machines. The district court did not err in granting the preliminary injunction to prevent Slidell from doing this.

**Conclusion**

The judgment is affirmed.

---



A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

RECEIVED
BY U.S. MAIL
2006 SEP 18 AM 9:50
CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

September 13, 2006

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

Re: 05-3434 Slidell, Inc. vs. Millennium Inorganic

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans

Michael E. Gans
Clerk of Court

mer

Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)

---

cc: Honorable John R. Tunheim
Jeffrey Webster Post
Laurie Jean Miller
Thomas S. Fraser
Michael T. Nilan
Scott A. Smith
Amanda M. Cialkowski
Nicole J. Druckrey
Matthew Edwin Johnson

District Court/Agency Case Number(s): CIV 02-213 JRT/FLN